DocuSign Envelope ID: 0B3A6BB1-B15A-48EE-965F-8AA71A3991AD

1  STEPHANIE S. CHRISTENSEN
   Acting United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
6  Asset Forfeiture & Recovery Section
        1100 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-0698/2426
        Facsimile: (213) 894-6269/0141
9       E-mail:   jeff.mitchell@usdoj.gov
        E-mail:   daniel.boyle2@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

LODGED
CLERK, U.S. DISTRICT COURT

8/29/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Jb _____ DEPUTY

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,        No. CR 2:22-cr-00394-JLS

15          Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                    YASIEL PUIG VALDES
16               v.

17 YASIEL PUIG VALDES,

18          Defendant.

19

20

21       1.   This constitutes the plea agreement between YASIEL PUIG

22 VALDES ("defendant") and the United States Attorney's Office for the

23 Central District of California (the "USAO") in the above-captioned

24 case.  This agreement is limited to the USAO and cannot bind any

25 other federal, state, local, or foreign prosecuting, enforcement,

26 administrative, or regulatory authorities.

27                      DEFENDANT'S OBLIGATIONS

28       2.   Defendant agrees to:

1          a.   Give up the right to indictment by a grand jury and,

2   at the earliest opportunity requested by the USAO and provided by the

3   Court, appear and plead guilty to a single-count information in the

4   form attached to this agreement as Exhibit A or a substantially

5   similar form, which charges defendant with Making False Statements in

6   violation of 18 U.S.C. § 1001(a)(2).

7          b.   Not contest facts agreed to in this agreement.

8          c.   Abide by all agreements regarding sentencing contained

9   in this agreement.

10         d.   Appear for all court appearances, surrender as ordered

11  for service of sentence, obey all conditions of any bond, and obey

12  any other ongoing court order in this matter.

13         e.   Not commit any crime; however, offenses that would be

14  excluded for sentencing purposes under United States Sentencing

15  Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not

16  within the scope of this agreement.

17         f.   Be truthful at all times with the United States

18  Probation and Pretrial Services Office and the Court.

19         g.   Pay the applicable special assessment at or before the

20  time of sentencing unless defendant has demonstrated a lack of

21  ability to pay such assessments.

22         h.   Recommend that defendant receive, as part of his

23  sentence, a fine in an amount no less than $55,000 and not to argue,

24  or suggest in any way, either orally or in writing, that a lower fine

25  amount be imposed.

26                        THE USAO'S OBLIGATIONS

27       3.   The USAO agrees to:

28         a.   Not contest facts agreed to in this agreement.

                                    2

DocuSign Envelope ID: 0B2A6BB1-B15A-48EE-86EF-8AA71A3991AD

1       b.   Abide by all agreements regarding sentencing contained

2 in this agreement.

3       c.   At the time of sentencing, provided that defendant

4 demonstrates an acceptance of responsibility for the offense up to

5 and including the time of sentencing, recommend a two-level reduction

6 in the applicable Sentencing Guidelines offense level, pursuant to

7 USSG § 3E1.1, and recommend and, if necessary, move for an additional

8 one-level reduction if available under that section.

9       d.   Except for criminal tax violations (including

10 conspiracy to commit such violations chargeable under 18 U.S.C.

11 § 371), not further criminally prosecute defendant for violations of

12 18 U.S.C. § 1503 arising out of defendant's conduct described in the

13 agreed-to factual basis set forth in paragraph 9 below.  Defendant

14 understands that the USAO is free to criminally prosecute defendant

15 for any other unlawful past conduct or any unlawful conduct that

16 occurs after the date of this agreement.  Defendant agrees that at

17 the time of sentencing the Court may consider the uncharged conduct

18 in determining the applicable Sentencing Guidelines range, the

19 propriety and extent of any departure from that range, and the

20 sentence to be imposed after consideration of the Sentencing

21 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

22 <u>NATURE OF THE OFFENSE</u>

23    4.   Defendant understands that for defendant to be guilty of

24 the crime charged in the single-count information, that is, Making

25 False Statements, in violation of Title 18, United States Code,

26 Section 1001(a)(2), the following must be true:

27      a) Defendant made a false statement;

28

b) The statement was made in a matter within the
jurisdiction of a federal law enforcement agency;

c) The defendant acted willfully; that is, the defendant
acted deliberately and with knowledge both that the
statement was untrue and that his conduct was
unlawful; and

d) The statement was material to the activities or
decisions of the law enforcement agency; that is, it
had a natural tendency to influence, or was capable of
influencing, the agency's decisions or activities.

<u>PENALTIES</u>

5.   Defendant understands that the statutory maximum sentence
that the Court can impose for a violation of 18 U.S.C. § 1001(a)(2),
is: five years' imprisonment; a three-year period of supervised
release; a fine of $250,000 or twice the gross gain or gross loss
resulting from the offense, whichever is greatest; and a mandatory
special assessment of $100.

6.   Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised
release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

7.   Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic

4

DocuSign Envelope ID: 0B3A6BB1-B15A-48EE-96EE-8AA71A3991AD

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

1        FACTUAL BASIS

2        9.    Defendant admits that defendant is, in fact, guilty of the

3   offense to which defendant is agreeing to plead guilty.  Defendant

4   and the USAO agree to the statement of facts provided below and agree

5   that this statement of facts is sufficient to support a plea of

6   guilty to the charge described in this agreement and to establish the

7   Sentencing Guidelines factors set forth in paragraph 11 below but is

8   not meant to be a complete recitation of all facts relevant to the

9   underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11      The Department of Homeland Security, Homeland Security

12  Investigations ("HSI") and the Internal Revenue Service – Criminal

13  Investigation Division ("IRS-CI") in Los Angeles and the United

14  States Attorney's Office ("USAO") for the Central District of

15  California were conducting a federal criminal investigation into

16  federal crimes, including illegal sports gambling and money

17  laundering (the "Federal Investigation").

18      Wayne Nix was a minor league baseball player from 1995 to 2001.

19  Sometime after 2001, Nix began operating an illegal bookmaking

20  business in the Los Angeles area that accepted and paid off bets from

21  bettors in California and elsewhere in the United States based on the

22  outcomes of sporting events at agreed-upon odds (the "Nix Gambling

23  Business").  Through contacts he had developed during his own career

24  in professional sports, Nix created a client list of current and

25  former professional athletes, and others.

26      Nix used agents, including Agent 1, to place and accept bets

27  from others for the Nix Gambling Business, thus expanding the

28  business.  Agent 1 was a former collegiate baseball player and a

6

1    private baseball coach.  Beginning in 2019, Agent 1 worked for the

2    Nix Gambling Business as an agent.  Agent 1 placed and accepted bets

3    from others and helped Nix maintain the Nix Gambling Business by,

4    among other things, demanding and collecting money owed to the Nix

5    Gambling Business by bettors and others.

6        As part of the Nix Gambling Business, Nix and Agent 1 used the

7    Sand Island Sports websites and call center to create accounts

8    through which wagers would be placed and tracked.  Nix provided

9    bettors with account numbers and passwords for the Sand Island Sports

10   websites and directed the bettors to use the Sand Island Sports

11   websites to place bets with the Nix Gambling Business.  Bettors would

12   place bets online through the Sand Island Sports websites, and

13   through Nix, Agent 1, and others working at Nix's direction.

14       Defendant was a professional baseball player who played for the

15   Los Angeles Dodgers between 2013 and 2018.  The Dodgers traded

16   defendant to the Cincinnati Reds in December 2018, and the Reds

17   traded defendant to the Cleveland Indians on July 31, 2019.

18       In January 2019, defendant met Agent 1 at a youth baseball camp,

19   and Agent 1 later assisted defendant in preparing for the upcoming

20   baseball season.  Individual B was a private baseball coach who

21   assisted defendant with batting practice, but also assisted defendant

22   in placing sports bets with Agent 1 and assisted Agent 1's efforts to

23   collect gambling debts from defendant.

24       Beginning no later than May 2019, defendant began placing bets

25   on sporting events with the Nix Gambling Business through Agent 1.

26   Defendant called and sent text messages to Agent 1 with wagers on

27   sporting events.  After Agent 1 received the wagers from defendant,

28   Agent 1 submitted the bets to the Nix Gambling Business on behalf of

1   defendant.  By June 17, 2019, defendant owed the Nix Gambling

2   Business $282,900 for sports gambling losses.

3        Between June 25, 2019, and July 3, 2019, in a series of text

4   messages, Agent 1 and Individual B instructed defendant to make a

5   check or wire transfer payable to Individual A.  Individual A was a

6   client of the Nix Gambling Business who, in or about June 2019, was

7   owed at least $200,000 in gambling winnings from the Nix Gambling

8   Business.

9        On June 25, 2019, defendant withdrew $200,000 from a Bank of

10  America financial center in Glendale, California, and purchased two

11  cashiers' checks for $100,000 each that were made payable to

12  Individual A, but did not immediately send the checks due to a

13  dispute over the balance and access to the Sand Island Sports

14  website.  Between June 28, 2019, and July 4, 2019, defendant

15  requested direct access to the Sand Island Sports websites, but Nix

16  refused to provide defendant direct access to the websites until

17  defendant paid his gambling debt.

18       On July 3, 2019, defendant sent the cashiers' checks to

19  Individual A via the United Parcel Service ("UPS") and sent a photo

20  of the UPS shipping label to Agent 1 and Individual B via text

21  message.  Agent 1 forwarded the photo of the UPS label to Nix as

22  proof that defendant paid his gambling debt.

23       The following day, Nix provided defendant direct access to the

24  Sand Island Sports websites.  Specifically, on July 4, 2019, Nix sent

25  defendant a text message and assigned defendant player identification

26  number "R182" and password "yp," and provided defendant the Sand

27  Island Sports website addresses.  Between July 4, 2019, and September

28

1    29, 2019, defendant placed 899 bets on tennis, football, and

2    basketball games through the Sand Island Sports websites.

3        On January 27, 2022, defendant was interviewed in the presence

4    of his attorney by HSI, IRS-CI, and the USAO regarding the Federal

5    Investigation. At the beginning of the interview, a Special Agent

6    from HSI admonished defendant that lying to federal law enforcement

7    agents is a crime, and defendant stated that he understood. During

8    the interview, defendant made several false statements to the agents

9    that were material to the investigation. For example, the agents

10   presented defendant a photo of Agent 1 and asked defendant if he ever

11   discussed sports gambling with Agent 1. Defendant falsely stated

12   that he had never discussed sports betting with Agent 1 and that he

13   knew Agent 1 only from baseball. In fact, as defendant then knew,

14   defendant discussed sports betting with Agent 1 via telephone and

15   text messages on hundreds of occasions. In addition, Agent 1 placed

16   several bets for defendant between May and July 3, 2019, that

17   resulted in defendant paying $200,000 to the Nix Gambling Business,

18   and Agent 1 subsequently assisted defendant obtain an account with

19   Sand Island Sports and place 899 additional bets on sporting events

20   through the website between July 4, 2019, and September 29, 2019.

21       The agents also presented defendant with a copy of one of the

22   cashiers' checks he purchased on June 25, 2019, made payable to

23   Individual A, and asked defendant why he sent the cashier's check.

24   Defendant falsely stated that he had placed a bet online with an

25   unknown person on an unknown website that resulted in a loss of

26   $200,000. In fact, as defendant then knew, defendant placed a series

27   of bets directly through Agent 1 that resulted in the gambling loss.

28

1      Defendant also falsely stated that he did not know the

2  individual who instructed him to send $200,000 in cashiers' checks to

3  Individual A and that he had never communicated with that person via

4  text message.  In fact, as defendant then knew, Agent 1 and

5  Individual B instructed defendant via text messages to send $200,000

6  to Individual A, and defendant had communicated with Agent 1 and

7  Individual B on hundreds of occasions related to defendant's gambling

8  with the Nix Gambling Business.

9      On March 14, 2022, defendant sent Individual B an audio message

10  via WhatsApp regarding his January 2022 interview with HSI and IRS-

11  CI.  During the audio message, defendant told Individual B that he

12  "[sat] over there and listen [to] what these people said and I no

13  said nothing, I not talking.  I said that I only know [Agent 1] from

14  baseball."

15                        SENTENCING FACTORS

16      10.  Defendant understands that in determining defendant's

17  sentence the Court is required to calculate the applicable Sentencing

18  Guidelines range and to consider that range, possible departures

19  under the Sentencing Guidelines, and the other sentencing factors set

20  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

21  Sentencing Guidelines are advisory only, that defendant cannot have

22  any expectation of receiving a sentence within the calculated

23  Sentencing Guidelines range, and that after considering the

24  Sentencing Guidelines and the other § 3553(a) factors, the Court will

25  be free to exercise its discretion to impose any sentence it finds

26  appropriate up to the maximum set by statute for the crime of

27  conviction.

28

11. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:                    6                    USSG § 2B1.1

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

12. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

        f.   The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

        g.   The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

        h.   Any and all rights to pursue any affirmative defenses,
Fourth Amendment or Fifth Amendment claims, and other pretrial
motions that have been filed or could be filed.

                    WAIVER OF APPEAL OF CONVICTION

    15.  Defendant understands that, with the exception of an appeal
based on a claim that defendant's guilty plea was involuntary, by
pleading guilty defendant is waiving and giving up any right to
appeal defendant's conviction on the offense to which defendant is
pleading guilty.  Defendant understands that this waiver includes,
but is not limited to, arguments that the statute to which defendant
is pleading guilty is unconstitutional, and any and all claims that
the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

    16.  Defendant agrees that, provided the Court imposes a term of
imprisonment within or below the range corresponding to an offense
level of four and the criminal history category calculated by the
Court, defendant gives up the right to appeal all of the following:
(a) the procedures and calculations used to determine and impose any
portion of the sentence, with the exception of the Court's
calculation of defendant's criminal history category; (b) the term of
imprisonment imposed by the Court, except to the extent it depends on

the Court's calculation of defendant's criminal history category; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

17. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

18. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of four and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1     <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

2        19.  Defendant agrees that if, after entering a guilty plea

3     pursuant to this agreement, defendant seeks to withdraw and succeeds

4     in withdrawing defendant's guilty plea on any basis other than a

5     claim and finding that entry into this plea agreement was

6     involuntary, then (a) the USAO will be relieved of all of its

7     obligations under this agreement; and (b) should the USAO choose to

8     pursue any charge that was either dismissed or not filed as a result

9     of this agreement, then (i) any applicable statute of limitations

10    will be tolled between the date of defendant's signing of this

11    agreement and the filing commencing any such action; and

12    (ii) defendant waives and gives up all defenses based on the statute

13    of limitations, any claim of pre-indictment delay, or any speedy

14    trial claim with respect to any such action, except to the extent

15    that such defenses existed as of the date of defendant's signing this

16    agreement.

17              <u>EFFECTIVE DATE OF AGREEMENT</u>

18       20.  This agreement is effective upon signature and execution of

19    all required certifications by defendant, defendant's counsel, and an

20    Assistant United States Attorney.

21                  <u>BREACH OF AGREEMENT</u>

22       21.  Defendant agrees that if defendant, at any time after the

23    effective date of this agreement, knowingly violates or fails to

24    perform any of defendant's obligations under this agreement ("a

25    breach"), the USAO may declare this agreement breached.  All of

26    defendant's obligations are material, a single breach of this

27    agreement is sufficient for the USAO to declare a breach, and

28    defendant shall not be deemed to have cured a breach without the

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

23. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1  maximum established by statute, defendant cannot, for that reason,

2  withdraw defendant's guilty plea, and defendant will remain bound to

3  fulfill all defendant's obligations under this agreement.  Defendant

4  understands that no one -- not the prosecutor, defendant's attorney,

5  or the Court -- can make a binding prediction or promise regarding

6  the sentence defendant will receive, except that it will be within

7  the statutory maximum.

8                      NO ADDITIONAL AGREEMENTS

9       26.  Defendant understands that, except as set forth herein,

10 there are no promises, understandings, or agreements between the USAO

11 and defendant or defendant's attorney, and that no additional

12 promise, understanding, or agreement may be entered into unless in a

13 writing signed by all parties or on the record in court.

14 //

15 //

16 //

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2   27. The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 STEPHANIE S. CHRISTENSEN
  Acting United States Attorney

9

10 */s/ Jeff Mitchell*      August 29, 2022
  ————————————————  ————————————
  JEFF MITCHELL       Date
11 Assistant United States Attorney

12           July 7, 2022
  ————————————————  ————————————
  YASIEL PUIG VALDES    Date
13 Defendant

14           July 7, 2022
  ————————————————  ————————————
  KERI AXEL        Date
15 Attorney for Defendant
  Yasiel Puig Valdes

16

17     CERTIFICATION OF DEFENDANT

18  I have read this agreement in its entirety.  This agreement has

19 been read to me in Spanish, the language I understand best.  I have

20 had enough time to review and consider this agreement, and I have

21 carefully and thoroughly discussed every part of it with my attorney.

22 I understand the terms of this agreement, and I voluntarily agree to

23 those terms.  I have discussed the evidence with my attorney, and my

24 attorney has advised me of my rights, of possible pretrial motions

25 that might be filed, of possible defenses that might be asserted

26 either prior to or at trial, of the sentencing factors set forth in

27 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

28

1  and of the consequences of entering into this agreement.  No

2  promises, inducements, or representations of any kind have been made

3  to me other than those contained in this agreement.  No one has

4  threatened or forced me in any way to enter into this agreement.  I

5  am satisfied with the representation of my attorney in this matter,

6  and I am pleading guilty because I am guilty of the charge and wish

7  to take advantage of the promises set forth in this agreement, and

8  not for any other reason.

9

10  YASIEL PUIG VALDES                          July 7, 2022
    Defendant                                   Date

11

12

13

14                    CERTIFICATION OF INTERPRETER

15  I, Maria del Pilar Fernandez am fluent in the written and spoken

16  English and Spanish languages.  I accurately translated this entire

17  agreement from English into Spanish to defendant PUIG on this date.

18

    INTERPRETER                              06/29/2022
19                                           Date

20

21                CERTIFICATION OF DEFENDANT'S ATTORNEY

22  I am Yasiel Puig Valdes's attorney.  I have carefully and

23  thoroughly discussed every part of this agreement with my client.

24  Further, I have fully advised my client of his rights, of possible

25  pretrial motions that might be filed, of possible defenses that might

26  be asserted either prior to or at trial, of the sentencing factors

27  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

28  provisions, and of the consequences of entering into this agreement.

                              19

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1   To my knowledge: no promises, inducements, or representations of any

2   kind have been made to my client other than those contained in this

3   agreement; no one has threatened or forced my client in any way to

4   enter into this agreement; my client's decision to enter into this

5   agreement is an informed and voluntary one; and the factual basis set

6   forth in this agreement is sufficient to support my client's entry of

7   a guilty plea pursuant to this agreement.

8                                                           July 7, 2022

9   KERI AXEL                                 Date
    Attorney for Defendant
10  Yasiel Puig Valdes

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

# EXHIBIT A

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1001(a)(2): Making False Statements] |
| YASIEL PUIG VALDES, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1001(a)(2)]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.  Defendant YASIEL PUIG VALDES was a professional baseball player who played for the Los Angeles Dodgers between 2013 and 2018. The Dodgers traded defendant PUIG to the Cincinnati Reds in December 2018, and the Reds traded defendant PUIG to the Cleveland Indians on July 31, 2019.  As of June 2022, defendant PUIG played for the Kiwoom Heroes of the Korean Baseball Organization League, based in South Korea.

2.  The Department of Homeland Security, Homeland Security Investigations ("HSI") and the Internal Revenue Service – Criminal

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1   Investigation Division ("IRS-CI") in Los Angeles and the United

2   States Attorney's Office ("USAO") for the Central District of

3   California were conducting a federal criminal investigation into

4   federal crimes, including illegal sports gambling and money

5   laundering (the "Federal Investigation").

6       3.   The operation of a sports gambling business in California

7   was prohibited by 18 U.S.C. § 1955 and California Penal Code § 337a.

8                The Wayne Nix Illegal Sports Gambling Business

9       4.   Wayne Nix was a resident of Orange County, California.  Nix

10  was a minor league baseball player from 1995 to 2001.

11      5.   Sometime after 2001, Nix began operating an illegal

12  bookmaking business in the Los Angeles area that accepted and paid

13  off bets from bettors in California and elsewhere in the United

14  States based on the outcomes of sporting events at agreed-upon odds

15  (the "Nix Gambling Business").  Through contacts he had developed

16  during his own career in professional sports, Nix created a client

17  list of current and former professional athletes, and others.

18      6.   Nix used agents to place and accept bets from others for

19  the Nix Gambling Business, thus expanding the business.

20      7.   Sand Island Sports operated Internet sports gambling

21  websites, including www.sandislandsports.com and www.betprestige.com

22  (hereinafter, the "Sand Island Sports websites"), hosted on servers

23  primarily located outside the United States.  Sand Island Sports also

24  operated toll-free telephone services (the "call center") to

25  facilitate sports betting.  The Sand Island Sports websites and call

26  center facilitated unlawful sports gambling by providing a platform

27  to book makers to track bets placed by their clients.

28

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

8.    Agent 1 was a former collegiate baseball player and a private baseball coach.  Beginning in 2019, Agent 1 worked for the Nix Gambling Business as an agent.  Agent 1 placed and accepted bets from others and helped Nix maintain the Nix Gambling Business by, among other things, demanding and collecting money owed to the Nix Gambling Business by bettors and others.

9.    As part of the Nix Gambling Business, Nix and Agent 1 used the Sand Island Sports websites and call center to create accounts through which wagers would be placed and tracked, and to set credit limits for bettors.

10.  Nix provided bettors with account numbers and passwords for the Sand Island Sports websites and directed the bettors to use the Sand Island Sports websites to place bets with the Nix Gambling Business.

11.  Bettors would place bets online through the Sand Island Sports websites, and through Nix, Agent 1, and others working at Nix's direction.

12.  In January 2019, defendant PUIG met Agent 1 at a youth baseball camp, and Agent 1 later assisted defendant PUIG in preparing for the upcoming baseball season.

13.  Individual A was a client of the Nix Gambling Business who, in or about June 2019, was owed at least $200,000 in gambling winnings from the Nix Gambling Business.

14.  Individual B was a private baseball coach who assisted defendant PUIG in placing sports bets with Agent 1 and assisted Agent 1's efforts to collect gambling debts from defendant PUIG.

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1             <u>Defendant PUIG's Use of the Nix Gambling Business</u>

2       15.  Beginning no later than May 2019, defendant PUIG began

3 placing bets on sporting events with the Nix Gambling Business

4 through Agent 1.  By June 17, 2019, defendant PUIG owed the Nix

5 Gambling Business $282,900 for sports gambling losses.

6       16.  Between June 25, 2019, and July 3, 2019, in a series of

7 text messages, Agent 1 and Individual B instructed defendant PUIG to

8 make a check or wire transfer payable to Individual A.

9       17.  On June 25, 2019, defendant PUIG withdrew $200,000 from a

10 Bank of America financial center in Glendale, California, and

11 purchased two cashiers' checks for $100,000 each that were made

12 payable to Individual A.

13       18.  On July 3, 2019, defendant PUIG sent the cashiers' checks

14 to Individual A via the United Parcel Service ("UPS") and sent a

15 photo of the UPS shipping label to Agent 1 and Individual B via text

16 message.

17       19.  On July 4, 2019, via text message, Nix provided defendant

18 PUIG direct access to the Sand Island Sports websites, assigned

19 defendant PUIG player identification number "R182" and password "yp,"

20 and provided defendant PUIG the Sand Island Sports website addresses.

21       20.  Between July 4, 2019, and September 29, 2019, defendant

22 PUIG placed 899 bets on sporting events through the Nix Gambling

23 Business, Agent 1, and Sand Island Sports.

24             <u>Investigation into Wayne Nix and Agent 1</u>

25       21.  On January 27, 2022, defendant PUIG was interviewed in the

26 presence of his attorney by HSI, IRS-CI, and the USAO regarding the

27 Federal Investigation, including the cashiers' checks defendant PUIG

28

1  sent to Individual A.  Defendant PUIG, through his counsel, requested

2  that HSI not record the interview.

3       22.  At the beginning of the interview, a Special Agent from HSI

4  admonished defendant PUIG that lying to federal law enforcement

5  agents is a crime, and defendant PUIG stated that he understood.

6  B.   <u>FALSE STATEMENTS</u>

7       23.  On or about January 27, 2022, in Los Angeles County, within

8  the Central District of California, and affecting the Federal

9  Investigation in the Central District of California, and in a matter

10  within the jurisdiction of the executive branch of the government of

11  the United States, namely, HSI, IRS-CI, and the USAO, defendant PUIG

12  knowingly and willfully made materially false statements and

13  representations to HSI, IRS-CI, and the USAO knowing that these

14  statements and representations were untrue:

15       a.   Defendant PUIG falsely stated that he had never

16  discussed sports betting with Agent 1.  In fact, as defendant PUIG

17  then knew, defendant PUIG discussed sports betting with Agent 1 via

18  telephone and text messages on numerous occasions, and Agent 1

19  assisted defendant PUIG in placing at least 899 bets on sporting

20  events between in or about May 2019 and on or about September 29,

21  2019.

22       b.   Defendant PUIG falsely stated that he had placed a bet

23  online with an unknown person on an unknown website which resulted in

24  a loss of $200,000.  In fact, as defendant PUIG then knew, defendant

25  PUIG placed a series of bets directly through Agent 1 that resulted

26  in the gambling loss, and not through a website.

27       c.   Defendant PUIG falsely stated that he did not know the

28  individual who instructed him to send $200,000 in cashiers' checks to

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1  Individual A and that he had never communicated with that person via

2  text message.  In fact, as defendant PUIG then knew, Agent 1 and

3  Individual B, who defendant PUIG knew, instructed defendant PUIG via

4  text messages to send $200,000 to Individual A, and defendant PUIG

5  had communicated with Agent 1 and Individual B on multiple occasions.

6

7                                        TRACY L. WILKISON
                                         United States Attorney
8

9

10                                       SCOTT M. GARRINGER
                                         Assistant United States Attorney
11                                       Chief, Criminal Division

12                                       KRISTEN A. WILLIAMS
                                         Assistant United States Attorney
13                                       Acting Chief, Major Frauds Section

14                                       ALEXANDER B. SCHWAB
                                         Assistant United States Attorney
15                                       Deputy Chief, Major Frauds Section

16                                       JEFF MITCHELL
                                         Assistant United States Attorney
17                                       Major Frauds Section

18                                       DANIEL BOYLE
                                         Assistant United States Attorney
19                                       Asset Forfeiture & Recovery
                                         Section
20

21

22

23

24

25

26

27

28

                                    6