Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Attorneys for Defendant
Yasiel Puig Valdes

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>YASIEL PUIG VALDES,<br><br>    Defendant. | Case No.: 2:22-cr-00394-DMG<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR BREACH OF PLEA AGREEMENT** |

Defendant Yasiel Puig Valdes ("Defendant Puig" or "Puig"), through his counsel Waymaker LLP, respectfully submits his Opposition to the government's Motion for Breach of Plea Agreement ("Mot." (Dkt. 33)), filed December 14, 2022.

The government's Motion presents no issue that the Court should reach at this time. A plea agreement is a contract, to which the Court is not a party. Like any other party to a contract, to merit the Court's intervention, the government must prove the elements of a breach of contract – which include damages – or demonstrate the need for an injunctive remedy that would satisfy the elements necessary for declaratory relief. The government has done neither. The government's motion is premature and unnecessary, and the Court should decline to take any action at this time.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The government issued a grand jury subpoena to defendant Puig on December 14, 2021, seeking testimony on February 16, 2022. Given his commitment to play baseball in the Republic of Korea in summer 2022, and his need to leave for Korea in February, Puig's counsel requested that Puig be permitted to sit for an interview in lieu of grand jury testimony, and the government agreed.

The interview took place by video conference on January 27, 2022; Puig was at a hotel and had just returned from a workout. The only person in the room with Puig was a civil attorney who had assisted him in a prior civil matter; the rest of the participants on the interview, including the interpreter, were in different locations on Zoom. Puig did not have his own interpreter, and the attorney who was with him did not speak Spanish.

Prior to the interview, the prosecutors did not tell Puig's attorney what the interview would be about, other than that it would be about online gambling. Although it is common to request records from a witness to jog memory and because records are often the best evidence—particularly when historical communications are at issue—the government did not request any records from

1  Puig.  He therefore had no preparation or context to evaluate the government's
2  questions, although they were asking about communications that took place more
3  than 2 years before the interview.  As Puig attempted to refresh his own recollection
4  during the interview using messages on his own device, the government terminated
5  the interview.
6      After the interview, the government did not contact Puig's attorney, did not
7  indicate that the government had any issues with the interview, never requested any
8  messages or documents from Puig, and never requested a follow up interview.
9      On May 9, 2022, the government issued a target letter to Puig, indicating he
10 was a target of a criminal investigation regarding possible false statements and
11 obstruction of justice.  The undersigned criminal counsel from Waymaker LLP were
12 retained on or about May 25, 2022.  Counsel were told that the government had no
13 interest in talking with Puig again and were prepared to indict him.
14     On June 6, 2022, the government met with Puig and his counsel via Zoom
15 and made a presentation of the evidence and the charges it intended to bring.  Puig
16 was in Korea.  The prosecutors told counsel and Puig that the government was
17 intending to indict him imminently with false statements and obstruction charges,
18 and already had authority to proceed with those charges. They further stated that, if
19 indicted, the government would seek an arrest warrant which would go into Interpol;
20 this would trigger Puig's arrest abroad.  Puig was given two days, until June 8,
21 2022, to let the government know if he was interested in a pre-indictment
22 disposition.  Defense counsel responded to the government on June 8 and requested
23 that the government issue a plea offer to the false statements charge only, and, on
24 June 16, 2022, the government issued a plea agreement that would have Puig plead
25 guilty to a charge of Making False Statements in violation of 18 U.S.C. §
26 1001(a)(2).
27     After some discussion between counsel concerning the potential factual basis
28 and other issues, the government made some edits and reissued the plea agreement

on June 27, 2022, and then again on July 6, 2022, with a July 8, 2022 deadline.  Puig signed on July 7, 2022.  The government signed and filed the plea agreement on August 29, 2022.  (*See* Dkt. 6.)

After finishing his baseball season, Puig returned from Korea on November 13, 2022.  On November 15, Puig appeared in this Court for an initial appearance and arraignment.  He waived his right to an indictment and preliminary hearing; and a change of plea proceeding was promptly scheduled for November 23, 2022.

On that date, Puig appeared with counsel and requested additional time to explore a factual innocence defense.  Counsel for Puig informed this Court about the procedural history of Mr. Puig's charges, the urgency required by the government's plea agreement in light of Puig's ongoing baseball season and potential international arrest, and the facts that counsel had reviewed and developed with Puig since he returned from Korea and was able to meet with counsel in person.  Specifically, counsel informed this Court that, in preparation for the change of plea hearing, counsel and Puig found evidence suggesting that other individuals had sought to induce him to collude or obstruct the government's investigation but Puig had repeatedly refused – at a minimum contradicting the government's obstruction allegations.  Prior to the hearing, defense counsel had requested and reviewed interview reports that corroborated some of Puig's statements, casting doubt on the government's prosecution theory.

Accordingly, counsel requested various additional discovery items from the government to explore Puig's factual defenses with him, as the Court would have required that counsel affirm that they had done under Fed. R. Crim. P. 11.  The Court granted a short continuance of the change-of-plea hearing until November 29, 2022, and ordered the parties to meet and confer regarding the requested discovery.

The government subsequently provided some of the items requested, and the defense team finally had time in person with Puig to review those items and to evaluate the context of events with Puig.

3

On November 28, 2022, counsel informed the government that, after reviewing the materials and further exploring the facts with Puig, he did not intend to enter a guilty plea, and counsel together informed this Court, who took the hearing off calendar.

## II. DISCUSSION

The government's motion for breach of the plea agreement fails because: (1) the government cannot meet the elements of a contractual breach without any damages; and (2) any request for declaratory relief is not actionable or ripe for adjudication. The defense also respectfully notes that the government has not asked this Court to find a "knowing breach" as required by paragraph 22 of the plea agreement and the defense believes that issue – if the government wishes to raise it – should not be addressed until pretrial motions; the defense needs the benefit of discovery to determine whether to challenge the specific enforcement of that paragraph.

### A. The Government Has Suffered No Damages to Satisfy the Elements of a Breach of Contract Claim

Based on the fact that defendant Puig has decided not to enter a guilty plea, the government has filed a motion for breach, asking this Court for the remedy of being "released from its obligations" under the plea agreement. (*See* Mot. at 3.) As the government recognizes (*id.* at 1) plea agreement is a contract – contractual principles therefore apply. *See United States v. Plascencia-Orozco*, 852 F.3d 910, 919 (9th Cir. 2017) ("Because 'plea agreements are contractual in nature' we measure them by 'contract law standards.'") (Citations omitted). Thus, the government asks the Court to find a breach of contract, but the elements of a contractual breach are clearly not met.

Breach of contract requires: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the

resulting damages to the plaintiff." *Anheuser-Busch, LLC v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 6205705 *7 (C.D. Cal. Sept. 11, 2020).

Here, the government cannot satisfy the elements of breach of contract because it has no damages. *See Global Hawk Ins. Co. v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854 (C.D. Cal. 2019) ("A claim for breach of contract 'is not actionable without damage.'") Indeed, Puig both waived indictment and appeared voluntarily (from a foreign country) pursuant to a summons in this case, all of which to-date has saved the government resources over the alternative of an indictment, warrant, and foreign arrest. These shortcomings (and the government's failure to identify any possible damages in its motion), make clear that the government "cannot sustain a claim for breach of contract because [the government] did not suffer any cognizable harm caused by [Puig]." *Global Hawk*, 424 F. Supp. 3d at 861.

### B. The Government's Requested Relief Is Unspecified, Overbroad, and Not Ripe

When evaluated under appropriate principles of contract law, it appears that what the government really seeks is declaratory relief, in the form of a declaration from this Court that the government may be relieved of its contractual obligations. But declaratory relief is not ripe for determination. The rationale for avoiding the premature adjudication for declaratory relief "is to prevent courts from entangling themselves in abstract disagreements." *In re Real Estate Assoc. Ltd., P'ship Litig.*, 223 F. Supp. 2d 1109, 1138 (C.D. Cal. 2002). "In order for an issue to be ripe for determination, two conditions must be satisfied: (1) the dispute must be sufficiently concrete to make declaratory relief appropriate (citations omitted); and (2) if a court declines to consider the issues, the parties will suffer hardship." *Id.*

Here, the request is not ripe for determination because it is not sufficiently concrete to make declaratory relief appropriate. Indeed, the government has requested that the Court "relieve it from its obligations" under the plea agreement

5

1  without specifying exactly the obligation(s) of which it seeks to be relieved. This
2  alone makes its motion premature and unsupported. Similarly, there is no hardship
3  that will be suffered if the Court declines to consider the issues at this point in the
4  litigation. Indeed, while the government does not specify the obligation(s) of which
5  it seeks to be relieved, it references that one of its obligations was not to charge
6  defendant with a violation of 18 U.S.C. § 1503, Obstruction of Justice. (Mot. at 2-
7  3.) But nothing is stopping the government from proceeding with the case, using the
8  regular tools at its disposal to seek an indictment, should it wish to do so.

9  Accordingly, the government cannot show a concrete need for the Court's
10 intervention, nor will it suffer any hardship without it. If the government wishes to
11 supersede the information, it has the power to convene a grand jury, present
12 evidence, and cause an indictment to be returned. *See* Fed. R. Crim. P. 6(a)(1).
13 There is no legal or practical impediment to the government taking these actions.

14 By contrast, this is not the situation – often present in breach of plea
15 agreement cases – where the defendant has entered a guilty plea such that the
16 government needs to seek the specific relief of vacating the guilty plea that the
17 Court has accepted pursuant to Rule 11. *See, e.g.*, *U.S. v. Aguila-Muniz*, 156 F.3d
18 974, 978 (9th Cir. 1998) ("After a plea agreement has been accepted and entered by
19 the court, the court may not rescind the plea agreement on the government's motion
20 unless the defendant has breached the agreement."). Here, there is no comparable
21 need for any specific form of relief, so the motion should be denied.

22 If the government were to seek a superseding indictment, defendant Puig
23 would possibly have a breach motion because he would have damages. The Ninth
24 Circuit has endorsed the procedure that a defendant may challenge an indictment for
25 breach of a plea agreement. *See Plascencia-Orozco*, 852 F.3d at 920 ("If the
26 government indicts a defendant on charges that the defendant believes are barred by
27 a preexisting plea agreement, the defendant may move to dismiss those charges.")
28 Like any party to a contract, however, Puig might or might not decide to assert such

6

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1 breach, in which case the Court might never be asked to intervene.  Judicial
2 economy favors waiting until the point at which there is a justiciable controversy
3 and a need for judicial intervention, and this is not that point.

4       The government's belief that the Court needs to do something to "relieve it
5 from its contractual obligations" apparently arises from superfluous language in the
6 plea agreement stating that its obligations will be relieved "[i]f the USAO declares
7 this agreement breached, and the Court finds such a breach to have occurred."  (*See*
8 Plea Agreement (Dkt. 6) at ¶ 21).  But the government drafted this language and
9 includes it in all plea agreements in this district.  The Court did not draft the
10 language, nor is it found in any statute or rule.  The government cannot use
11 contracting language to assign the Court a task, where the law does not provide a
12 basis for the Court's involvement.  *See supra*, *Real Estate Assoc. Ltd.*, 223 F. Supp.
13 2d at 1138.

**C. The Government Has Not Requested that the Court Find a Knowing Breach and the Defense Requests that Any Discussion of that Issue Be Deferred Until the Pretrial Motion Stage**

17       Finally, it is important to note that the government requested only that the
18 Court find a breach under paragraph 21 of the plea agreement, rather than a
19 "knowing breach" of the plea agreement under paragraph 22, and did not ask this
20 Court to invoke any of the potential waivers in the subparagraphs of paragraph 22.
21 Out of an abundance of caution, however, and because the government did not
22 identify with precision the relief it seeks, the defense wishes to be clear that it does
23 not believe paragraph 22 is implicated by the government's Motion and, in any
24 event, it would respectfully request that any adjudication of that issue be deferred to
25 the pre-trial motion stage of this case.

26       Paragraph 22 of the plea agreement provides, among other things, that if the
27 Court finds a "knowing breach" of the plea agreement, the Court may permit the
28 Factual Basis to be admitted at trial.  The defense submits that this is more

1  appropriately a pre-trial issue, and also submits that Puig and his team need to
2  review all of the discovery before it can respond to whether a "knowing breach" has
3  occurred. Puig may also ask the Court to exclude the statement on other evidentiary
4  bases.
5      As the defense has informed the Court, the circumstances defendant was
6  under in deciding whether to enter a plea agreement with the government were
7  difficult, at best. After retaining criminal counsel on May 25, 2022, the government
8  met (over Zoom) with counsel and defendant concerning the government's view of
9  the evidence and his options on June 6, 2022, with a short deadline to indicate his
10 willingness to discuss a plea, and a plea agreement was issued eight days after that.
11 As defendant Puig was weighing his options, he was also enduring a grinding work
12 schedule half-way across the world in Korea. For a charge that did not present a
13 danger to anyone, and presented no statute of limitations issues, it is not clear why
14 there was a need for haste, but the government clearly was in a hurry.
15     This presented the defendant with a Hobson's choice: agree to a plea
16 agreement or face a mid-season arrest and extradition, ruining his season and
17 interfering with his only source of gainful employment. The impossibility of this
18 choice was compounded by the fact that defendant had new counsel, was 17-hours
19 away in a different time zone, has a third-grade education, ADHD, and needed a
20 Cuban translator to understand the government's complex plea agreement and
21 alleged Factual Basis.
22     Given these circumstances, the defense may seek recission of the plea
23 agreement, or at least may ask the Court not to grant the government specific
24 enforcement of paragraph 22, asserting contractual defenses such as
25 unconscionability, public policy, undue influence, nondisclosure, or mistake. *See,*
26 *e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("An agreement or
27 any portion thereof is procedurally unconscionable if 'the weaker party is presented
28 the clause and told to 'take it or leave it' without the opportunity for meaningful

negotiation.'" (citing *Szetela v. Discover Bank*, 97 Cal.App.4th 1094 (2002)). But the defense needs a full review of the relevant discovery to evaluate these defenses, and may need an expert report attesting to Puig's ADHD and limited education. For these reasons, the defense requests that these decisions be deferred until the pretrial period.

In addition, the defense may ask the Court to exclude the statement under general evidence standards such as Fed. R. Evid. 403, which would require the Court to determine the admissibility of the statement in the context of other trial evidence. These would be appropriate questions to evaluate in pre-trial motions.

For these reasons, the defense respectfully requests that any determination whether there was a "knowing breach" be addressed, if at all, in pre-trial motions.

### D.  The Motion Should be Denied Pursuant to Local Rule 7-3

As a final matter, the government's motion should be denied for failure to meet and confer in violation of Local Rule 7-3. The Central District of California's local rules require that seven days before moving for relief, "counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. Local Rule 7-3.[1]  District courts have discretion to refuse to consider a motion that fails to comply with these requirements. *See Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) (Denying motion and stating "[t]he meet and confer requirements of Local Rule 7-3 are in place for a reason . . . nothing short of strict compliance with the local rules" is expected.); *See also Purdue v. CBC Rest. Corp.*, 2019 WL 7166979, at *1-2

---

[1] If no resolution is reached, Local Rule 7-3 also requires that "counsel for the moving party [] include in the notice of motion a statement to the following effect: 'This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date).'"

(C.D. Cal. Nov. 9, 2019) (denying motion on the basis that it failed to comply with Local Rule 7-3, and disregarded explanations for the failure offered on reply.)

Here, the government has failed to meet and confer in violation of the local rules and failed to include the required language in its notice of motion that "[t]his motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." (*See* Dkts. 33, 36.) As in *Purdue*, anything the government could say on reply to explain this fatal deficiency (and Puig is aware of no such thing) should be disregarded. The meet and confer requirement encourages parties to informally resolve disputes and preserve valuable judicial resources. The government has entirely bypassed this rule—and professional courtesy—by filing the motion with no notice whatsoever, and the issues raised by Puig in this response could have obviated the need for the instant motion practice. *See Purdue,* 2019 WL 7166979, at *2 (there are "numerous conflicts manifest in the parties' briefing [which] make clear that many of the parties' disputes were suitable for exactly the type of extensive meet and confer mandated by Local Rule 7-3 before the parties' sought the Court's intervention on each of these issues.").

The defense further notes that this is the second time that government counsel has simply disregarded the Local Rules (*see* Dkt. 35) and it should have to at least attempt to follow the rules in good faith like everyone else.

The Motion should be denied on this basis alone.

## III. CONCLUSION

For the foregoing reasons, Puig respectfully requests that this Court deny the Government's Motion for Breach.

DATED: December 28, 2022      WAYMAKER LLP

By: ___*/s/ Keri Curtis Axel*___
KERI CURTIS AXEL
*Attorneys for Defendant Yasiel Puig Valdes*