E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
     1100/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698/2426
     Facsimile: (213) 894-6269/0141
     E-mail:    jeff.mitchell@usdoj.gov
                daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-394-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR BREACH; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION; EXHIBTS |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jeff Mitchell and Daniel Boyle, hereby files its reply to defendant's opposition to plaintiff's motion for breach. (Dkt. No. 45.)

//

//

This reply is based upon the attached memorandum of points and authorities, the declaration and exhibits,[1] the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 4, 2022                    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


         /s/ Jeff Mitchell
JEFF MITCHELL
DANIEL BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] The declaration and exhibits will be lodged separately under seal.

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On December 29, 2022, defendant filed an opposition to the government's motion to find him in breach of his plea agreement (the "Opposition"). Defendant appears to concede that the government should be able to charge him with Obstruction of Justice, but argues that the plea agreement does not prohibit the government from seeking an indictment now, even though it expressly provides otherwise.

Defendant also unnecessarily describes the January 27th interview and plea negotiation process; however, defendant's description omits key facts and is thus misleading on several points. The government briefly provides a more complete factual background below.

**II.  FACTUAL BACKGROUND**

After several months of negotiating, defendant, through his former counsel, agreed to participate in a voluntarily interview on January 27, 2022, at 1:30 p.m. After the government advised counsel of the nature of its investigation, counsel indicated that his client was unlikely to have information relevant to the investigation, but nonetheless requested an immunity letter to protect defendant from any incriminating statements. (Exhibit A.) The government agreed. The government also advised counsel that defendant was not a target of the investigation. (Declaration ¶ 2.)

In his opposition, and in statements made to the government and to the media,[1] defendant has suggested that he was not adequately prepared for the interview because his attorneys practiced civil, not

---

[1] https://www.latimes.com/california/story/2022-11-23/yasiel-puig-plea-hearing-delayed-attorneys-explore-possible-defense

criminal, law and he did not have his own interpreter. (Opposition at 1.) These claims are misleading.

Defendant's attorney at that time was a former Federal criminal prosecutor from the Southern District of California. (Declaration ¶ 3.) Further, defendant's then-counsel advised the government that even though defendant speaks and understands some English, counsel recommended the government retain a professional Spanish-language interpreter, and in particular, one of Cuban descent to avoid any misunderstandings due to the dialect. (Id. ¶ 6.) The government agreed, and retained an independent court-certified Spanish language interpreter of Cuban descent for the interview. (Id.)

On January 27, 2022, the government participated in a Webex video conference with defendant, his two defense attorneys, and an independent court-certified Spanish language interpreter of Cuban descent. (Exhibit B.) The Webex conference began on time at 1:30 p.m., however, defendant was approximately 30 minutes late. After he arrived, defendant was given time to speak to both of his attorneys and the interpreter outside the presence of the government. At the beginning of the interview, defendant's attorneys requested that the interview not be recorded. (Exhibit B.) The government agreed. The government then discussed the immunity letter, and the case agent began to admonish defendant that any false statements could result in a criminal prosecution; however, defendant interrupted the agent and asked why the government was wasting his time. (Id.) The agent nonetheless finished the admonishment. (Id.)

For the next hour and a half, the government attempted to interview defendant about his knowledge of the Wayne Nix Sports Gambling Organization. The government showed defendant photos of the

Sand Island Sports conspirators, copies of the cashier's checks defendant purchased to pay his gambling losses with Sand Island Sports, screen capture images of the Sand Island Sports Website that defendant used to place bets, and even a screen capture image that defendant had taken of his own cell phone and sent to the individual described in the Information as Agent 1.  (Id.)  Defendant, however, denied all knowledge of the organization and its conspirators, except for Agent 1 who he stated that he knew only from baseball.  Towards the end of the interview, defendant indicated that Agent 1 had just sent him a text message, and defendant then began to review his prior text messages with Agent 1.  (Id.)

In the Opposition, defendant states that the government terminated the interview while defendant was still refreshing his memory with the older text messages from Agent 1.  (Opposition at 2.)  The government disagrees.  Defendant indicated that he found text messages with Agent 1 as far back as May 2019 but indicated that there were no discussions related to unlawful sports gambling.  (Exhibit B.)  The government then asked a few additional questions and eventually ended the interview at 3:41 p.m.  (Id.)

In the Opposition, defendant also states that the government did not contact defendant's prior counsel after the interview and did not indicate there were any issues with the proffer.  (Opposition at 2.)  The government again disagrees.  Multiple times during the interview, the government allowed defendant, his attorneys, and the interpreter to speak outside the presence of the government.  (Exhibit B.)  During the final break during the interview, government counsel privately advised defendant's then-counsel that defendant's statements were contrary to the evidence obtained during the

1  investigation. (Id. at 3; Declaration ¶ 9.) Counsel then conferred
2  with his client, but defendant's recollection did not change after
3  the break. Immediately after the interview, the government again
4  spoke to counsel privately and advised him that the government
5  believed defendant had provided false statements during the interview
6  and that the government would discuss internally whether to seek an
7  indictment. (Declaration ¶ 10.)

8  Ultimately, an indictment of defendant was approved and signed
9  by the Chief of the Criminal Division on May 25, 2022. (Declaration
10 ¶ 11.) That same day, the government was contacted by defendant's
11 new counsel, Keri Curtis Axel. (Id.) The government advised counsel
12 that it was prepared to seek an indictment against defendant alleging
13 Obstruction of Justice and False Statements, but counsel requested
14 that the government delay seeking an indictment and instead attempt
15 to resolve the case pre-indictment. (Id.) Counsel indicated that a
16 pre-indictment resolution would be preferable to defendant because it
17 would minimize the amount of negative publicity. (Id.) Two days
18 later, before counsel had reviewed any of the evidence, defense
19 counsel advised the government via email that she had "authority to
20 move forward to engage in plea discussions," and requested a reverse
21 proffer to review the evidence. (Exhibit C.) The government agreed.

22 On June 6, 2022, the government conducted a reverse proffer and
23 showed defendant and his counsel a 79-slide PowerPoint presentation
24 with defendant's betting history with Sand Island Sports, his text
25 messages with Agent 1 and Wayne Nix, and an audio recording in
26 English sent by defendant, among other evidence. (Declaration ¶ 12.)
27 Shortly after the reverse proffer, counsel requested a plea agreement
28 that would allow defendant to plead guilty to a single-count

4

information charging him with the less serious offense of providing false statements. (Id. ¶ 13.) The government agreed.

On June 16, 2022, the government extended a plea offer to defendant, and requested a response by June 23rd. (Exhibit D.) After several rounds of negotiations, including over the factual basis and potential fine, defendant signed the plea agreement on July 7th. During this time, defense counsel never suggested that defendant was factually innocent and did not request any additional discovery. (Declaration ¶ 14.)

In his Opposition, defendant states that he was given only two days to consider the proposed plea, and that he had no choice but to accept a plea agreement because the government provided defendant with an ultimatum: sign a plea agreement or face arrest and extradition in Korea, thereby ruining his baseball season. (Opposition at 2, 8.) The government disagrees.

First, while the government did ask counsel to notify the government relatively quickly whether defendant wanted a pre-indictment resolution, as described above, defendant was given nearly a month to consider successive versions of the proposed plea before defendant ultimately signed the final version of the plea agreement.

Second, the government disagrees that defendant or his counsel were given any ultimatum regarding possible arrest and extradition. When defense counsel (not the government) raised the issue of arrest and extradition during a meet and confer, the government truthfully confirmed that arrest warrants are typically issued after an indictment is returned. (Declaration ¶ 15.) Indeed, Rule 9 of the Federal Rules of Criminal Procedure states that the court "must issue a warrant [] for each defendant named in an indictment. . . ."

(emphasis added.) Government counsel noted that this could result in a foreign arrest, because after arrest warrants are issued, law enforcement officers are required to submit those warrants to a central database which could trigger a foreign arrest – all facts beyond the control of government counsel. However, government counsel was simply responding to a topic raised by defense counsel. Moreover, as described above, defendant's current counsel was actively seeking plea negotiations from the earliest interactions with the government, which preceded any discussions of arrest or extradition. (See Exhibit C.)[2]

After a plea agreement was negotiated, counsel requested that it be filed under seal and that defendant be allowed to continue playing baseball in Korea. (Declaration ¶ 17.) The government initially declined counsel's request, but eventually agreed to both requests for the reasons described in the under-seal declaration. (Id. ¶ 18.) On at least two occasions, the government advised counsel that it was prepared to unseal the matter, but eventually conceded to counsel's requests to keep the matter sealed and continue defendant's initial appearance to allow defendant to finish the baseball season, and later, to finish the playoffs. (Id. ¶ 19.)

In his opposition, defendant states that in November 2022 he "found evidence suggesting that other individuals had sought to induce him to collude or obstruct the government's investigation but Puig had repeatedly refused – at a minimum contradicting the

---

[2] Moreover, as a matter of practice in this district, defense attorneys often request that clients be permitted to self-surrender at the courthouse before any warrants are submitted. Defense counsel never requested that her client be allowed to self-surrender if the government obtained an indictment. (Declaration ¶ 16.)

6

government's obstruction allegations." (Opposition at 3.) This claim is vague but appears to be inaccurate for two reasons.

First, in November 2022, defense counsel contacted the government and stated that she believed that Agent 1 and Individual B entrapped defendant. (Declaration ¶ 20.) On November 22, 2022, the government provided counsel additional discovery showing that neither Agent 1 nor Individual B could have legally or factually entrapped defendant, because all of the contemplated charges (False Statements and Obstruction of Justice) stemmed from defendant's January 27th interview, and neither Agent 1 nor Individual B were working at the government's direction at that time. Defendant's false statements and obstructive conduct are solely his responsibility.

Second, the new evidence that defendant claims to have "found" appears to be text messages between defendant and Agent 1 that were sent in March 2022, two months after both offenses occurred during the January 27th interview. In these messages, Agent 1 asked defendant several times what defendant said about Agent 1 during the interview. These text messages show that defendant initially refused to respond to Agent 1 because he feared law enforcement would seize his cell phone, but eventually relayed a message to Agent 1 through the person identified as Individual B in the Information. In that message, defendant told Individual B to contact Agent 1 and tell him that defendant said "nothing, I not talking. I said that I only know [Agent 1] from baseball. Call [Agent 1] and tell him that[.] not text him." (Exhibit E.) These messages are not exculpatory. Further, they are not new to defendant. The government presented these messages to defendant and his current counsel during the reverse proffer. (Declaration ¶ 22; Exhibit E.)

7

## III. ARGUMENT

### A. Defendant Breached His Plea Agreement

Defendant appears to concede that he breached the express terms of his plea agreement by not pleading guilty; however, he argues that he had no choice but to plead guilty because an indictment would have interfered with his baseball season. (Opposition at 8.) This is not a defense and is irrelevant to the issues before the Court.

Defendant suggests that the proper procedure here is for the government to violate its obligations in the plea agreement and charge defendant with Obstruction of Justice now, and then allow defendant the opportunity to bring a motion to dismiss the indictment later, which he "might or might not decide to assert." (Opposition at 6-7.) The government disagrees. Defendant fails to cite to any authority for his suggested approach, and it is contrary to the explicit terms of the plea agreement.

As defendant concedes, plea agreements are examined by contract law standards. Here, the filed plea agreement is the governing contract, and expressly outlines the procedures to follow in this situation. (Plea Agreement ¶¶ 21, 22.) It states that the government will be relieved of its obligations only after "the USAO declares this agreement breached, and the Court finds such a breach to have occurred." (Id.) (emphasis added.) Thus, based on the contract in this case, the government is not relieved of its obligations until the Court finds a breach.[3]

---

[3] The plea agreement here also states that the effective date of the plea agreement is upon the signature of the defendant, his counsel, and an Assistant U.S. Attorney. (Plea Agreement ¶ 20.) Thus, the plea agreement became effective, and binding on the parties, when the last signature was added on August 29, 2022.

8

Several circuits have held that the government may not unilaterally determine a breach.  See, e.g., United States v. Miller, 406 F.3d 323, 334-35 (5th Cir. 2005)(government may not unilaterally declare breach because due process requires that defendant be given notice and an opportunity to debate issue with court); United States v. Cox, 985 F.2d 427, 430 (8th Cir. 1993)(neither government nor defendant may unilaterally declare plea agreement void; only court has that authority); United States v. Sowemimo, 335 F.3d 567, 571-72 (7th Cir. 2003)(although government may not unilaterally declare breach of plea agreement, defendant not entitled to evidentiary hearing because he admitted he did not cooperate fully.)

**B.   The Government Need Not Prove Civil Damages**

In his opposition, defendant also cites to numerous civil cases that indicate that the moving party must show civil damages in a breach of contract case; however, defendant fails to cite to a single criminal case with a similar holding.  Defendant also suggests that the government has not suffered damages because it can seek an indictment now for Obstruction of Justice without a finding by the Court.  (Opposition at 5-6.)  As discussed above, the government disagrees.  Further, defendant fails to recognize the additional time and resources that will be devoted to a trial in this matter, or the substantial resources already expended preparing and producing additional discovery in preparation for trial.

Defendant also argues that the motion should be denied because the government did not specify the "exact[] obligation(s) of which it seeks to be relieved."  (Opposition at 5-6.)  The plea agreement, however, contains only one material obligation, i.e., not to charge defendant with Obstruction of Justice.  (Plea Agreement ¶ 3(d).)  Not

only did the Government's Motion for Breach cite to its obligation in paragraph 3(d) (Motion at 1-2), but defendant is clearly aware of the government's obligation because he requested it (Exhibit D).

### C. No Objection to Deferring on Paragraph 22

Defendant requests that any adjudication of the issue in paragraph 22, i.e., whether the government can introduce his factual basis at trial, be deferred to pre-trial motions. (Opposition at 7.) The government does not object to defendant's request.

### D. The Government Provided Notice of Intent to Seek a Breach

In his opposition, defendant argues that the Court should deny the government's motion because the government did not meet and confer and provided defendant "no notice whatsoever," in violation of Local Rule 7-3.[4] (Opposition at 10.) The government disagrees.

During the hearing on November 23, 2022, the government advised both defendant and the Court that it would seek a breach of the plea agreement if defendant failed to plead guilty. Later on November 23, 2022, the government provided counsel written notice that it would seek a motion for breach if defendant refused to abide by the terms of his plea agreement and plead guilty. (Exhibit F.) On November 28, 2022, the parties met and conferred and defense counsel advised the government that defendant does not intend to plead guilty. (Dkt. No. 26.)

## IV. CONCLUSION

For all of these reasons, the government requests that the Court make a finding that defendant breached his plea agreement.

---

[4] The Court's Criminal Motion & Trial Order required defendant to serve the Opposition on the government by 4:30 p.m.; however, defendant filed his opposition late at 10:32 p.m. The government does not object to the late filing.