1

1       UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
2       HONORABLE DOLLY M. GEE, U.S. DISTRICT JUDGE

3

4   UNITED STATES OF AMERICA,

5                   Plaintiff,

6     v.                              Case No.
                                      2:22-cr-00394-DMG-1
7   YASIEL PUIG VALDES,

8                   Defendant.
    _____

9

10

11

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                    STATUS CONFERENCE
13
            Wednesday, November 23, 2022
14                   2:33 P.M.

15          LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22   _____

23              JUDY K. MOORE, CRR, RMR
             FEDERAL OFFICIAL COURT REPORTER
24            350 WEST 1ST STREET, #4455
            LOS ANGELES, CALIFORNIA 90012
25                   213.894.3539

**2**

1                          APPEARANCES

2    FOR THE GOVERNMENT:
     MR. JEFF P. MITCHELL
3    MR. DANIEL G. BOYD
     Assistant United States Attorney
4    312 North Spring Street, 11th Floor
     Los Angeles, California 90012
5

6    FOR THE DEFENDANT:
     MS. KERI C. AXEL
7    Waymaker, L.L.P.
     515 South Flower Street, Suite 3500
8    Los Angeles, California 90071

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 2:33 p.m.)

2          COURTROOM DEPUTY:  Calling Item Number 2,

3  CR-22-394-DMG, United States of America versus Yasiel Puig

4  Valdes.

5          For the Government we have?

6          MR. MITCHELL:  Good afternoon, your Honor.  Jeff

7  Mitchell and Dan Boyle on behalf of the United States.

8          COURTROOM DEPUTY:  On behalf of defense?

9          MS. AXEL:  Good afternoon, your Honor.  Kerry Curtis

10  Axel and Jose Nuno from the Waymaker law firm on behalf of

11  defendant Yasiel Puig.  He is present.  He is on his own

12  recognizance and here with a Spanish language interpreter.

13          THE COURT:  All right.  Mr. Puig, can you hear and

14  understand your Spanish language interpreter without any

15  problems?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Ms. Axel, I understand that

18  you are seeking a continuance of the plea hearing?

19          MS. AXEL:  Yes, your Honor.  Should I go to the

20  podium?

21          THE COURT:  Yes, please.

22          MS. AXEL:  Yes, your Honor.  We would like to

23  request a very brief continuance of the change of plea hearing.

24  About a week would be good.  Mr. Puig is not prepared today to

25  go forward to enter a guilty plea.

1        We would also like to move the Court to order the

2   Government to provide very limited discovery, specifically

3   three items at this juncture.

4        Mr. Puig does not wish to breach his plea agreement

5   at this time, nor do I think that this relief that we're

6   requesting, a short continuance, should be sufficient to find

7   breach at this point, but as it stands today, the Court is

8   going to ask me in a plea colloquy whether I have adequately

9   advised and had time to advise my defendant -- my client, the

10  defendant, about whether he's explored all his factual and

11  legal defenses, and I can't make that representation, and so

12  were we to try to enter a plea today, your Honor, I could not

13  make that representation and the Court could not take the plea.

14        A brief word about the chronology that has led us

15  here.  Mr. Puig received a target letter from the United States

16  Attorney's Office in approximately May of 2022.  I was retained

17  in June.  At that point Mr. Puig was playing in the Korean

18  Baseball Organization, the KBO, and the Government indicated to

19  me that he was a target for allegedly making false statements

20  in an interview he had with the Government before he left for

21  Korea on January 27.  There was no, in our understanding,

22  urgency or danger, but he faced a Hobson choice, agree to plead

23  guilty to false statements or he would be charged with false

24  statements and obstruction of justice.  They would issue an

25  arrest warrant and they would extradite him.

1          Mr. Puig speaks Spanish, and even many Spanish

2     speakers have a hard time understanding him.  He has a 3rd

3     grade education in Cuba, and we had to address difficult

4     factual legal issues while with a 17-hour time difference and

5     him playing baseball every day.  I had no direct access to his

6     phone.  I can represent to your Honor that as a white collar

7     defense attorney, I often deal with people's phones and

8     messages, and it is challenging even in the best of

9     circumstances to deal with screen shots, figure out what dates

10    things have happened, et cetera.

11          Mr. Puig returned to the United States just over a

12    week ago.  He was -- he came back on November 13.  He appeared

13    in this court for his initial appearance and arraignment on

14    November 15, and that is the first time I met him in person, so

15    I've had really just about a week, and it's been a very busy

16    week, trying to really understand all the facts and make sure

17    he was adequately apprised and ready for today's proceeding.

18          We knew that a baseball colleague of Mr. Puig's, who

19    is referred to as Agent 1 in the information and is named

20    ███████████, and his associate --

21          MR. MITCHELL:  Objection, your Honor.  The

22    Government would object to counsel disclosing the names or

23    potential names of cooperators in this case.

24          MS. AXEL:  Okay.

25          THE COURT:  Please refrain from doing it.  It's

1  stricken from the record.

2      MS. AXEL:  Okay.  Your Honor, there were two

3  intermediaries, Agent 1 and his associate that were the primary

4  intermediaries alleged to have been the intermediaries between

5  Mr. Puig and the gambling business that has been charged in a

6  separate indictment involving Wayne Nix, and on behalf of the

7  defense team, we did not appreciate the many times that those

8  individuals had reached out to Mr. Puig and invited him or

9  suggested that he collude with them.

10     And one of the things that the Government had

11  alleged was that Mr. Puig should be guilty, not only of false

12  statements, but also of obstruction, and one of the plea

13  bargain benefits was not being charged with obstruction.  But I

14  did not fully realize all the times they contacted him and he

15  refused to communicate with them about the investigation, which

16  we deem to be inconsistent with alleged obstruction.

17  Therefore, we asked at that point for the reports of interview

18  with those individuals, and we saw them for the first time

19  yesterday.

20     We've also asked for any charging agreements,

21  charging documents or plea agreements with those individuals.

22  Initially, I identified those as a possible entrapment defense,

23  but it is also relevant to alleged obstruction, and that is one

24  of the things that they had threatened to charge Mr. Puig with.

25  I mean, ultimately, your Honor, having reviewed that report of

1    investigation, I believe it also raises questions about whether

2    or not Mr. Puig has factual innocence defenses that we need to

3    pursue further.

4         So we have asked for a few things.  We've asked for

5    any plea agreements or charging documents with those

6    individuals.  We've also asked for the exhibits to Mr. Puig's

7    interview report and the agent notes of that interview report.

8    I believe all of those are pertinent to advise my client of his

9    potential factual defenses to the false statement charge.  And

10   until we look at those, I can't fully advise him as to his

11   factual defenses so that he can make a final decision.

12        THE COURT:  Why were these not requested prior to

13   entering into the plea agreement?

14        MS. AXEL:  Your Honor, with respect to the kind of

15   cooperation documents, honestly, I am not sure.  I'm sure I

16   would not have gotten them, I think, at that point in time.  I

17   think until I saw the messages where these individuals had

18   reached out to him repeatedly, and one of them much earlier

19   than what the Government had said, it really did not occur to

20   me that they -- that there might be a potential entrapment.

21        And then one thing led to another.  Having looked at

22   the messages and then the ROI for purposes of entrapment, I

23   think we discovered other things that were more pertinent to

24   obstruction of justice and indeed factual innocence or

25   truthfulness in his statement.

1      So I think with respect to the exhibits and the

2  handwritten notes, I think, your Honor, I should have requested

3  those earlier.  And to the extent that the Government is going

4  to say we should have requested them earlier, you know, you can

5  blame me for that and I can apologize for that, but we're only

6  asking for a week to review those so that he can make an

7  informed and final decision.

8             THE COURT:  All right.  Thank you.

9             Mr. Mitchell, would you like to respond?

10            MR. MITCHELL:  Yes, your Honor.  First off, as the

11 Court indicated, this should have been made months ago.  The

12 plea agreement was signed more than four months ago.  The plea

13 agreement obligates him to plead guilty today.  If he does not

14 want to plead guilty today and does not plead guilty today,

15 that is most likely a breach of the plea agreement.  I'm not in

16 a position to make that motion here.  That is something I would

17 have to go back to the office and ask for permission to make

18 that motion.  However, we would be required to make that motion

19 because the plea agreement offered to the defendant obligated

20 the Government to not charge him with the obstruction.  And

21 this relates to Counsel's characterizations of our

22 negotiations.  The Government did not give the defendant an

23 ultimatum or a Hobbs choice.  The Government had sent the

24 target letter to defendant's prior counsel months ago, or a

25 long time ago, even more than just a few months ago.  Never

1   heard back from counsel.  I then obtained approval to indict

2   Mr. Puig for both charges.

3          After that was approved, Counsel was retained and

4   asked me to hold off a negotiated pre-indictment disposition,

5   which we did, in fact, reach.  In terms of Counsel's discovery

6   requests, we have made extensive discovery available to them.

7   We conducted a reverse proffer with Counsel.  We summarized the

8   sources of where our evidence was coming from, the fact of who

9   we did search warrants on, where we obtained that evidence

10  from, and what that evidence was.  We showed them numerous text

11  messages and we also showed him his betting history from the

12  website.  We played the audio file in which he admitted to

13  lying to the law enforcement agents.  We provided a copy of the

14  report from the interview that described his false statements.

15  We provided images of the agents' handwritten notes of the

16  false statements.  We produced his bank records, allowed

17  Counsel to review a report summarizing Agent 1, as named in the

18  information, his interview report.

19         And then in terms of the entrapment defense, as I've

20  explained to Counsel, the two individuals who she believed may

21  have entrapped her client were not contacted by the Government

22  until after Mr. Puig made the false statement, so he could not

23  have been entrapped because they were not working for the

24  Government at any point at that point in time.  So I've tried

25  to explain to counsel that their theory is flawed.  I've made

1   additional discovery available to them over the weekend and

2   yesterday, but at this point I don't believe we're going to be

3   able to proceed forward, and I think the best thing to do at

4   this point is to set a status conference for next week.  I will

5   then obtain permission to make the motion for breach, and if

6   Counsel wants to make a discovery motion, which I think is the

7   proper procedure if she wants additional discovery items, she

8   can make that motion, and then the Government will have an

9   opportunity to respond to that motion.

10          THE COURT:  All right.  Well, I think the proper

11  course is to set another hearing for next week.  Perhaps

12  counsel can meet and confer after today to see if there are, in

13  fact, any -- whether, in fact, there is a need to have a status

14  conference as opposed to just continue the change of plea

15  hearing to next week.

16          It appears that Mr. Puig has already signed a plea

17  agreement, and if there is a request for production of

18  additional documents, then that should be done by a notice

19  motion with an opportunity for the Government to respond in

20  writing.

21          So I will continue the change of plea hearing to

22  Tuesday, November 29th, at 3:30 p.m., and if there is not

23  likely to be a plea at that time, you should enter into a

24  stipulation to continue the hearing and set a briefing schedule

25  for any motions that are pending.

1    MR. MITCHELL:  Understood.  Thank you, your Honor.

2    MS. AXEL:  Just to clarify, your Honor, and by

3  "motions," you would include the discovery motion to be after

4  the continued change of plea date?

5    THE COURT:  Yes.

6    MS. AXEL:  Okay.  Thank you, your Honor.

7    THE COURT:  Unless, of course, you decide to go

8  forward with the change of plea.

9    MS. AXEL:  Yes, your Honor.  I mean, as indicated,

10  the request for discovery is very limited, though, and I think

11  is critical to me to be able to let the Court know that we've

12  considered the factual defenses.  I don't think we're asking

13  for too much, particularly the exhibits and the handwritten

14  notes that go with the interview report.

15    MR. MITCHELL:  Your Honor, as I've advised counsel,

16  there are no exhibits to the interview report.

17    THE COURT:  All right.  Like I said, I think you

18  should meet and confer, and if there are requests for things

19  that don't exist, well, that might actually resolve the matter

20  as well.  So I will go ahead, as I said, and continue the

21  hearing to November 29th at 3:30 p.m.

22    MR. MITCHELL:  Thank you, your Honor.

23    MS. AXEL:  Thank you, your Honor.

24    THE COURT:  All right.  We are adjourned.

25    (Proceedings concluded at 2:46 p.m.)

**0**

1          CERTIFICATE OF OFFICIAL REPORTER

2

3    COUNTY OF LOS ANGELES    )
                             )
4    STATE OF CALIFORNIA      )

5

6          I, JUDY K. MOORE, FEDERAL OFFICIAL REALTIME COURT

7    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17          DATED THIS 20TH DAY OF JANUARY, 2023.

18

19
                     /s/Judy K. Moore
20          _____
                  JUDY K. MOORE, CRR, RMR
21              FEDERAL OFFICIAL COURT REPORTER

22

23

24

25