Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Attorneys for Defendant
Yasiel Puig Valdes

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>YASIEL PUIG VALDES,<br><br>                    Defendant. | Case No. CR 22-394-DMG<br><br>**AMENDED DECLARATION OF KERI CURTIS AXEL IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES' MOTION TO COMPEL DISCOVERY RE SELECTIVE PROSECUTION WITH EXHIBITS**<br><br>[*Amended to Include Exhibits A-D*]<br><br>Hearing Date:  March 15, 2023<br>Courtroom of Hon. Dolly M. Gee |

WAYMAKER

<u>DECLARATION OF KERI CURTIS AXEL</u>

I, Keri Curtis Axel, declare as follows:

1.      I am an attorney licensed to practice in the State of California.  I am a partner with Waymaker LLP, counsel to Defendant Yasiel Puig Valdes ("Puig") in this action.  I make this Declaration in support of Defendant Yasiel Puig Valdes' Motion to Compel Discovery Re Selective Prosecution in the above-captioned matter.  I have personal knowledge of the facts set forth herein and if called as a witness I could and would testify competently thereto.

2.      On or about May 25, 2022, I was retained in this matter.  I had learned that Puig had received a target letter from the government.  The prosecutor informed me that they already had received authority to charge Puig with false statements and obstruction of justice, and would indict him the following week.  I requested the opportunity to explore a pre-indictment resolution, and the government gave a reverse proffer on or about June 6, 2022.  At the conclusion of the reverse proffer, they indicated that, if Puig was not interested in a plea disposition, they would go forward with the plan to indict him, and DHS would put a warrant for his arrest into the system.  We discussed that it would trigger a notice to Interpol, resulting in his arrest in Korea.

3.      Upon my client's return to the United States, and after being able to meet with him in person and learning more about the facts of the case, including the government's investigation into the Sand Islands Sports/Bet Prestige gambling business ("Sand Island Sports Matter"); the interviews and various charges filed by the government, and Puig's interview and subsequent charges, I asked the government to meet in person about the evidence and the possible selective prosecution of Puig.

4.      Specifically, on November 28, 2022, and November 30, 2022, I sent detailed, lengthy letters to the United States Attorney's Office ("USAO") setting forth Puig's factual contentions and arguments as to selective prosecution and

requesting a dismissal or alternative disposition.  I also requested a meeting with the USAO front office to discuss the matters further.

5.      By letter on December 8, 2022, and email on December 9, 2022, the government rejected the request for dismissal based on selective prosecution and also refused my request for an in-person meeting to discuss the matters further.

6.      On January 20, 2023, I sent the government a letter with discovery requests, seeking among other things, discovery to support Puig's claim for selective prosecution.  By letter dated January 24, 2023, the government rejected my selective prosecution discovery requests, claiming *inter alia* that the requests went beyond the government's discovery obligations and/or not supported by law.  Due to the protective order, we have not included the letters but have summarized the items in the motion.

7.      On February 1, 2023, my office sent the government a supplemental request for discovery on selective prosecution. Although the government has not responded to this discovery request, the prosecutors have informed me that they had no objection to our bringing the motion at this time.  I believe these items are substantially similar to the ones requested on January 24, 2023 and therefore will also be rejected.

8.      On February 3, 2023, my office sent meet and confer correspondence to the government via email regarding the instant motion for discovery for selective prosecution, attaching the prior correspondence between the parties on selective prosecution and providing case law analysis that entitles Puig to a dismissal and/or discovery. We asked that the government let us know if they were willing to reconsider their position on the discovery items relevant to the motion, and offered to schedule a call to further confer.  A true and correct copy of this email is attached as **Exhibit A**.  The government stated that the email was sent to the USAO front office, and by telephone on February 9, 2023, AUSA Jeff Mitchell confirmed that he

1  had not heard back from the front office but had no objection to the defense filing

2  the instant motion at this time.

3          9.      The prosecutors also have tentatively agreed to a hearing date of March

4  15, 2023, on the motion, subject to potentially requesting additional time depending

5  on the nature of evidence and allegations.

6          10.     I am a former prosecutor, and worked at the U.S. Attorney's Office in

7  this District.  I was an AUSA for more than twelve years, from in or about

8  November 2004 through in or about April 2017.  As an AUSA, I regularly

9  conducted interviews of witnesses.  In all these years, I do not believe I ever

10 admonished a witness with the text of 18 U.S.C. § 1001, nor did I hear that done in

11 an interview where AUSAs were present.  Today, as a member of the defense bar, I

12 often represent witnesses in government interviews regularly, and again have not, to

13 the best of my recollection, seen a witness read the text of § 1001.  It is a standard

14 practice and procedure in a voluntary meeting pursuant to a proffer agreement for

15 the AUSA to go over the terms of the agreement, which includes that the agreement

16 is void is the witness lies, but this discussion, in my experience, does not include a

17 discussion of the penalties for false statements.  By contrast, I also was an

18 Enforcement Staff Attorney with the Securities & Exchange Commission, where it

19 is a standard practice to inform the witness about § 1001.  I therefore have taken

20 note of this difference in office practices.

21         11.     Attached hereto as **Exhibit B** is a true and correct copy of an excerpt of

22 the Department of Justice's, Civil Rights Division, website:

23 https://www.justice.gov/crt/federal-protections-against-national-origin-

24 discrimination-1.  I caused a member of my office staff to download it from the

25 Department of Justice website on February 10, 2023.

26         12.     A true and correct copy of the government's press release in the Sand

27 Island Sports Matter, pulled from the internet, is attached hereto as **Exhibit C**.

28

1    13.    A true and correct copy of the government's press release as to Yasiel
2    Puig, as pulled from the internet, is attached hereto as **Exhibit D**.

3    I declare under penalty of perjury under the laws of the United States of
4    America that the foregoing is true and correct.

5

6    Executed on this 10th day of February, 2023, at Los Angeles, California.

7

8

9    _____

10   Keri Curtis Axel



DECLARATION OF KERI CURTIS AXEL

# EXHIBIT A

| | |
|---|---|
| **From:** | Jose Nuño |
| **To:** | Mitchell, Jeff (USACAC) 5; Boyle, Daniel (USACAC) |
| **Cc:** | Keri Axel |
| **Subject:** | USA v. Puig - Motion re Selective Prosecution |
| **Date:** | Friday, February 3, 2023 5:07:00 PM |
| **Attachments:** | 2022.11.28 - Letter to E. Martin Estrada.pdf |
| | image001.png |
| | 2022.11.30 - KCA Letter to USA Estrada.pdf |
| | 2022 12 08 - Letter to Keri Axel from Scott M. Garringer.pdf |

Jeff and Dan:

We write to let you know that we intend to bring a motion to dismiss based on selective prosecution in the government's evaluation of Puig's truthfulness and charging decisions. *See U.S. v. Armstrong*, 517 U.S. 456, 465 (1996).  (Selective prosecution exists where the prosecutorial decision "had a discriminatory effect and that it was motivated by a discriminatory purpose."); *see also U.S. v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003) (To establish a discriminatory effect in a race case, the claimant "must show that similarly situated individuals of a different [ethnic origin] were not prosecuted.").  In other words, defendant must show that individuals of a different ethnicity could have been prosecuted for the offenses for which defendant was charged, but were not so prosecuted. *See Armstrong*, 517 U.S. at 470.  We attach our letters of November 28 and November 30, 2022, which, as you know, set forth our factual contentions and arguments.

A request to compel discovery on selective prosecution will be made as part of the motion in the alternative. *See Arenas-Ortiz*, 339 F.3d at 1069 ("The showing necessary to obtain discovery [on selective prosecution] is somewhat less: the defendant must produce '*some evidence* that similarly situated defendants of other races could have been prosecuted but were not.")  Here, the evidence demonstrates a discriminatory effect and intent by the government, and at a minimum, Puig can provide evidence tending to show the essential elements such that discovery should be compelled. We have made requests for various types of discovery that may provide additional pertinent information as to selective prosecution, and you have rejected those requests.  If you are willing to reconsider any item relevant to this motion, please let us know.

When we raised these issues with you and the Front Office back in November, our request for dismissal was rejected by then-Criminal Chief Scott Garringer in his letter of December 8, 2022 (also attached), and also his email of December 9, 2022. He also refused to take a meeting to discuss it further. Accordingly, we believe there is nothing more for us to discuss here, but if you wish to schedule a call to confer, please let us know.

Thank you, and have a nice weekend.

Jose Nuño
Trial Lawyer



Waymaker LLP
+1 424.652.7807
jnuno@waymakerlaw.com | waymakerlaw.com | vCard | Profile

*********************************************************************
This message was sent from Waymaker LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*********************************************************************

# EXHIBIT B



An official website of the United States government
[Here's how you know]



THE UNITED STATES
DEPARTMENT *of* JUSTICE

FEDERAL PROTECTIONS AGAINST NATIONAL ORIGIN DISCRIMINATION

Issued October 2000 INTRODUCTION

Federal laws prohibit discrimination based on a person's national origin, race, color, religion, disability, sex, and familial status. Laws prohibiting national origin discrimination make it illegal to discriminate because of a person's birthplace, ancestry, culture or language. This means people cannot be denied equal opportunity because they or their family are from another country, because they have a name or accent associated with a national origin group, because they participate in certain customs associated with a national origin group, or because they are married to or associate with people of a certain national origin.

The Department of Justice's Civil Rights Division is concerned that national origin discrimination may go unreported in the United States because victims of discrimination do not know their legal rights, or may be afraid to complain to the government. To address this problem, the Civil Rights Division has established a National Origin Working Group to help citizens and immigrants better understand and exercise their legal rights. If you think you, or someone you know, has been discriminated against because of national origin and want to learn more about exercising your legal rights, you should read this brochure.

This brochure explains the laws prohibiting national origin discrimination and provides some examples. You may find additional information about the Civil Rights Division and its Sections on the internet at http://www.usdoj.gov/crt. You may contact the Division to report complaints of discrimination as explained below.

KNOWING YOUR LEGAL RIGHTS

The Civil Rights Division of the Department of Justice enforces federal laws that prohibit discrimination in:

Education
Employment
Housing
Lending
Public Accommodations
Law Enforcement / Police Misconduct
Voting

The Division also enforces laws that prohibit discrimination on the basis of disability, protects the civil rights of persons who are institutionalized in certain state or local facilities, and prosecutes crimes that are motivated by a crime victim's race, color, or national origin.

In some cases, the Division may only become involved if there is a "pattern or practice" of discrimination. A "pattern or practice" generally means that there is more than a single incident of discrimination, and that there is a policy or repeated conduct that is discriminatory.

CRIMINAL VIOLATIONS OF CIVIL RIGHTS

* *A young man of South Asian descent is assaulted as he leaves a concert at a nightclub. The assailant, a member of a skinhead group, yells racial epithets as he beats the victim unconscious in the club's parking lot with fists and a pipe.*

* *At Ku Klux Klan meetings, a Klansman tells other members that Mexicans and Puerto Ricans should go "back where they came from." They burn a cross in the front yard of a young Hispanic couple in order to frighten them and force them to leave the neighborhood. Before burning the cross, the defendant displays a gun and gives one of his friends another gun in case the victims try to stop them.*

*An American company recruits workers in a small Mexican town, promising them good work at high pay. The company smuggles the Mexicans to the United States in an empty tanker truck. When they finally arrive in the U.S., the workers are threatened, told that if they attempt to leave their factory they will be killed.*

The Criminal Section of the Civil Rights Division prosecutes people who are accused of using force or violence to interfere with a person's federally protected rights because of that person's national origin. These rights include areas such as housing, employment, education, or use of public facilities. You can reach the Criminal Section at (202) 514-3204 or write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Criminal Section, PHB
Washington, D.C. 20530

## DISABILITY RIGHTS

*An HMO that enrolls Medicaid patients tells a Mexican American woman with cerebral palsy to come back another day for an appointment while it provides immediate assistance to others.*

This example may be a violation of federal laws that prohibit discrimination because of disability as well as laws that prohibit discrimination because of national origin. If you believe you have been discriminated against because you have a disability you may contact the Disability Rights Section at (800) 514-0301 (voice) or 800-514-0383 (TTY). You may also write to:

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Civil Rights Division
Disability Rights Section - NYAV
Washington, D.C. 20530

## EDUCATION

*A child has difficulty speaking English, but her school does not provide her with the necessary assistance to help her learn English and other subjects.*

*A majority Haitian school does not offer honors classes. Other schools in the district that do not have many Haitian students offer both honors and advanced placement courses.*

These examples may be violations of federal law, which prohibits discrimination in education because of a person's national origin. The Division's Educational Opportunities Section enforces these laws in elementary and secondary schools as well as public colleges and universities. The Education Section's work addresses discrimination in all aspects of education, including assignment of students to schools and classes, transportation of students, hiring and placement of faculty and administrators, distribution of school resources, and provision of educational programs that assist limited English speaking students in learning English.

To file a complaint or for more information, contact the Education Section at (202) 514-4092, or write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Educational Opportunities Section, PHB
Washington, D.C. 20530

## EMPLOYMENT

*A transit worker's supervisor makes frequent racial epithets against the worker because his family is from Iran. Last week, the boss put up a fake sign on the bulletin board telling everyone not to trust the worker because he is a terrorist.*

*A woman who immigrated from Russia applies for a job as an accountant. The employer turns her down because she speaks with an accent even though she is able to perform the job requirements.*

*A food processing company requires applicants who appear or sound foreign to show work authorization documents before allowing them to complete an employment application while native born Caucasian applicants are not required to show any documents before completing employment applications. Moreover, the documents of the ethnic employees are more closely scrutinized and more often rejected than the same types of documents shown by native born Caucasian employees.*

These examples may be violations of the law that prohibits discrimination against an employee or job applicant because of his or her national origin. This means an employer cannot discipline, harass, fire, refuse to hire or promote a person because of his or her national origin.

If you believe an employer, labor organization or employment agency has discriminated against you because of your national origin, contact:

Equal Employment Opportunity Commission
(800) 669-4000
(Employers with 15 or more employees)
Office of Special Counsel
(800) 255-7688
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Office of Special Counsel for Immigration-Related Unfair Employment Practices, 1425
Washington, D.C. 20530
(Employers with 4 to 14 employees)
Employment Litigation Section
(202) 514-3831
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Employment Litigation Section, PHB
Washington, D.C. 20530
(State or local government employer with a pattern or practice of illegal discrimination)
In addition, an employer may violate federal law by requiring specific work authorization documents, such as a green card, or rejecting such documents only from applicants of certain national origins. For more information or to file a charge, contact the Division's Office of Special Counsel at the above address or toll-free number.

HOUSING
*A Native Hawaiian family is looking for an apartment. They are told by the rental agent that no apartments are available, even though apartments are available and are shown to white applicants.*

*A realtor shows a Latino family houses only in Latino neighborhoods and refuses to show the family houses in white neighborhoods.*

These examples may be violations of the federal Fair Housing Act. That law prohibits discrimination because of national origin, race, color, sex, religion, disability, or familial status (presence of children under 18) in housing. Individual complaints of discrimination may be reported to the Department of Housing and Urban Development (HUD) at (800) 669-9777. If you believe there is a pattern or practice of discrimination, contact the Division's Housing and Civil Enforcement Section at (202) 514-4713.

LENDING
*A Latina woman is charged a higher interest rate and fees than white male customers who have similar financial histories and apply for the same type of loan.*

This example may be a violation of federal laws that prohibit discrimination in lending because of national origin, race, color, sex, religion, disability and marital status or because any of a person's income comes from public assistance. If you believe you have been denied a loan because of your national origin or other protected reason, you may ask the lender for an explanation in writing of why your application was denied.

If the loan is for a home mortgage, home improvement, or other housing-related reasons, you may file a complaint with the Department of Housing and Urban Development at (800) 669-9777. If the loan is for purposes other than housing (such as a car loan), you may file a complaint either with the Division's Housing and Civil Enforcement Section or with the lender's regulatory agency. If your experience was part of a pattern or practice of discrimination you may also call the Housing and Civil Enforcement Section at (202) 514-4713, to obtain more information about your rights or to file a complaint.

<u>PUBLIC ACCOMMODATIONS</u>
* *In a restaurant, a group of Asian Americans waits for over an hour to be served, while white and Latino customers receive prompt service.*

* *Haitian American visitors to a hotel are told they must pay in cash rather than by credit card, are charged higher rates than other customers, and are not provided with the same amenities, such as towels and soap.*

These examples may be violations of federal laws that prohibit discrimination because of national origin, race, color, or religion in places of public accommodation. Public accommodations include hotels, restaurants, and places of entertainment. If you believe you have been denied access to or equal enjoyment of a public accommodation where there is a pattern or practice of discrimination, contact the Housing and Civil Enforcement Section at (202) 514-4713. You may also write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Housing and Civil Enforcement Section, NWB
Washington, D.C. 20530

POLICE MISCONDUCT
* *Police officers constantly pull over cars driven by Latinos, for certain traffic violations, but rarely pull over white drivers for the same violations.*

* *A police officer questioning a man of Vietnamese origin on the street gets angry when the man is unable to answer his questions because he does not speak English. The Officer arrests the man for disorderly conduct.*

These examples may be violations of the Equal Protection Clause of the United States Constitution. They may also be violations of the Omnibus Crime Control and Safe Streets Act of 1968. That law prohibits discrimination because of national origin, race, color, religion, or sex by a police department that gets federal funds through the U.S. Department of Justice. They may also violate Title VI of the Civil Rights Act of 1964, which prohibits discrimination by law enforcement agencies that receive any federal financial assistance, including asset forfeiture property.

Complaints of individual discrimination can be filed with the <u>Coordination and Review Section</u> at

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Coordination and Review Section, 1425
Washington, D.C. 20530

or contact the Coordination and Review Section at 1-888-848-5306.

Complaints of individual discrimination may also be filed with the <u>Office of Justice Programs</u> at Office for Civil Rights, Office of Justice Programs, U.S. Department of Justice, Washington, D.C. 20531, or contact Office of Justice Programs at (202) 307-0690.

The Special Litigation Section investigates and litigates complaints that a police department has a pattern or practice of discriminating on the basis of national origin. To file a complaint, contact the Special Litigation Section at (202) 514-6255 or write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Special Litigation Section
Washington, D.C. 20530

## CIVIL RIGHTS OF INSTITUTIONALIZED PERSONS
* A jail will not translate disciplinary hearings for detainees who do not speak English.

* A state's psychiatric hospital has no means of providing treatment for people who do not speak English.

These examples may be violations of the Equal Protection Clause of the United States Constitution. The Special Litigation Section enforces the constitutional rights of people held in state or local government institutions, such as prisons, jails, juvenile correctional facilities, mental health facilities, developmental disability or mental retardation facilities, and nursing homes. If you are a resident of any such facility and you believe there is a pattern or practice of discrimination based on your national origin, contact the Special Litigation Section at (202) 514-6255. You may also write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Special Litigation Section
Washington, D.C. 20530

## FEDERALLY ASSISTED PROGRAMS
* A local social services agency does not provide information or job training in Korean even though one quarter of local residents speak only Korean.

* A hospital near the Texas/Mexico border dresses its security officers in clothes that look like INS uniforms to scare Latinos away from the emergency room. Latino patients are told to bring their own translators before they can see a doctor.

These examples may be violations of federal laws that prohibit discrimination because of national origin, race or color by recipients of federal funds. If you believe you have been discriminated against by a state or local government agency or an organization that receives funds from the federal government, you may file a complaint with the Division's Coordination and Review Section at (888) 848-5306. You may also write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Coordination and Review Section, 1425
Washington, D.C. 20530

The Coordination and Review Section will refer the complaint to the federal funding agency that is primarily responsible for enforcing nondiscrimination prohibitions applicable to its recipients.

## VOTING
* Despite requests from voters in a large Spanish-speaking community, election officials refuse to provide election materials, including registration forms and sample ballots, in Spanish or to allow Spanish speakers to bring translators into the voting booth.

* A polling official requires a dark-skinned voter, who speaks with a foreign accent and has an unfamiliar last name, to provide proof of American citizenship, but does not require proof of citizenship from white voters.

The election officials' conduct may violate the federal laws prohibiting voting discrimination. The Voting Rights Acts do not specifically prohibit national origin discrimination. However, provisions of the Acts make it illegal to limit or deny the right to vote of any citizen not only because of race or color, but also because of membership in a language minority group. In addition, the Acts also require in certain jurisdictions that election materials and assistance be provided in languages other than English.

Additionally, Section 208 of the Voting Rights Act, allows voters, who need help because of blindness, disability or because they cannot read or write, to bring someone (other than an employer or union representative) to help. This means that a voter who needs help reading the ballot in English can bring a friend or family member to translate. In some places, election officials must provide information, such as voter registration and the ballot, in certain language(s) other than English. This can include interpreters to help voters vote.

If you believe that you have been discriminated against in voting or denied assistance in casting your ballot, you may contact the Division's Voting Section at (800) 253-3931. You may also write to:

U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Voting Section, 1800G
Washington, D.C. 20530

Note: For persons with disabilities, this document will be available in large print, audio tape, computer disc, and braille.

>

*Updated August 6, 2015*

---

Was this page helpful?
Yes    No

# EXHIBIT C

2/10/23, 3:14 PM    Central District of California | Federal Authorities Announce Charges Related to Multi-Million Dollar Sport Gambling Business Invol…

Case 2:22-cr-00394-DMG   Document 61   Filed 02/13/23   Page 17 of 29   Page ID #:350



Welcome to the new look of justice.gov. In the coming months you'll see more pages in this new design. Please share your feedback with our webmaster.                                    ×

🇺🇸 An official website of the United States government
   Here's how you know

Search                                                                                    🔍

Menu

---

PRESS RELEASE

# Federal Authorities Announce Charges Related to Multi-Million Dollar Sport Gambling Business Involving Current and Former Pro Athletes

Thursday, March 31, 2022

Share

> **For Immediate Release**
> U.S. Attorney's Office, Central District of California

*LOS ANGELES* – Federal authorities today announced a series of cases stemming from an illegal gambling operation that involved current and former professional athletes, some of whom assisted with the business and others who placed large bets on games.

In documents unsealed Wednesday in United States District Court, the principals of the operation agreed to plead guilty to conspiracy charges and admitted they took in millions of dollars in bets, many of which were facilitated by a Costa Rica-based gambling website. One of the leaders of the scheme also admitted that he failed to report to the IRS nearly $1.5 million in income he received from the gambling scheme over two years.

TOP

The owner of the online gambling business and website pleaded guilty earlier this month and admitted the business was illegal under California law because it involved at least five people, operated for at least six years, and often had gross revenue of well over $2,000 on a single day.

Four new cases and related plea agreements were unsealed this week against:

- Wayne Nix, 45, of Newport Coast, a former minor league baseball player, who was charged with one count of conspiring to operate an illegal sports gambling business, and one count of filing a false tax return;

- Edon Kagasoff, 44, of Lake Forest, Nix's longtime partner in the operation, who was charged with one count of conspiring to operate an illegal sports gambling business;

- Howard Miller, 63, of Gardena, who was charged with one count of aiding and abetting the operation of an illegal sports gambling business by assisting in the collection and payout of gambling proceeds related to the Costa Rica-based website; and

- Celebrity Financial LLC, dba Sherman Oaks Check Cashing, which was charged with failing to maintain an effective money laundering program related to it cashing at least $18 million in checks from the illegal sport gambling business at its San Fernando Valley check cashing store.

Representatives of Celebrity Financial appeared in court on March 28. Nix made his first court appearance Wednesday afternoon, and he is scheduled to formally enter his guilty plea on April 11. Miller has agreed to appear in court this afternoon, and Kagasoff has agreed to appear in court on Friday.

The Justice Department also announced that earlier this month the court unsealed cases against two other defendants:

- Kenneth Arsenian, 52, of Newport Beach, who pleaded guilty on January 26 to four charges: operating an illegal sports gambling business, filing a false tax return, money laundering, and accepting a financial instrument for unlawful internet gambling; and

- Joseph Castelao, 56, of Rancho Palos Verdes, the owner of the gambling website – Sand Island Sports – who pleaded guilty on March 15 to operating an illegal gambling business.

According to the court documents made public this week, Nix began operating a bookmaking business about 20 years ago. Through his contacts in the sports world, Nix developed a client list that included current and former professional athletes, and he employed three former Major League Baseball players to assist with the business.

Kagasoff joined Nix in the gambling operation around 2014, and they used an online infrastructure and calling center operated by Sand Island Sports to create accounts for h
according to court documents, which note that Nix and his associates paid winning bets
retained nearly all of the money collected from bettors.

TOP

Nix's plea agreement outlines specific incidents related to the betting scheme, including receiving payments for gambling losses from a professional football player, a Major League Baseball coach and a baseball analyst. The plea agreement also discusses a bettor who wagered $1 million a year with Nix's operation, a $5 million bet on the 2019 Super Bowl, and a sports broadcaster who told Nix he was going to refinance his home to pay off gambling debts.

In relation to the tax count against him, Nix admitted receiving $1,466,947 in income that he failed to report on his 2017 and 2018 federal income tax returns. In his plea agreement, Nix agreed to pay all back taxes due for those years – a total of $1,248,429, which includes the back taxes, penalties and interest. Nix also agreed to forfeit to the government nearly $1.3 million seized in February 2020 from two bank accounts and two brokerage accounts he controlled.

When Arsenian pleaded guilty in January, he admitted failing to report to the IRS more than $2.8 million in income for the years 2015 through 2018. Arsenian has agreed to pay $1.1 million in back taxes, plus additional penalties and interest. Arsenian also agreed to forfeit $341,459 in United States currency seized from his residence in February 2020.

In its plea agreement, Sherman Oaks Check Cashing admitted that it encouraged customers to bring large business checks – far in excess of the $10,000 that normally triggers a Currency Transaction Report (CTR) to federal authorities – and employees of the company told customers that it would not file CTRs. As a result, many of its customers brought checks that were proceeds of unlawful activity, including two customers of the gambling operation who cashed at least $18.35 million in checks. Sherman Oaks Check Cashing admitted that it made at least $500,000 in profits by engaging in this activity. In its plea agreement, the company agreed to pay a $500,000 fine, which is the maximum penalty under the law.

Homeland Security Investigations (HSI) and IRS Criminal Investigation are conducting the ongoing investigation in this matter. The HSI agents are part of the El Camino Real Financial Crimes Task Force.

Assistant United States Attorneys Jeff Mitchell of the Major Frauds Section and Dan Boyle of the Asset Forfeiture Section are prosecuting these cases.

**Contact**
Thom Mrozek
Director of Media Relations
thom.mrozek@usdoj.gov
(213) 894-6947

*Updated March 31, 2022*

TOP

2/10/23, 3:14 PM    Central District of California | Federal Authorities Announce Charges Related to Multi-Million Dollar Sport Gambling Business Invol...

Case 2:22-cr-00394-DMG Document 31 Filed 02/13/23 Page 20 of 29 Page ID #:359

Component

[USAO-California, Central](#)

Release Number: 22-059

# Related Content

PRESS RELEASE

**West Los Angeles Man Pleads Guilty to Federal Charges for Using Snapchat to Entice Child into Producing Sexually Explicit Videos**

January 6, 2023

PRESS RELEASE

**Carson Man Sentenced to More Than 18 Years in Federal Prison for Making Sexually Explicit Videos of 15-Year-Old Victim**

November 22, 2022

PRESS RELEASE

**Former MLB Player Agrees to Plead Guilty to Felony Charge for Lying to Federal Agents Investigating Illegal Gambling Operation**

November 14, 2022

TOP

2/10/23, 3:14 PM Central District of California | Federal Authorities Announce Charges Related to Multi-Million-Dollar Sport-Gambling Business Invol...

Case 2:22-cr-00394-DMG Document 61 Filed 02/13/23 Page 21 of 29 Page ID #:354

## Central District of California

312 North Spring Street
Suite 1200
Los Angeles, California 90012

Phone: 213-894-2400
Fax: 213-894-0141

Stay Connected

   



Archives

Budget & Performance

FOIA

Accessibility

Legal Policies & Disclaimers

Privacy Policy

For Employees

Information Quality

Office of the Inspector General

TOP

2/10/23, 3:14 PM    Central California Federal Authorities Announce Charges Related to Multi-Million-Dollar Sport-Gambling Business Invol...

Case 2:22-cr-00394-DMG Document 61 Filed 02/13/23 Page 22 of 29 Page ID #:865

No FEAR Act Data

Small Business

Vote.gov

Español

## Have a question about Government Services?

Contact USA.gov

# EXHIBIT D

Welcome to the new look of justice.gov. In the coming months you'll see more pages in this new design. Please share your feedback with our webmaster.          ×

 An official website of the United States government
Here's how you know



Menu

Search                                                                                    🔍

## PRESS RELEASE

# Former MLB Player Agrees to Plead Guilty to Felony Charge for Lying to Federal Agents Investigating Illegal Gambling Operation

Monday, November 14, 2022

Share

> **For Immediate Release**
>
> U.S. Attorney's Office, Central District of California

*LOS ANGELES* – A former Major League Baseball (MLB) player has agreed to plead guilty to a federal charge for lying to federal law enforcement officials about bets on sporting events that he placed with an illegal gambling operation, according to court documents unsealed today.

Yasiel Puig Valdés, 31, who currently plays professional baseball in South Korea, has agreed to plead guilty to one count of making false statements, a crime that carries a statutory maximum sentence of five years in federal prison.

Puig, who formerly played for the Los Angeles Dodgers and two other MLB franchises, agreed to pay a fine of at least $55,000. Puig has agreed to make his initial appearance or

TOP

November 15 in United States District Court.

"Under our system of justice, no one is above the law," said United States Attorney Martin Estrada. "The integrity of our nation's criminal justice system depends on people telling the truth, and those who fail to abide by this simple principle must face consequences."

"When given the opportunity to be truthful about his involvement with Nix's Gambling businesses, Mr. Puig chose not to," said IRS Criminal Investigation Los Angeles Field Office Special Agent in Charge Tyler Hatcher. "Mr. Puig's lies hindered the legal and procedural tasks of the investigators and prosecutors."

"Lying to federal agents is a serious offense," said HSI Los Angeles Acting Special Agent in Charge Eddy Wang. "HSI Los Angeles and our partners will actively pursue those that seek to hinder the fair administration of justice."

According to his plea agreement, which was filed on August 29, in May 2019, Puig began placing bets on sporting events through a third party – identified in court documents as "Agent 1" – who worked on behalf of an illegal gambling business run by Wayne Joseph Nix, 46, of Newport Coast.

Puig called and sent text messages to Agent 1 with wagers on sporting events. Agent 1 then submitted the bets to the Nix gambling business on Puig's behalf. By June 2019, Puig owed Nix's gambling business $282,900 for sports gambling losses.

Agent 1 and another person identified in court papers as "Individual B" instructed Puig to make a check or wire transfer payable to a Nix gambling business client – identified in court papers as "Individual A" – to whom the business owed at least $200,000 in gambling winnings.

On June 25, 2019, Puig withdrew $200,000 from a Bank of America branch in Glendale then purchased two cashiers' checks for $100,000 each that were made payable to Individual A. Puig did not immediately send the checks due to a dispute over the balance and access to Nix-controlled websites used to place sports bets. Nix refused to allow Puig access to the betting websites until Puig's gambling debt was paid.

After Puig paid the $200,000, Nix provided Puig direct access to the betting websites. From July 4, 2019 to September 29, 2019, Puig placed 899 additional bets on tennis, football and basketball games through the websites.

In January 2022, federal investigators interviewed Puig in the presence of his lawyer. During the interview, despite being warned that lying to federal agents is a crime, Puig lied several times. During the interview, he falsely stated that he only knew Agent 1 from baseball and that he never discussed gambling with him, when in fact Puig discussed sports bett Agent 1 hundreds of times on the telephone and via text message.

TOP

After agents showed Puig a copy of one of the cashiers' checks he purchased on June 25, 2019, Puig falsely stated that he did not know the person who instructed him to send $200,000 in cashiers' checks to Individual A. Puig also falsely stated that he had placed a bet online with an unknown person on an unknown website that resulted in a loss of $200,000.

In March 2022, Puig sent Individual B an audio message via WhatsApp in which he admitted to lying to federal agents during the interview two months earlier.

Nix pleaded guilty on April 11 to one count of conspiracy to operate an illegal sports gambling business and one count of filing a false tax return. His sentencing hearing is scheduled for March 8, 2023.

Federal prosecutors today also filed a plea agreement for former MLB player Erik Kristian Hiljus, 49, of Panorama City, who agreed to plead guilty to two counts of subscribing to false tax returns and will face up to six years in federal prison upon entering his guilty plea. Hiljus was an agent for Nix's illegal gambling business but did not work with Puig.

Homeland Security Investigations (HSI) and IRS Criminal Investigation are investigating this matter. The HSI agents are part of the El Camino Real Financial Crimes Task Force.

Assistant United States Attorneys Jeff Mitchell of the Major Frauds Section and Dan Boyle of the Asset Forfeiture and Recovery Section are prosecuting these cases.

**Contact**

Thom Mrozek

Director of Media Relations

thom.mrozek@usdoj.gov

(213) 894-6947

*Updated November 14, 2022*

**Component**

USAO - California, Central

Release Number: 22-239

TOP

Case 2:22-cr-00394-DMG   Document 61   Filed 02/13/23   Page 27 of 29   Page ID #:360

# Related Content

**PRESS RELEASE**

## West Los Angeles Man Pleads Guilty to Federal Charges for Using Snapchat to Entice Child into Producing Sexually Explicit Videos

January 6, 2023

**PRESS RELEASE**

## Carson Man Sentenced to More Than 18 Years in Federal Prison for Making Sexually Explicit Videos of 15-Year-Old Victim

November 22, 2022

**PRESS RELEASE**

## Federal Grand Jury Issues New Indictment in Conception Boat Fire

October 18, 2022

 **Central District of California**

312 North Spring Street

Suite 1200

Los Angeles, California 90012

TOP

 Phone: 213-894-2400

Fax: 213-894-0141

**Stay Connected**

  



Archives

Budget & Performance

FOIA

Accessibility

Legal Policies & Disclaimers

Privacy Policy

For Employees

Information Quality

Office of the Inspector General

No FEAR Act Data

Small Business

Vote.gov

Español                                                    TOP

## Have a question about Government Services?

Contact USA.gov