# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION
HONORABLE DOLLY M. GEE, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YASIEL PUIG VALDES,

    Defendant.

Case No. 2:22-cr-00394-DMG-1

REPORTER'S TRANSCRIPT OF PROCEEDINGS
STATUS CONFERENCE

Wednesday, November 23, 2022
2:33 P.M.

LOS ANGELES, CALIFORNIA

JUDY K. MOORE, CRR, RMR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, #4455
LOS ANGELES, CALIFORNIA 90012
213.894.3539

1       We would also like to move the Court to order the
2  Government to provide very limited discovery, specifically
3  three items at this juncture.
4       Mr. Puig does not wish to breach his plea agreement
5  at this time, nor do I think that this relief that we're
6  requesting, a short continuance, should be sufficient to find
7  breach at this point, but as it stands today, the Court is
8  going to ask me in a plea colloquy whether I have adequately
9  advised and had time to advise my defendant -- my client, the
10 defendant, about whether he's explored all his factual and
11 legal defenses, and I can't make that representation, and so
12 were we to try to enter a plea today, your Honor, I could not
13 make that representation and the Court could not take the plea.
14      A brief word about the chronology that has led us
15 here.  Mr. Puig received a target letter from the United States
16 Attorney's Office in approximately May of 2022.  I was retained
17 in June.  At that point Mr. Puig was playing in the Korean
18 Baseball Organization, the KBO, and the Government indicated to
19 me that he was a target for allegedly making false statements
20 in an interview he had with the Government before he left for
21 Korea on January 27.  There was no, in our understanding,
22 urgency or danger, but he faced a Hobson choice, agree to plead
23 guilty to false statements or he would be charged with false
24 statements and obstruction of justice.  They would issue an
25 arrest warrant and they would extradite him.

1    Mr. Puig speaks Spanish, and even many Spanish
2 speakers have a hard time understanding him.  He has a 3rd
3 grade education in Cuba, and we had to address difficult
4 factual legal issues while with a 17-hour time difference and
5 him playing baseball every day.  I had no direct access to his
6 phone.  I can represent to your Honor that as a white collar
7 defense attorney, I often deal with people's phones and
8 messages, and it is challenging even in the best of
9 circumstances to deal with screen shots, figure out what dates
10 things have happened, et cetera.
11    Mr. Puig returned to the United States just over a
12 week ago.  He was -- he came back on November 13.  He appeared
13 in this court for his initial appearance and arraignment on
14 November 15, and that is the first time I met him in person, so
15 I've had really just about a week, and it's been a very busy
16 week, trying to really understand all the facts and make sure
17 he was adequately apprised and ready for today's proceeding.
18    We knew that a baseball colleague of Mr. Puig's, who
19 is referred to as Agent 1 in the information and is named
20 ███████████, and his associate --
21    MR. MITCHELL:  Objection, your Honor.  The
22 Government would object to counsel disclosing the names or
23 potential names of cooperators in this case.
24    MS. AXEL:  Okay.
25    THE COURT:  Please refrain from doing it.  It's

1  stricken from the record.
2          MS. AXEL:  Okay.  Your Honor, there were two
3  intermediaries, Agent 1 and his associate that were the primary
4  intermediaries alleged to have been the intermediaries between
5  Mr. Puig and the gambling business that has been charged in a
6  separate indictment involving Wayne Nix, and on behalf of the
7  defense team, we did not appreciate the many times that those
8  individuals had reached out to Mr. Puig and invited him or
9  suggested that he collude with them.
10         And one of the things that the Government had
11 alleged was that Mr. Puig should be guilty, not only of false
12 statements, but also of obstruction, and one of the plea
13 bargain benefits was not being charged with obstruction.  But I
14 did not fully realize all the times they contacted him and he
15 refused to communicate with them about the investigation, which
16 we deem to be inconsistent with alleged obstruction.
17 Therefore, we asked at that point for the reports of interview
18 with those individuals, and we saw them for the first time
19 yesterday.
20         We've also asked for any charging agreements,
21 charging documents or plea agreements with those individuals.
22 Initially, I identified those as a possible entrapment defense,
23 but it is also relevant to alleged obstruction, and that is one
24 of the things that they had threatened to charge Mr. Puig with.
25 I mean, ultimately, your Honor, having reviewed that report of

1 investigation, I believe it also raises questions about whether
2 or not Mr. Puig has factual innocence defenses that we need to
3 pursue further.
4 　　　　　So we have asked for a few things.  We've asked for
5 any plea agreements or charging documents with those
6 individuals.  We've also asked for the exhibits to Mr. Puig's
7 interview report and the agent notes of that interview report.
8 I believe all of those are pertinent to advise my client of his
9 potential factual defenses to the false statement charge.  And
10 until we look at those, I can't fully advise him as to his
11 factual defenses so that he can make a final decision.
12 　　　　　THE COURT:  Why were these not requested prior to
13 entering into the plea agreement?
14 　　　　　MS. AXEL:  Your Honor, with respect to the kind of
15 cooperation documents, honestly, I am not sure.  I'm sure I
16 would not have gotten them, I think, at that point in time.  I
17 think until I saw the messages where these individuals had
18 reached out to him repeatedly, and one of them much earlier
19 than what the Government had said, it really did not occur to
20 me that they -- that there might be a potential entrapment.
21 　　　　　And then one thing led to another.  Having looked at
22 the messages and then the ROI for purposes of entrapment, I
23 think we discovered other things that were more pertinent to
24 obstruction of justice and indeed factual innocence or
25 truthfulness in his statement.

1       So I think with respect to the exhibits and the
2  handwritten notes, I think, your Honor, I should have requested
3  those earlier.  And to the extent that the Government is going
4  to say we should have requested them earlier, you know, you can
5  blame me for that and I can apologize for that, but we're only
6  asking for a week to review those so that he can make an
7  informed and final decision.
8       THE COURT:  All right.  Thank you.
9       Mr. Mitchell, would you like to respond?
10      MR. MITCHELL:  Yes, your Honor.  First off, as the
11 Court indicated, this should have been made months ago.  The
12 plea agreement was signed more than four months ago.  The plea
13 agreement obligates him to plead guilty today.  If he does not
14 want to plead guilty today and does not plead guilty today,
15 that is most likely a breach of the plea agreement.  I'm not in
16 a position to make that motion here.  That is something I would
17 have to go back to the office and ask for permission to make
18 that motion.  However, we would be required to make that motion
19 because the plea agreement offered to the defendant obligated
20 the Government to not charge him with the obstruction.  And
21 this relates to Counsel's characterizations of our
22 negotiations.  The Government did not give the defendant an
23 ultimatum or a Hobbs choice.  The Government had sent the
24 target letter to defendant's prior counsel months ago, or a
25 long time ago, even more than just a few months ago.  Never

```
                                                                    0
  1                    CERTIFICATE OF OFFICIAL REPORTER

  2

  3   COUNTY OF LOS ANGELES   )
                              )
  4   STATE OF CALIFORNIA     )

  5

  6          I, JUDY K. MOORE, FEDERAL OFFICIAL REALTIME COURT

  7   REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

  8   CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

  9   TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

 10   IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

 11   REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

 12   THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

 13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 14

 15

 16

 17                 DATED THIS 20TH DAY OF JANUARY, 2023.

 18

 19
                              /s/Judy K. Moore
 20                       _____
                              JUDY K. MOORE, CRR, RMR
 21                          FEDERAL OFFICIAL COURT REPORTER

 22

 23

 24

 25
```

# EXHIBIT 2
# (UNDER SEAL)

# EXHIBIT 3
# (UNDER SEAL)

# EXHIBIT 4
# (UNDER SEAL)

# EXHIBIT 5
# (UNDER SEAL)

# EXHIBIT 6
# (UNDER SEAL)