E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698/2426
     Facsimile: (213) 894-6269/0141
     E-mail:    jeff.mitchell@usdoj.gov
                daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 22-394-DMG |
|---|---|
| Plaintiff, | SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY; DECLARATION OF JEFF MITCHELL; EXHIBIT |
| v. | |
| YASIEL PUIG VALDES, | Hearing Date: March 15, 2023 |
| Defendant. | Hearing Time: 2:30 p.m.<br>Location:     Courtroom of the<br>              Hon. Dolly M. Gee |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jeff Mitchell and Dan G. Boyle, and pursuant to the Court's Order of March 10, 2023

1

(ECF No. 94), hereby files this sur-reply in further opposition to defendant's motion to compel discovery (ECF Nos. 59, 66).

    This sur-reply is based upon the attached memorandum of points and authorities, the attached declaration of Jeff Mitchell and exhibit thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 10, 2023        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

          /s/
JEFF MITCHELL
DAN G. BOYLE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The government submits this sur-reply to correct factual statements in defendant's reply that are not true and to demonstrate that defendant's own evidence shows he has not carried his burden to obtain the discovery he seeks regarding purported selective prosecution.

**II. DISCUSSION**

  A.  <u>Factual Inaccuracies in Defendant's Reply</u>

Defendant inaccurately claims that five "white" witnesses were not read the text of the 18 U.S.C. § 1001 statute and instead were either given no § 1001 warning or that the agents merely "referenced" the statute.[1]

First, defendant claims that Individual 9 was not admonished. (Reply, Exhibit 6). This is not accurate. The agents read the text of § 1001 to Individual 9 during the interview. This is clear from the audio recording, which the government provided to defendant; indeed, the government's opposition specifically notes that the admonishment occurred at the 2:00 minute mark of the recording. (ECF No. 73, (Mitchell Declaration) ¶ 42(a).)

Second, defendant incorrectly claims that Individual 27 was also not admonished (Reply, Exhibit 6 (n.10)); however, the government's opposition also specifically notes that the admonishment occurred at the 3:00 minute mark of the audio recording. (ECF No. 73, ¶ 42(d).)

Third, defendant claims that Individuals 15 (Player R), 16, and

---

[1] The government provided defendant with audio recordings of the interviews that show that defendant's claims are inaccurate. The government will make the recordings available to the Court at the hearing upon request.

1

17 were not read the text of § 1001, and the agents merely "referenced" the statute. (Reply, Exhibit 6.) This is also incorrect. The interviews were recorded and agents read the text of § 1001 to all three witnesses (Mitchell Decl. ¶ 4.), just as they had done for Individuals 9 and 27.

Finally, defendant misleadingly uses an asterisk in Exhibit 6 to denote "instances where the government claims there is an admonishment [] in Exhibit K . . . yet none is reflected in the ROI" (Reply, Exhibit 6 n.2), ignoring the fact that those interviews were conducted pursuant to written agreements containing express admonishments as to the consequences of lying. Specifically, while defendant implies that the interviews marked with an asterisk are evidence of the agents' unequal treatment of interviewees based on race, defendant neglects to mention that each asterisked interview was a proffer with a target, i.e., a cooperator.[2] The reports of interview ("ROI") for these individuals indicate the proffers were conducted pursuant to proffer agreements, which themselves contain an admonishment that lying could result in a prosecution for false statements. The government's opposition included examples of its standard proffer agreement (ECF No. 73, Exhibit I at 2) and copies of some of these proffers agreements for Targets 1-6 are attached to the accompanying Mitchell declaration as Exhibit L.[3] In sum, defendant's

---

[2] Defendant also uses an asterisk for Individuals 9 and 11. As discussed above, the audio recording of Individual 9 disproves defendant's claim. Individual 11 was provided formal Use Immunity, which contained the warning. (Mitchell Decl. ¶ 5.)

[3] On January 24, 2023, the government advised counsel that it possessed proffer agreements for these specific individuals, and it was prepared to produce the proffer letters shortly before trial. Defendant did not object. (Mitchell Decl. ¶¶ 7-8.) The government will produce all of the proffer agreements to the Court upon request.

Exhibit 6 is fundamentally flawed. Defendant conflates proffers of targets with interviews of non-target witnesses. Indeed, the bulk of defendant's examples of purported bias in the interview procedures appear to come from the proffers of the targets – a type of interview that differs significantly from non-target witness interviews. The participants are different, the dynamics are different, and the goals are different.

Further, and in any case, despite the allegations by defendant in his motion, the goal of the § 1001 admonishment is not to threaten the interviewee or set up a subsequent false-statement prosecution. To the contrary, the goal is to be transparent about the circumstances under which the interview is occurring and to alert the witness to the potential consequences of lying in order to assist the government in obtaining truthful answers in furtherance of its investigation. These warnings are commonly given in legal documents, tax filings, and plea colloquies – for similar reasons.

B.  Exhibit 6 Disproves Defendant's Claims

Had defendant included Exhibit 6 with his initial moving papers here, the government would certainly have responded differently.[4] This is because Exhibit 6 disproves defendant's narrative. Defendant's own new evidence directly contradicts key arguments advanced in his motion. For example, in his opening brief, defendant asserted that he had presented evidence of discriminatory intent because "[t]he very first time the prosecution team interviewed a

---

[4] While certain interview reports were produced to defendant after his Motion was filed, as explained in the government's Opposition, the government informed defendant that more discovery was being prepared, but defendant elected to file his Motion without waiting to review this discovery.

3

Black person, [the government's interview] protocol changed and the prosecution team read the Black individual the text of § 1001 at the beginning of the interview." (Mot. at 22.) Exhibit 6 disproves this claim: § 1001 was both read and referenced in interviews of non-Black witnesses before it was similarly read or referenced in interviews of Black witnesses. See Ex. 6 (compare Individuals 4, 5, 6 with Individuals 7, 8 (§ 1001 referenced); also compare Individual 10 with Individual 12 (§ 1001 read).)

Defendant repeats a version of this claim in his Reply, describing the government's interview protocol as "for Blacks, a recitation of the language of 18 U.S.C. § 1001 and for Whites, a friendly reminder about the proffer letter." (Reply at 15.) Again, defendant's Exhibit 6 proves his theory is false. (See Individuals 9, 10, 14, 15, 16, 17, 22, 24, 25, 26, 27) (reading text of § 1001 to non-Black witnesses).)[5]

Defendant's Exhibit 6 also shows that, of the five Black individuals interviewed, only two were read the text of § 1001. Yet defendant's motion rested on his claim that "Black individuals such as Puig were read the plain text of § 1001 and told that any prevarication would result in criminal punishment." (Mot. at 20.)[6]

Exhibit 6 is thus fatal to defendant's motion, which grounds its discriminatory bias argument on the claim that Black and non-Black

---

[5] Exhibit 6 fails to recognize that Individuals 9, 15, 16, 17, and 27 were read the statute; as previously discussed, the audio recordings demonstrate they were.

[6] In his Motion, defendant also asserted that on November 9, 2021, the government interviewed a "Black manager of a prominent Black athlete" (Individual 8), and that the text of § 1001 was read to Individual 8. (Mot. at 5; 6 n.5.) But according to Exhibit 6, Individual 8 was never read the text of § 1001, it was simply referenced.

4

interviewees were admonished differently. But his own evidence now shows that the challenged interview protocol (1) did not begin with Black interviewees, (2) was applied uniformly to the witnesses, and (3) predated defendant's interview.

Further, Exhibit 6 attempts to distinguish interviews in which § 1001 was "read" to witnesses from interviews in which § 1001 was merely "referenced." Some of the ROIs use the term "admonishment" to refer to both a reference of the § 1001 and to an actual reading of the statute. But the ROIs are merely a summary of the interview and defendant's inferences regarding what happened are not always correct. For example, the ROI for Player R (Individual 15) states that he was "provid[ed] an 18 USC 1001 admonishment." (Motion, Exhibit F at 2.) Defendant argues that this language is evidence that Player R was not "read" the statute and the agents merely "referenced" it. (Reply, Exhibit 6.) But this is not true. The audio recording shows that the agents read the entire § 1001 statute to Player R. (Mitchell Decl. ¶ 4.) The same is true for Individuals 16 and 17. (Id.)

C.  Defendant's In Camera Submission Should be Stricken

In support of his reply, defendant has lodged a submission in camera that purports to rebut the strength of the government's case. This submission should be rejected. The government's assessment of the strength of its evidence at the time of charging is explicitly a factor under Armstrong. See United States v. Armstrong, 517 U.S. 456, 465 (1996) (judicial deference considers "[s]uch factors as the strength of the case"). While the government cannot effectively respond to in camera evidence and arguments regarding the merits of

5

the case, such a response would be largely irrelevant.[7] A defendant's assessment of the strength of the case against him is not evidence of the prosecutor's assessment of the strength of the government's own case – which is the operative factor. See id. ("Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts." (emphasis added)). Defendant cannot show discriminatory intent by claiming in camera that he will prevail on the merits at trial. Indeed, any defense sufficiently secret that it must be kept from the prosecution and presented in camera would naturally be one that the defendant believes would not have been apparent to the government when charging the case.

### D. Defendant's Rule 408 Objection Lacks Merit

Finally, in his reply, defendant accuses the government of violating Federal Rule of Evidence 408 by attaching (under seal) defense counsel's prior letters seeking diversion for defendant. Not so. As noted in the declaration accompanying the Opposition (ECF No. 73-1, at 7 n.1), defendant affirmatively raised these letters in his Motion and suggested that the government's failure to respond to his satisfaction was one reason he needed the relief requested. (ECF No. 59-1 (Axel Decl.) ¶ 4 ("[O]n November 28, 2022, and November 30, 2022, I sent detailed, lengthy letters to the United States Attorney's Office ('USAO') setting forth Puig's factual contentions

---

[7] The government also opposes the in camera filing as antithetical to the innately adversarial foundation the criminal justice system rests upon. "Our [criminal justice] system is grounded on the notion that truth will most likely be served if the decisionmaker -- judge or jury -- has the benefit of forceful argument by both sides." United States v. Thompson, 827 F.2d 1254, 1258 (9th Cir. 1987).

and arguments as to selective prosecution and requesting a dismissal or alternative disposition")); (Mot. at i ("Mr. Puig's counsel have repeatedly asked to meet and confer in person regarding the selective prosecution issue, but the [] USAO has refused to do so.").) Accordingly, the government appropriately responded by putting the actual letters before the Court.

In any case, Rule 408 itself only bars the use of settlement letters to establish liability and does not bar their use for other purposes. See Fed. R. Evid. 408(b); Rhoades v. Avon Prod., Inc., 504 F.3d 1151, 1161–62 (9th Cir. 2007) (noting that Rule 408 "is one of limited applicability" and "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured"). Here, the government submitted the letters not to establish defendant's guilt, but rather to respond to defendant's own arguments that the government's response, or lack thereof, was indicative of bias.

**III. CONCLUSION**

For the reasons set forth above and in the government's Opposition, the government respectfully requests that the Court deny defendant's motion to compel.