Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Attorneys for Defendant Yasiel Puig Valdes

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>YASIEL PUIG VALDES,<br><br>    Defendant. | Case No. CR 22-394-DMG<br><br>**REPLY IN SUPPORT OF DEFENDANT'S *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE** |

Defendant Yasiel Puig Valdes ("Puig"), through his counsel Waymaker LLP, respectfully submits this brief Reply in support of his *Ex Parte* for an order continuing trial from August 8, 2023 until on or about November 27, 2023.

The defense has already set out appropriate grounds to continue the trial date based on the Speedy Trial clock and the Sixth Amendment. (*See* Ex Parte App. 3-4). The fact that defendant would be prejudiced without a continuance from August 8 is the most important factor, and defendant and his counsel – not the government – are in the best position to evaluate such potential prejudice. The defense will lodge a revised proposed order setting out the grounds in more detail.

The defense submits this short reply to address certain misleading claims in the government's opposition, and to address the trial date and pretrial conference.

/ / /

1. **The Government's Claim that the Hard Drive Production Derived from a Defense Request Regarding Selective Prosecution Discovery Is Not True**

In support of its argument that the defense does not actually need to review the discovery that the government produced, the government argues that the hard drive review "should not be a basis to continue the trial," "given that this Court" "found no evidence of selective prosecution." (Opp. at 2). The government attempts to link the hard drive to the selected prosecution issue based on two purported fact propositions: (1) that the hard drive discovery came about because "defendant requested far-broader discovery from the government's larger investigation into the gambling business at issue, in order to investigate his alleged selective prosecution theory," and (2) that the defense still now is "continuing to investigate these claims, even though this is not an issue of fact which could be presented to the jury at trial." (*Id.*). But there is no connection between the hard drive production and the selective prosecution issue, as set forth below.

The government's decision to produce the materials on the hard drive was independent of any defense request for discovery and preceded such request by almost a full month. As set forth in the Declaration of Jose Nuño, on December 21, 2022, the government indicated that it had a "large volume" of additional data, approximately 150 MB, and requested a hard drive. (Nuño Decl. ¶ 9). The defense requested an index so that it could prepare to receive the materials. On January 10, the government advised that the "hard drive contains wiretap material, pen register, additional tolls, surveillance, financials, and Sand Island Sports data from the larger investigation." (*Id.* ¶ 13). On January 17, the government provided an update as to the hard drive: "I don't have an ETA of the hard drive. I know [the government's paralegal] is working really on it now, but there are more than 220,000 documents for her to review." (*Id.* ¶ 15). Then on January 20, AUSA Mitchell stated that "the hard drive is not close to being ready." (*Id.* ¶ 16).

The defense did not make a formal written request for discovery until January 20, 2023 – well after the government had decided to produce the materials on the hard drive and the copying itself was in process. Accordingly, as a matter of timing alone, it is clear that the hard drive did not come about because of a defense request for selective prosecution discovery, but was in the works prior to the defense's January 20 discovery letter, and contained materials the government had determined to be discoverable. Indeed, in the letter, the defense made three specific requests for bookmaking records and bank records relating to the Sand Islands Sports investigation;[1] the government apparently agreed the materials were discoverable and found the defense request superfluous, responding in a January 24 letter that the records either were already produced or were "in the production intended for your hard drive."[2]

The government's claim is further belied by the fact that the government then refused to produce the materials the defense requested concerning selective prosecution, other than the ROIs themselves -- hence, of course, the motion to compel discovery regarding selective prosecution. (*See* Dkt. 59). The discovery that the government refused to provide is itemized in defendant's motion. (*Id*.). These materials are of course not on the hard drive because the hard drive was in the process of being assembled prior to the defense's request for selective-prosecution related discovery (and of course because the government refused to produce the contested materials in any event). The Court subsequently denied the motion (Dkt. 106), so the contested materials were never produced.

---

[1] As these requests demonstrate, the defense's January 20 letter also was not limited to selective prosecution discovery; indeed, most of the materials the defense requested were items that defense believed were relevant to the charges in the indictment and required to be produced under Rule 16, Jencks, *Gigilio*, and *Brady*.

[2] Because the January 20 and 24 letters reflect witness names, the defense has not attached them, but can lodge them under seal if it would assist the Court.

Given that the government independently decided -- pursuant to its Rule 16 and Brady obligations – to produce "data from the broader investigation" (Nuño Decl. ¶ 13) on the hard drive, it is certainly not in a position to tell the defense it does not need to review the materials.  Defense counsel is of course ethically required to request relevant evidence, and to review the prosecution's evidence.  *See generally* ABA Standards for Criminal Justice 4-4.1 ("Counsel's investigation should also include evaluation of the prosecution's evidence (including possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise.)  Indeed, not to review the materials could support an ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668, (1984)  ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"); *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994) (failure to conduct a reasonable investigation constitutes deficient performance) (citing *U.S. v. Gray*, 878 F.2d 702, 711 (3d Cir.1989) ("[i]neffectiveness is generally clear in the context of complete failure to investigate because counsel can hardly be said to have made a strategic choice when s/he [sic] has not yet obtained the facts on which such a decision could be made.")

The Court should reject the government's unfounded arguments that disregard the defendant's Constitutional rights to seek to gain an advantage of timing over the defense.

> **2.** **The Defense Has No Objection to Setting the Trial Date for December 4 or 5 and to Confer Further as to the Pretrial Conference and/or the Trial Date**

The government protests that the defense's proposed date is "impossible" because it is difficult for two out-of-state witnesses to travel and appear November

27, and impossible for AUSA Mitchell, who has a trial date of November 8, 2023, to attend the pre-trial conference if the trial is set for November 27.  (Opp. 2-3).

The defense was unaware of these facts; it certainly cannot be faulted for not knowing what is convenient for government counsel and the government's witnesses, given that the government refused to confer about potential alternative dates.  In any event, as noted in defendant's *Ex Parte* Application, the defense has cleared the first two weeks of December with its witnesses, and therefore has no objection to a start date of December 4, 2023.[3]  The defense is also willing to meet and confer with the government and the Court further about potential alternative dates that work for defendant, counsel, and witnesses.

As to the Pretrial Conference, the defense is willing to meet and confer with the government and consult the Courtroom Deputy and set a mutually-convenient date, possibly November 24 or 27, or whatever might work for the Court and counsel.

DATED:  June 19, 2023                    WAYMAKER LLP

By:    */s/ Keri Curtis Axel*
KERI CURTIS AXEL
*Attorneys for Defendant Yasiel Puig Valdes*

---

[3] In requesting December 4, the defense has attempted to be responsive to the Court's listed procedures, of which Rule 13(a) states: "Trials are generally conducted Monday through Friday, from 9:00 a.m. to 4:00 p.m. (except that the first day of trial begins at 8:30 a.m.)."  If, however, the Court generally sets the first trial date for Tuesday, the defense has no objection to November 28 or December 5.