Keri Curtis Axel (Bar No. 186847)
 kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
 jnuno@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Attorneys for Defendant
Yasiel Puig Valdes

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YASIEL PUIG VALDES,<br><br>Defendant. | Case No.: 2:22-cr-00394-DMG<br><br>**YASIEL PUIG'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING JANUARY 27, 2022 INTERVIEW**<br><br>[*Declaration of Keri Curtis Axel filed Concurrently*]<br><br>Hearing Date:  August 30, 2023<br>Courtroom of Hon. Dolly M. Gee |

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 30, 2023 at 1:30 p.m., or as soon thereafter as the matter may be heard in front of the Honorable Dolly M. Gee, located in Courtroom 8C of the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendant Yasiel Puig Valdes ("Puig") will and hereby does move for an order compelling the government to produce discovery regarding Puig's January 27, 2022 interview conducted by agents of Homeland Security Investigations, the Internal Review Service, and the United States Attorney's Office ("government"). Puig and the government have met and conferred in good faith regarding the production of the above-referenced material, however, the government has refused to produce the discovery as requested. (Declaration of Keri Curtis Axel ("Axel Decl.") ¶¶ 2-8.) The parties also met and conferred as to the briefing schedule and August 30, 2023 hearing date for the instant motion to compel ("Motion"). (*Id.* ¶ 9.)

This Motion is based on this notice, the attached memorandum of points and authorities, the declaration of Keri Curtis Axel and accompanying exhibits, the pleadings, papers and records in this action, any matters of which this Court shall take judicial notice, and such further evidence or argument as Puig may present prior to or at any hearing on this Motion.

DATED: August 2, 2023                         WAYMAKER LLP

By: */s/ Keri Curtis Axel*
Keri Curtis Axel
Jose R. Nuño
*Attorneys for Defendant Yasiel Puig Valdes*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

   A. The January 27, 2022 Interview of Yasiel Puig ................................. 2

   B. The Government Charges Puig with False Statements and Obstruction of Justice Based on His January 27, 2022 Interview ................................. 3

   C. The Government Refuses to Produce Relevant Notes Pertaining to Puig's Interview and Charges in Response to Puig's Requests ................................. 4

III. ARGUMENT .............................................................................................. 5

   A. Federal Rule of Criminal Procedure 16 Requires the Government to Produce the Requested Documents ............................................................. 5

   B. The Government Has a Constitutional Obligation to Produce the Requests Under *Brady* and its Progeny ................................................ 8

   C. Discrepancies Between the Government's Attestations, and the Nature of the Agents' Notes, Further Justify Puig's Requests for Discovery and are Grounds for Impeachment ................................................ 11

IV. CONCLUSION ......................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*,
 373 U.S. 83 (1963)...............................................................................4, 8, 10, 11

*Goldberg v. Kelly*,
 397 U.S. 254 (1970).............................................................................................2

*Perez v. United States*,
 968 A.2d 39 (D.C. Cir. 2009) .............................................................................8

*U.S. v. Almohandis*,
 307 F. Supp. 2d 253 (D. Mass 2004)................................................................6, 7

*U.S. v. Beal*,
 2021 WL 1519993 (D. Haw. April 16, 2021) ..................................................13

*U.S. v. DeMarco*,
 407 F. Supp. 107 (C.D. Cal. 1975) ..............................................................10, 13

*U.S. v. Price*,
 566 F.3d 900 (9th Cir. 2009) .............................................................................9

*U.S. v. Service Deli*,
 151 F.3d 938 (9th Cir. 1998) ...............................................................9, 10, 13

*U.S. v. Sudikoff*,
 36 F. Supp. 2d 1196 (C.D. Cal. 1999)................................................................8

*United States v. Heine*,
 314 F.3d 498 (D. Or. 2016) .........................................................................11, 13

*United States v. Muniz-Jaquez*,
 718 F.3d 1180 (9th Cir. 2013) ..........................................................................11

*United States v. Stein*,
 424 F. Supp. 2d 720 (S.D.N.Y. 2006) ................................................................7

*United States v. Vallee*,
 380 F. Supp. 2d 11 (D. Mass. 2005)...................................................................7

*United States v. W.R. Grace*,
  401 F. Supp. 2d 1087 (D. Mont. 2005) .................................................................. 6

*Youngblood v. West Virginia*,
  547 U.S. 867 (2006)............................................................................................... 8

**Statutes**

18 U.S.C. § 1001.............................................................................................. 1, 3, 9

18 U.S.C. § 1503(a) ................................................................................................. 3

**Rules**

Federal Rule of Criminal Procedure 16(a)(1)(B)(ii) ........................................passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Yasiel Puig ("Puig") respectfully moves the Court for an order compelling the government to produce written and otherwise recorded material relating to Puig's January 27, 2022 interview by the government. These materials are:

- Handwritten and typed notes taken by all members present at the time of interview ("**Notes**").

- Outlines summarizing the subject interview that is not the Report of Interview (ROI) already in custody with the defense, *including* drafts ("**Summary Outlines**").

- Government outlines or other preparation material used for questioning Puig ("**Questioning Outlines**").

- Correspondence between government agents and attorneys that contain or refer to the substance of the Puig's interview ("**Correspondence**").

The defense is entitled to receive this requested discovery pursuant to Federal Rule of Criminal Procedure 16(a)(1)(B)(ii), *Brady* and its progeny, and other applicable case law, because the discovery request is critical for Puig's defense to the two dispositive issues of this case: whether he (1) "knowingly and willfully" (2) "[made] any materially false, fictious, or fraudulent statement or representation[.]" *See* 18 U.S.C. § 1001.  These elements are, respectively, the *mens rea* and *actus reus* of the case – the two bedrock requirements of criminality – and the requested materials are directly relevant to both elements.  Given the circumstances of this case, including Puig's language barrier, the fact that the interview was administered remotely, and inconsistencies between Puig's Report of Interview ("ROI") and purported facts the government has submitted in materials before the court, even a small discrepancy between what Puig *actually* stated and meant and *how* the government understood his words could be impeachment material, exculpatory evidence, or even grounds for dismissal.  "[L]ife, liberty, or property will not be

1

DEFENDANT YASIEL PUIG'S MOTION TO COMPEL DISCOVERY
REGARDING JANUARY 27, 2022 INTERVIEW

1 taken on the basis of an erroneous or distorted conception of the facts or the law."
2 *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970).  The requested discovery should be
3 compelled.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The January 27, 2022 Interview of Yasiel Puig

Beginning sometime in 2017, the Department of Homeland Security – Homeland Security Investigations ("HSI"), Internal Revenue Services ("IRS"), and the United States Attorney's Office for the Central District of California ("USAO") (collectively "the government") launched an investigation into the "Nix Gambling Business."  (First Superseding Indictment ("FSI") (Dkt. 54) ¶¶ 6-9.)  As part of this investigation, the government interviewed various targets (*i.e.* operators of the gambling business) of the investigation as well as non-target witnesses.  (*See* February 22, 2023 Declaration of Jeff Mitchell (Dkt. 73-1) ¶ 6.)  Puig was one of the witnesses the government sought to interview.

On January 27, 2022, Special Agents ("SAs") Jason Canty and Chris Seymour, and Assistant United States Attorneys ("AUSA") Jeff Mitchell and Dan Boyle, interviewed Puig.  The subject of the interview was purportedly "Puig's knowledge and relationship with [Agent 1] and Wayne Nix."  (*See* Puig ROI at February 14, 2023 Declaration of Jose R. Nuño (Dkt. 67) Ex. C at 2.)  The interview was conducted through a remote teleconferencing platform.  (*Id.*; *see also* Mitchell Decl. (Dkt. 73-1) ¶¶ 11, 16.)  To assist with the interview, the government retained a Spanish language interpreter, Esther Hermida ("Hermida").  (*Id.* ¶ 14.)  The interview had translation issues and was not recorded.  (Nuño Decl. (Dkt. 67) Ex. C at 2.)  Puig was represented by his former counsel at the interview, not the undersigned counsel.  (*Id.*)

Following the interview, a report of investigation ("ROI") was prepared by SA Canty to summarize the interview, and the ROI was approved on January 31,

2022.  (*See* Nuño Decl. (Dkt. 67) Ex. C at 1.)  The interview lasted approximately an hour and half, from 2:11 p.m. until 3:41 p.m.  (*Id.* at 1, 5.)

### B. The Government Charges Puig with False Statements and Obstruction of Justice Based on His January 27, 2022 Interview

On January 20, 2023 the government filed its FSI against Puig.  (*See* FSI (Dkt. 54).)  The government charges Puig with one count of obstruction of justice in violation of 18 U.S.C. § 1503(a), and one count of False Statements in violation of 18 U.S.C. § 1001(a)(2), using the same factual basis and January interview to charge both counts.  (*Id.* ¶¶ 27-29.)

With respect to obstruction, the government states that, on January 27, 2022, Puig "falsely stated that he had never discussed sports gambling with Agent 1 and withheld information about Agent 1's involvement with bets made by defendant Puig and the payment of defendant Puig's gambling debts."  (*Id.* ¶ 27.)  Regarding the purported false statements, the government states that Puig knowingly and willfully made materially false statements during his interview, contending that on January 27, 2022, Puig "falsely stated that he had never discussed or talked about sports betting with Agent 1"; "falsely stated that he had placed a bet online with an unknown person on an unknown website which resulted in a loss of $200,000," and "falsely stated that he did not know the individual who instructed him to send $200,000 in cashiers' checks to [Individual A] and that he had never communicated with that person via text message."  (FSI ¶¶ 29(a)-(c).)

Because these statements are the alleged *actus reus* of the purported crime, what exactly was said in the interview is the key issue in the case.  But, as detailed below, since the litigation began, the government has recited and characterized facts about the January 27, 2022 interview that are inconsistent with the ROI.  The factual inconsistencies are material to the charged offenses.

### C. The Government Refuses to Produce Relevant Notes Pertaining to Puig's Interview and Charges in Response to Puig's Requests

For more than 6 months, the defense has requested all handwritten and typed notes from Puig's January 27 interview pursuant to *Jencks, Brady,* and the government's obligations under Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 16. Specifically, on January 20, 2023, the defense requested *inter alia*:

- Any and all handwritten or typed notes from Mr. Puig's proffer session with the government on January 27, 2022, including notes taken by either agents or government attorneys;

- All written records containing the substance of any relevant oral statement made by Mr. Puig in response to interrogation by a person hew knew to be a government agent, including, but not limited to, (i) all law enforcement agency reports and (ii) all notes of law enforcement officers, whether or not used to prepare reports;

- The substance of any other relevant oral statements made by Mr. Puig in response to interrogation... that the government intends to use at trial; and

- All reports, notes, or any tapes that relate to the circumstances surrounding Mr. Puig's questioning… include[ing] any rough notes, records, reports, transcripts, or other documents leading up to the interview (including notes of conversations with counsel), notes of the interview, including attorney notes, and notes in which statements of Mr. Puig or any other discoverable material is contained, and subsequent notes of any attorney conversations.

(Declaration of Keri Curtis Axel ("Axel Decl.") ¶ 2, Ex. 1.) The government responded only to the specific requests stating that it did "not believe these items are discoverable under the current state of the law" and asked for case law to support the requests. (*Id.* ¶ 3.)

On February 7, 2023, Puig responded to the government's request for legal support and provided several cases and DOJ policies supporting the requests and why the documents were core material relevant to guilt and innocence. (Axel Decl. ¶ 4, Ex. 2.) Puig also requested all "agent communications with the government prosecutors, including regarding the preparation of ROIs/MOIs, the protocols to be used in interviewing witnesses, and decisions regarding whom to charge and why" as discoverable under Rule 16 and *Brady*. (*Id.*) On February 13, 2023, the

1  government responded again, refusing to produce the requested documents and
2  failing to acknowledge relevant case law cited. (*Id.* ¶ 5, Ex. 3.)
3        On June 6, 2023, the defense again followed-up with the government on the
4  requests for all *inter alia*, typed and handwritten notes and correspondence between
5  agents and attorneys. (Axel Decl. ¶ 6, Ex. 4.) The government replied on June 9,
6  2023 and again refused to produce the requested documents. (*Id.* ¶ 7.) Though the
7  parties had met and conferred as described herein, on July 24, 2023, Puig notified
8  the government of his intent to file the instant motion to compel discovery and
9  offered to further meet and confer. (*Id.* ¶ 8.) The government confirmed the parties
10 were at an impasse and the parties agreed to a hearing date and briefing schedule as
11 required by the Court's local orders.

## III. ARGUMENT

### A. Federal Rule of Criminal Procedure 16 Requires the Government to Produce the Requested Documents

In this case, for which criminal liability is solely predicated on statements made by Puig, the plain language of the Federal Rules of Criminal Procedure requires the government to produce the requested documents. Specifically, Rule 16(a)(1)(B) states:

> *Defendant's Written or Recorded Statements*. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> (i) any relevant written or recorded statement by the defendant – if statement is within the government's possession, custody, or control; and the attorney for the government knows – or through diligence could know — that the statement exists;
>
> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

5

DEFENDANT YASIEL PUIG'S MOTION TO COMPEL DISCOVERY
REGARDING JANUARY 27, 2022 INTERVIEW

>  (iii) the defendant's recorded testimony before a grand jury relating to the charged offense.[1]

Rule 16 is plain and unambiguous and required production of *any* written record containing the ***substance of any relevant oral statement*** made by a defendant. *See id.* As observed by the court in *United States v. W.R. Grace*, 401 F. Supp. 2d 1087, 1090 (D. Mont. 2005), the substance of Rule 16(a)(1)(B)(ii) was added in 1991 and "recognizes that the defendant has some proprietary interest in statements made during interrogation regardless of the prosecution's intent to make any use of the statements." *Id.* The Advisory Committee's Note to the 1991 Amendments for Rule 16 similarly states: "'[t]he written record need not be a transcription or summary of the defendant's statement but must only be some written reference which would provide some means for the prosecution and defense to identify the statement.'" *Id.* (Citations omitted). It is clear that the plain language and intent of Rule 16 as amended, is very broad, requiring the production of anything in writing that contains the substance of any relevant oral statement.

Applying this rule, in *U.S. v. Almohandis*, 307 F. Supp. 2d 253, 255 (D. Mass 2004), the Court compelled the government to produce the agents' rough notes of interviews with the defendant, interpreting Rule 16(a)(1)(B)(ii) to require "production of 'any written record of the substance of any relevant oral statement." *Id.* The Court found it irrelevant that the notes were later reduced to formal reports stating, "The notes are 'a' written record. They may not be the only written record, but they certainly are 'a' written record.'" *Id.*

---

[1] Similarly, Rule 16(a)(1)(A) requires that "[u]pon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."

6
DEFENDANT YASIEL PUIG'S MOTION TO COMPEL DISCOVERY
REGARDING JANUARY 27, 2022 INTERVIEW

Other cases hold the same. *See United States v. Stein*, 424 F. Supp. 2d 720, 728 (S.D.N.Y. 2006) ("The rule plainly requires production of 'any written record'… and is 'not limited to a typed, formalized statement' or 'a verbatim or near verbatim transcription.'"); *United States v. Vallee*, 380 F. Supp. 2d 11, 12 (D. Mass. 2005) ("The language of Rule 16 plainly, and unambiguously, requires the production of any handwritten notes of government agents containing the substance of anything said by the defendant during the interrogation").

Here, the agent and attorney notes of the interview – whether or not an ROI was prepared – are a "written record" of the "relevant oral statement" and therefore must be produced, whether intended to be used at trial or not. *See Almohandis*, 307 F. Supp. 2d at 255 ("Unlike Rule 16(a)(1)(A), the obligation to disclose [interview notes] exists regardless of whether or not the government intends to use the statement at trial.") All of the elements of Rule 16(a)(1)(B)(ii) are met here: the defense has requested the production of all agent and attorney notes regarding Puig's January 27 interview; these notes capture the substance of Puig's oral statements; and the oral statements were made in response to government questioning and to person(s) Puig knew were government agents. Indeed, any typed and handwritten notes should be produced under this rule, as well as correspondence between government agents and attorneys that address the substance of Puig's statements.

Further, on the unique facts here, the government's outlines or other preparation material used for questioning should be produced, because they are relevant to evaluating and putting in context the written records of the oral statements. Indeed, Puig's alleged statements are in the form of answers to the questions posed (which came to the agents through a translator); and the substance of an answer cannot be complete without knowing its context, or, specifically in this case, what and how questions were asked to prompt that answer. For example, the ROI states that Puig "indicated that he (Puig) only knew [Agent 1] as ["nickname"]

7

who Puig knew from baseball" but fails to include the questions that prompted that response.  (*See* Nuño Decl. (Dkt. 67) Ex. C at 2-3.)  The government has characterized this statement as Puig stating he knew Agent 1 *exclusively* from baseball (rather where they originally met) and thus the government's questioning outlines are therefore relevant to determine what exactly was asked, which may inform what was translated, and therefore inform the purported answer itself.  The documents should be produced.

### B. The Government Has a Constitutional Obligation to Produce the Requests Under *Brady* and its Progeny

Setting aside the government's obligations to produce the requested documents under Rule 16, the documents are subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  *Brady* is unequivocal.  "The suppression by the prosecution of evidence favorable to an accused … violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87; *see also U.S. v. Sudikoff*, 36 F. Supp. 2d 1196, 1201 (C.D. Cal. 1999) (in the pretrial context, *Brady* information is material that "'might reasonably be considered favorable to the defendant's case,'… and likely to lead to admissible evidence.")  (Internal citations omitted).  To that end, "[t]he due process obligation under *Brady* to disclose exculpatory information is for the purpose of allowing defense counsel an opportunity to investigate the facts of the case and, with the help of the defendant, craft an appropriate defense." *Perez v. United States*, 968 A.2d 39, 66 (D.C. Cir. 2009) (internal quotation and citation omitted); *see also, Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per *curiam*) (internal quotations omitted) ("*Brady* suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.").

The requested documents are clearly *Brady* material in light of the charges for false statements and obstruction arising solely out of Puig's January 27, 2022

interview. Here, the alleged statements (or omissions, and indeed the questions and translation themselves) are the very *actus reus* of the alleged crime. For example, according to the ROI, "Puig indicated that he (PUIG) had placed a bet or bets online, had lost, and had sent the checks to the person listed ([Individual A]) based on direction from an unknown person" (*See* Nuño Decl. (Dkt. 67) Ex. C at 4.) This statement is the second purported false statement for which Puig is charged. (*See* FSI (Dkt. 54) at ¶ 29(b).) Thus, unlike any other case where interview notes and witness statements are withheld because they relate to a collateral crime for which the defendant is charged, here, the notes are contemporaneous accounts of the alleged crime itself. Withholding them in this situation is akin a situation where the government has charged the defendant with reckless driving and is then withholding contemporaneous eyewitness accounts of the car accident. These statements are not simply potential party admissions, but are accounts of the purported crime itself and subject to disclosure.[2]

The Ninth Circuit case *U.S. v. Service Deli*, 151 F.3d 938 (9th Cir. 1998), also a 18 U.S.C. § 1001 case, is instructive. There, defendant "Service Deli claim[ed] that the district court erred by refusing to require the government to produce all of its handwritten notes concerning interviews with Ditzel" it's one key witness. *Id.* at 942-43. Rather than turning over its handwritten notes, the government produced a typewritten summary (much like the ROI in this case) and "represented to the district court that the memorandum contained the substance of the [interview at issue]." *Id*. The Ninth Circuit observed that there were discrepancies between the

---

[2] Whether documents are in possession of government counsel or relevant agents makes no difference. The Ninth Circuit has held that *Brady* compels the government to produce all relevant information in possession of any agent involved in the subject prosecution. *See U.S. v. Price*, 566 F.3d 900, 908 (9th Cir. 2009) ("the district court should have considered whether the government failed to disclose the relevant information in the possession of *any* of its agents involved in [defendant]'s prosecution").

notes and the summary memorandum such that the original notes were required to be disclosed and reversed the denial of defendant's motion on *Brady* grounds. *Id.* at 943. The Court noted that "the foundation of the government's entire case rests upon the testimony of one key witness… [and was] clearly [] determinative of the defendant's guilt or innocence" and held that the withheld government attorney notes fell "within the *Brady* rule and should have been produced by the government." *Id.* at 944. The Ninth Circuit further concluded that the violation of defendant's due process rights under *Brady* required it to vacate the conviction and remanded the case for a new trial. *See id.*

Here, as in *Service Deli,* "the foundation of the government's entire case rests upon the testimony of one key [individual]" – but in this case the individual is the defendant himself and the statements represent the alleged *actus reus* itself. *See* 151 F.3d at 943. If the witness statements were "determinative of the defendant's guilt or innocence," in *Service Deli*, then Puig's own statements and the questions that prompted them are certainly wholly determinative of Puig's guilt or innocence here. Given the nature of the of the case, "credibility [i]s not just a major issue; it essentially [i]s the only issue that matter[s]." *See id.* at 944. A failure to produce the requested documents would constitute a violation of Puig's due process rights and the government's constitutional duties.

In addition to written notes, the internal communications between government attorneys and agents regarding the Puig interview are also discoverable under *Brady*. In *U.S. v. DeMarco*, 407 F. Supp. 107, 110-11 (C.D. Cal. 1975) the court required the disclosure of a government internal memorandum which "reflected the conclusions of two material witnesses to" a meeting where defendant allegedly made admissions which formed the basis of the false statements against him. In rejecting the argument that the internal correspondence was not discoverable, the court held that "the fact that government memoranda are not discoverable under Rule 16(b) of the Federal Rules of Criminal Procedure cannot qualify the

10

government's responsibilities under *Brady*. The very purpose of *Brady* was to make clear that the due process clause compels the production of material not otherwise discoverable." *Id.* at 111, n. 2.

The defense has been clear that the government is not *per se* required to produce all communications between its agents and attorneys but it is required to review them for "substance of any relevant oral statement" or otherwise for inconsistencies and *Brady*. However, the government has refused to even do as much, and simply asserts that it has no such obligations. That is not the law. The spirit of *Brady* cannot be stated more clearly than the *Brady* Court: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87. The documents should be produced.

### C. Discrepancies Between the Government's Attestations, and the Nature of the Agents' Notes, Further Justify Puig's Requests for Discovery and are Grounds for Impeachment

Puig's requests should also be granted because his alleged *actus reus* and *mens rea* hinge on ambiguities and inconsistencies of fact in materials solely compiled and provided by the government. Not only do the actual discrepancies demonstrate why the notes are relevant under *Brady*, they are also clearly germane as impeachment materials subject to production.

For evaluating production requests, "evidence is material as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Heine*, 314 F.3d 498, 501 (D. Or. 2016). In *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1184 (9th Cir. 2013), the Ninth Circuit reversed the trial court's denial of evidence that the defense intended to use as impeachment. The appellate court held that the request "was not a fishing expedition.... [T]he tapes could have been crucial to [defendant's] ability to assess

11

the reliability of Agent Woodford's testimony and to cross-examine him effectively, both important issues in his defense." *Id.*

The agent and attorney notes, outlines, summaries, and correspondence are similarly important to the defense here. In the opening line of its Opposition ("Opp.") brief to Puig's Motion to Compel, the government wrote "defendant YASIEL PUIG VALDES *told* law enforcement that he had *never* talked to Agent 1 about sports betting[.]" (Opp. (Dkt. 73) at 1:4-5) (emphasis added). In Puig's ROI, however, the government wrote "when asked about PUIG's and [Agent 1]'s involvement with sports betting, PUIG *indicated* that the two had not spoken about sports betting." (Nuño Decl. (Dkt. 67) Ex. C at 3) (emphasis added). To "tell" someone something is not the same thing as "indicating" it; indeed the former is a subset of the latter. For example, one may "indicate" their uncertainty to someone with their body language, but that same person may not "tell" their uncertainty without actually speaking words themselves. In the context of the interview done through a translator, discrepancies such as this may make the difference in proving Puig's innocence and are clear grounds for impeachment material.

In the same brief, based on the declaration of AUSA Mitchell, the government wrote "the government privately advised defendant's then-counsel that defendant's statements were contrary to evidence the government had already obtained … but defendant did not change his prior statements." (Opp. (Dkt. 73) at 6:6-12.) In the ROI, however, it states that Puig had initially "indicated" that Puig and Agent 1 had not spoken about sports betting, but Puig later revealed that he asked Agent 1 to place a basketball bet for him. (Nuño Decl. (Dkt. 67) Ex. C at 3-4.) As evidenced by AUSA Mitchell's declaration, the ROI is only one version of the "substance" of defendant's statement, and any version would reveal additional potential discrepancies. The notes at a minimum are additional versions of "the substance of any relevant oral statement" made by Puig; and wherever any other versions exist, Puig is entitled to all of them. *See* Fed. R. Crim. P. 16.

Whether the foregoing non-exhaustive discrepancies were intentional or oversight is irrelevant to the current motion. In the end, inconsistencies exist in the very facts used to charge Puig, and that alone is sufficient under *Brady* to compel the requested discovery. *See United States v. Beal*, 2021 WL 1519993, at *2 (D. Haw. April 16, 2021) (recognizing agents' interview notes are discoverable when there is no audio or video recording and "the only contemporaneous record of the defendant's statements were the agents' interview notes."); *See also Service Deli*, 151 F.3d at 943; *DeMarco*, 407 F. Supp. 107 at 111.³

Moreover, the government has previously provided this Court with examples of how the agents take notes, which further demonstrates that the notes are crucial to illustrate differences between what the agents took down contemporaneously and what they filled in later, for narrative purposes. (*See* Mitchell Decl. (Dkt. 73-1) Ex. I (providing contemporaneous agent notes from interviews of Individuals 10, 20, and 25 in shorthand format with sporadic quotes of witness statements).) The Court should examine these examples carefully, and compare them to the more full narratives typically provided in finalized ROIs (which are themselves reviewed and approved by a supervisor). Here, because the case turns on what was said at the interview, if there are even the slightest differences in the original notes and the ROI, these may be dispositive to Puig's case, especially given that Puig is a non-English speaker, only received a third-grade education, took the interview remotely, and a translator was used to convey the government's questions to Puig and everything that Puig said to the government. They are therefore discoverable not only under *Brady*, but also should be produced for impeachment. It would certainly be relevant impeachment of the case agent to compare the notes and the ROI, and

---

³ Any issues should be resolved in favor of production. *See Heine*, 314 F.R.D. at 501 ("Rule 16 is broader than Brady because '[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense.'") (Internal citations omitted).

13

ask about additions, or more narrative explanations, that exist in the ROI that are not in the notes. This is classic and critical impeachment material, and is a further ground supporting the required production of the notes.

## IV. CONCLUSION

For the foregoing reasons, Puig respectfully requests that this Court issue an order compelling the government to produce the requested discovery on Puig's January 27, 2022 interview.

DATED: August 2, 2023  WAYMAKER LLP

By: */s/ Keri Curtis Axel*
Keri Curtis Axel
Jose R. Nuño
*Attorneys for Defendant Yasiel Puig Valdes*