# EXHIBIT 4



Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

June 6, 2023

**Keri Curtis Axel**
Direct (213) 314-5284
kaxel@waymakerlaw.com

<u>*Via Electronic Mail*</u>

AUSA Jeff Mitchell
AUSA Daniel Boyle
U.S. Attorney's Office
1100 United States Courthouse
312 N. Spring Street
Los Angeles, CA 90012

Re:   *United States v. Yasiel Puig Valdes, Case No. 2:22-CR-00394-DMG*

Dear AUSAs Mitchell and Boyle:

We write in response to your letter of February 13, 2023.

Notes Of Statements During Mr. Puig's Interview

Your letter does not respond to our points that the agent notes of Puig's interview are both Brady material and discoverable under Rule 16.

Rule 16(a)(1)(B)(ii) requires the production of *any* written record containing *the substance of any relevant oral statement* made by the defendant. As noted in *United States v. W.R. Grace*, 401 F. Supp. 2d 1087, 1091 (D. Mont. 2005), this amendment goes further than the prior version of Rule 16 and is very broad, requiring the production of anything in writing that contains the substance of any oral statement.  Handwritten notes here clearly are a "written record" containing the "substance" of the defendant's oral statements, and therefore fall under this portion of the rule.  *See United States v. Stein*, 424 F. Supp. 2d 720, 728 (S.D.N.Y. 2006) ("The rule plainly requires production of "any written record" containing statements made during interrogation and is "not limited to a typed, formalized statement" or "a verbatim or near-verbatim transcription."); *United States v. Vallee*, 380 F. Supp. 2d 11, 12 (D. Mass. 2005) (The language of Rule 16 plainly, and unambiguously, requires the production of any handwritten notes of government agents containing the substance of anything said by the defendant during interrogation).

Furthermore, none of the cases you cite involve charges under 18 U.S.C. § 1001, where the whole issue presented is what transpired during a government interview, what the defendant in fact said, and whether those statements were false.  In the other cases you cite, there is some other crime charged, so the defendant's statements were relevant under the evidentiary rules only as potential party admissions.  Here the alleged statements (or omissions, and indeed the questions and translations themselves) are the very *actus reus* of the alleged crime.  All written



records concerning or regarding that *actus reus* are core evidence in this case and therefore must be produced under Brady and Rule 16. The government's position here is akin to charging a defendant with reckless driving in causing an accident, and then refusing to produce the notes of the officers who witnessed the accident. Such notes are also impeachment material regarding what the agent chose to put (and not to put) in his report, and what the translator translated. The same would be true of AUSA notes, if any exist. (You have already stated under oath certain facts concerning the interview that vary with the ROI. The basis for your statements is discoverable and should be produced.)

You have said we failed to provide "controlling authority," but you do not acknowledge the *Service Deli* case, in which, post-trial, the Ninth Circuit found that it was a Brady violation for the government to have withheld notes of an interview with a key government witness in a Section 1001 case. *U.S. v. Service Deli Inc.*, 151 F. 3d 938, 943-44 (9th Cir. 1998). Our facts are even stronger, given that the statement at issue here is the defendant's own statement and constitutes the alleged *actus reus*. On such facts, any and all relevant written records are Brady.

Finally, while we believe you misinterpret *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), which generally favors disclosure, we note (as explained in *W.R. Grace*), it was decided before the amendments to Rule 16 discussed above; *Harris* was also decided well before DOJ and the Courts adopted more rigorous policies regarding the disclosure of exculpatory and Rule 16 evidence. The DAG David D. Odgen Memorandum of 2010 ("Ogden Memo") and Section 9-5.001 of the Justice Memo reflect nationwide Departmental guidance regarding "the disclosure of exculpatory and impeachment information" and "provides for broader disclosures than required by Brady and Giglio." The Memo states that "Prosecutors are also encouraged to provide discovery broader and more comprehensive than the discovery obligations." It further instructs that:

> providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error. Prosecutors are encouraged to provide broad and early discovery consistent with any countervailing considerations.[1]

Similarly, DOJ Manual Rule 9-5000, as updated in 2020, states that "[r]ecognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."

The Court's standing order provides for prompt production of Rule 16 and Brady materials. The government should not withhold this core evidence; rather these notes should be handed over

---

[1] There are no countervailing considerations here; this is not a national security matter and there are no similar issues regarding witness or victim security. Moreover, we have a protective order.



forthwith.  Please confer with your supervisors and the USAO's Brady coordinator and revert back to us on this.

Correspondence with Agents and Attorneys

As to our request for agent and attorney communications over the course of the investigation, you have indicated that you are unaware of authority for this request.  The 2010 DAG Memo includes, among the set of information to be reviewed as part of the prosecutor's discovery review, "substantive case-related communications" of this type.  It states:

> 'Substantive' case-related communications are most likely to occur (1) among prosecutors and/or agents, (2) between prosecutors and/or agents and witnesses and/or victims, and (3) between victim-witness coordinators and witnesses and/or victims.  Such communications may be memorialized in emails, memoranda, or notes.  "Substantive" communications include factual reports about investigative activity, factual discussions of the relative merits of evidence, factual information obtained during interviews or interactions with witnesses/victims, and factual issues relating to credibility.  Communications involving case impressions or investigative or prosecutive strategies without more would not ordinarily be considered discoverable, but substantive case-related communications should be reviewed carefully to determine whether all or part of a communication (or the information contained therein) should be disclosed.

Here, we have requested "agent communications with the government prosecutors, including regarding the preparation of ROIs/MOIs, the protocols to be used in interviewing witnesses, and decisions regarding whom to charge and why."  The communications we have requested fall within this universe of substantive case-related communications identified in the Ogden Memo.  We believe you are required to review them for:

> (1) factual issues or discrepancies pertaining to the credibility of any government witness;

> (2) discussions of the relative merits of evidence or of the credibility of witnesses that would provide impeachment material concerning any witness, including SA Canty;

> (3) analysis of Puig's gambling activity and analysis of gains/losses therefrom, whether associated with Sand Island Sports/Bet Prestige or other websites; and

> (4) information relevant to impeaching SA Canty and other agents regarding the preparation of ROIs or investigative memoranda, including the protocols regarding the interviews of witnesses or documenting such interviews, the quality of the translation and protocols regarding interviews conducted via translation, and any discussion of interview memos or editing of them (as what the government wrote down or failed to write down will be an issue in this case, and the as will be the preparation for the interview itself).



AUSA Jeff Mitchell<br>
June 6, 2023<br>
Page 4 of 4

This list is not exhaustive. To the extent any "substantive case-related communications" include Brady materials or impeachment materials of any government or other witness, we request them and you are required to review your substantive case-related communications for such issues. Please confirm that you are doing so.

Sincerely,

Keri Curtis Axel
WAYMAKER LLP


cc:  AUSA Ranee Katzenstein