UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES—GENERAL

| Case No. | CR 22-394(A)-DMG | | Date | August 10, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 1 of 6 |
|---|---|---|---|

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| Yasiel Puig Valdes | Not | | ✓ | Keri Axel | Not | | ✓ |

**Proceedings:** **[IN CHAMBERS] ORDER DENYING MOTION TO FIND KNOWING BREACH OF PLEA AGREEMENT [110] AND AMENDING ORDER GRANTING MOTION TO FIND BREACH OF PLEA AGREEMENT [51]**

On July 7, 2022, Defendant Yasiel Puig Valdes executed a plea agreement ("the Agreement") agreeing to plead guilty to making false statements (*see* 18 U.S.C. § 1001(a)(2)) during an investigation into the Wayne Nix sports gambling ring, as set forth in the original indictment in this action. *See* Plea Agr. [Doc. # 6.] The Court never accepted this plea. Rather, Puig decided not to plead guilty, and on January 6, 2023, the Court granted the Government's motion to find Puig had breached the Agreement in order that the Government could be relieved of any obligations it had undertaken in that Agreement. The Court deferred any finding on whether the breach was "knowing." [Doc. # 51.]

The Government now moves to find that the breach was "knowing," so that it may rely on the factual basis of the Agreement as trial evidence. [Doc. # 110.] The motion is fully briefed. [Doc. ## 128, 135, 140.] Because the Agreement was never accepted by the Court, the Court finds that its terms were unenforceable and, on that basis, **DENIES** the Government's motion. The Court also amends its prior order finding that Puig had breached the Agreement and instead finds the Agreement unenforceable for the reasons stated herein, such that the Government was relieved of its obligations under that Agreement. [Doc. # 51.]

**I.
BACKGROUND**

A.  **The Charges**

The January 20, 2023 first superseding indictment ("FSI") adds one count of obstruction of justice (18 U.S.C. § 1503(a)) to the original charge of making false statements. [Doc. # 54.] According to the FSI, Puig is a former professional baseball player who placed bets through the Nix gambling business beginning no later than May 2019, owing $282,900 for sports gambling losses by June 17, 2019. *Id.* ¶ 19. To repay his losses, individuals identified in the information as "Agent 1" and "Individual B" allegedly both instructed Puig to pay amounts to "Individual A," and Puig accordingly purchased two cashiers' checks for $100,000 each, payable to that person, mailing the checks and texting Agent 1 and Individual

Case 2:22-cr-00394-DMG   Document 143   Filed 08/10/23   Page 2 of 6   Page ID #:1429

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 2 of 6 |
|---|---|---|---|

B confirmation. *Id.* ¶ 20–22. Puig then allegedly regained access to Nix's gambling websites and placed 899 bets on sporting events, including by placing bets through Agent 1. *Id.* ¶ 23–24.

The FSI further alleges that the Department of Homeland Security, Internal Revenue Service, and U.S. Attorney's Office interviewed Puig on January 27, 2022, as part of their investigation into illegal sports gambling and money laundering. *Id.* ¶¶ 6–7, 25. Puig was admonished against lying yet nevertheless allegedly made the following false statements: that he had never discussed sports betting with Agent 1, that he had placed a bet online "with an unknown person on an unknown website" that resulted in the $200,000 loss, and that he did not know the person who instructed him to send cashiers' checks to Individual A and had never communicated with that person via text message. *Id.* ¶ 29. Further, he allegedly obstructed justice by falsely stating that he had never discussed sports gambling with Agent 1 and withholding information about Agent 1's involvement in sports gambling. *Id.* ¶ 27.

**B.    Plea Discussions, Agreement, and Breach**

Defense attorney Keri Axel states that she contacted AUSA Jeff Mitchell on May 27, 2022 and requested to schedule a reverse proffer, which occurred June 6, 2022. 2/10/23 Axel Decl. ¶ 2 [Doc. # 59-1]; Decl. of Anthony Fernandez ¶ 4 [Doc. # 128-5]. After negotiations (the details of which are not relevant here), Puig ultimately signed a revised plea agreement on July 7, 2022. Plea Agr. That Agreement includes the following consequence for a "knowing" breach of the Agreement, "should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement"—

> Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) *the agreed to factual basis statement in this agreement*; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Plea Agr. ¶ 22 (emphasis added). The Agreement also includes a paragraph stating that it is effective upon signature (*id.* ¶ 20) and, in the breach of agreement section, refers to breaches "at any time after the effective date." *Id.* ¶ 21.

On November 23, 2022, Puig appeared for his plea hearing and moved to continue the hearing. [Doc. # 24.] Defense counsel subsequently notified the Government that Puig did not intend to plead guilty, and on November 28, 2022, the Court vacated the plea hearing scheduled for November 29. [*See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 3 of 6 |
|---|---|---|---|

Doc. # 26 at 3.[1]] On December 2, 2022, the parties filed a stipulation requesting a trial date. *Id.* As noted above, the Court found Puig in breach of the Agreement but has yet to rule on whether the breach was "knowing." [Doc. # 51.]

## II.
## DISCUSSION

Puig argues that because the Court did not hold a plea hearing (and thus has not formally accepted the plea), the plea is unenforceable, so that terms he agreed to regarding the consequences of a "knowing" breach are not binding. Opp. at 11.

Puig is correct as a matter of law. The Ninth Circuit has repeatedly held that until the Court accepts and enters a guilty plea, a plea agreement is not binding on the parties and either party may withdraw. *See United States v. Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006) (Defendant "insists that once the government entered into a plea agreement, it was absolutely bound to the agreement's terms. . . . He is wrong."); *United States v. Fagan*, 996 F.2d 1009, 1013 (9th Cir. 1993); *see also United States v. Savage*, 978 F.2d 1136, 1137 (9th Cir. 1992) ("'Unless and until a court accepts a guilty plea, a defendant is free to renege on a promise to so plead.'" (quoting *United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir. 1988)); *cf. United States v. Washman*, 66 F.3d 210, 211 (9th Cir. 1995) ("Because we find that the district court had not accepted the agreement at the time [Defendant] attempted to withdraw, we hold that the district court erred in refusing to allow him to withdraw."); Fed. R. Crim P. 11(d)(1) (a defendant may withdraw a guilty plea before the court accepts the plea "for any reason or no reason").

The Government argues that this line of cases has been overruled by *Puckett v. United States*, 556 U.S. 129, 138 (2009), a case addressing the standard of review for a claim that the prosecutor breached the plea agreement, a claim which the defendant failed to contemporaneously raise. *See id.* at 133. *Puckett* does not concern the enforceability of a plea agreement where the plea was never accepted by the court. Nor does it implicitly overrule the cases cited above. Rather, the most relevant part of *Puckett*'s holding is that the breach of a plea agreement *after the court accepts the plea* does not retroactively give rise to a claim that the opposing party's agreement to the plea was coerced or induced by fraud. *Id.* at 137.[2]

---

[1] Citations to the record are to the CM/ECF pagination.

[2] *Fagan*, cited *supra*, relied on *Mabry v. Johnson*, 467 U.S. 504, 507 (1984), when it stated that "[a] plea bargain standing alone is without constitutional significance; in itself *it is a mere executory agreement* which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." (Emphasis added.) Contrary to the Government's arguments, nothing in the Supreme Court's later opinion in *Puckett* calls this language from *Mabry* into question. *See* Reply at 9. Although the Government cites to a footnote in *Puckett* disavowing "any aspect of the *Mabry*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |
|---|---|---|---|
| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 4 of 6 |

The Government also argues that *Savage*'s language, specifically its reliance on certain Fifth Circuit authority that "neither the defendant nor the government is bound by a plea agreement until it is approved by the court," is no longer an accurate statement of the law. *See* Reply at 9 n.2; *see also Savage*, 978 F.2d at 1138 (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980)). According to the Government, *United States v. Hyde*, 520 U.S. 670 (1997), overrules this reasoning. The Court disagrees. Although *Hyde* required a defendant to show a "fair and just reason" to withdraw a plea, it was in the context of a guilty plea *that had been accepted*. The district court had deferred decision on whether to accept the plea agreement after taking the guilty plea. *Id.* at 671; *see also* Fed. R. Crim P. 11(c)(3)(A) (allowing a court to accept a plea but defer a decision on whether to accept a binding plea agreement for certain types of pleas until after the court reviewed the presentence report). The opinion distinguishes between the acceptance of a guilty plea and the acceptance of a plea agreement—a distinction that is beside the point here.

Post-*Hyde*, the Ninth Circuit has affirmed the rule that parties are not bound by a plea agreement until the court accepts the plea. *See United States v. Alvarez-Tautimez*, 160 F.3d 573, 576 (9th Cir. 1998) (holding the defendant "had the absolute right to withdraw his plea before it was accepted by the district court" and that *Washman*'s holding on this point "has not been undercut by" *Hyde*); *United States v. Fernandez*, 65 F. App'x 144, 146 (9th Cir. 2003). In *Fernandez*, the Court reasoned as follows:

> The District Court properly considered whether an enforceable plea agreement existed and whether Fernandez detrimentally relied on a governmental plea offer. *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992). Fernandez's reliance on *United States v. Hyde*, 520 U.S. 670, 670–73[](1997), is misplaced. *Hyde* dealt with when a plea of guilty could be withdrawn from the Court, it did not change the rule that a plea agreement could be withdrawn by either party before being submitted to and accepted by the Court. *Hyde*, 520 U.S. at 670–73. The District Court did not clearly err in concluding that no enforceable plea agreement existed because a signed agreement had not been submitted to and accepted by the Court. . . .

65 F. App'x at 146. As such, the law in the Ninth Circuit is clear: until the Court accepts a plea, the plea agreement does not bind the parties, and Puig is not bound by the terms of the Agreement here, including his Rule 410 waiver and acknowledgment that the factual basis of the plea could be introduced as evidence if he did not plead guilty.

---

dictum that contradicts our holding today" (556 U.S. at 138 n.1), this footnote does not concern the "executory agreement" discussion in *Puckett* cited above. *See Mabry*, 467 U.S. at 509. *Puckett* was concerned primarily with the suggestion that the prosecutor's breach of a promise in a plea agreement renders the plea unknowing or involuntary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 5 of 6 |
|---|---|---|---|

The Government alternatively argues that the Court is bound by the law of the case to its previous ruling that Puig breached the Plea Agreement. Reply at 5. In the briefing on the Government's motion to find a breach of the Agreement, neither side alerted the Court to the case law discussed *supra*. Rather, the Government argued that it should be relieved from its obligations under the Agreement because Puig failed to plead guilty [Doc. # 33], and Puig responded that based on contract law principles, the Government had suffered no injury and could not claim breach of the Agreement. [Doc. # 45.] Puig also argued that the Government's requested relief was unspecified, overbroad, and not ripe. *Id.* The Court found that Puig breached the Agreement by failing to plead guilty, so that the Government was relieved of its obligation not to prosecute Puig for obstruction of justice. [Doc. # 51.] Implicit in this ruling was a finding that the parties were bound by their promises in the Agreement—a finding that was erroneous under the clear and binding authority cited above. The law of the case does not apply where a decision is clearly erroneous and its enforcement would work a manifest injustice. *Grand Canyon Trust v. Provencio*, 26 F.4th 815, 821 (9th Cir. 2022). Moreover, the Court is always free to correct its own errors of law. Having now been apprised of the applicable case law, the Court corrects its prior order insofar as it relieved the Government of its obligations on the basis of Puig's purported breach—the Government is still relieved of its obligations under the Agreement, but on the ground that the Agreement is unenforceable given that the Court had not yet accepted Puig's plea.

Finally, the Government argues that Puig's plea agreement includes language that Puig specifically agreed to be bound by the Agreement upon signing. Reply at 10. But neither the Government nor the Court has located any Ninth Circuit authority holding that Puig is bound by his Rule 410 waiver even if his plea is not accepted by the Court. The Government's argument is contrary to the rule in this Circuit (as set forth above) that plea agreements are "implicitly conditioned on court approval" (*see United States v. Alvarado-Arriola*, 742 F.2d 1143, 1145 (9th Cir. 1984)) and are not binding on the parties until such approval. *See Savage*, 978 F.2d at 1138. *Cf. United States v. Floyd*, 1 F.3d 867, 870–71 (9th Cir. 1993) (Where parties may have intended to modify a plea agreement after acceptance, but no Rule 11 hearing was held regarding the modification, the defendant was "deprived of the safeguards Rule 11 was enacted to impose" with respect to the modification); *Washman*, 66 F.3d at 212 & n.5 (explaining that a plea agreement is not binding until it is accepted by the Court and that "[i]ncluded in the promises [the defendant] was free to reject was his waiver of the right to appeal.").

Moreover, even if the inclusion of language purporting to render the Agreement effective upon signature could transform the executory nature of the Agreement, making some portions of the Agreement immediately enforceable, that language would need to be knowing, voluntary, clear and unambiguous. *See United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016). Paragraph 22 of the Agreement, which includes the Rule 410 waiver, refers to the Court's finding of a "knowing breach." The Agreement does not specifically state that Defendant gives up his right to argue against admission of the factual basis even if the Court does not accept the plea and notwithstanding the general rule that there are no binding obligations that can be breached until the Court accepts the plea.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 6 of 6 |
|---|---|---|---|

In light of the authority cited above, the Court is not convinced that an agreement to be bound at the time of the signing of the agreement has any more force than the remainder of the agreement, until the plea has been accepted. Further, the Court is not inclined to enforce language in the Agreement that effectively subverts established binding case law.

### III.
### CONCLUSION

The motion to admit the factual basis is **DENIED**. [Doc. # 110.] The order finding a breach of the plea agreement is hereby **AMENDED** to reflect that the Agreement was not breached, but was unenforceable for the reasons stated herein, such that the Government was relieved of its obligations under that Agreement. [Doc # 51.]

**IT IS SO ORDERED.**