E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0698/2426
        Facsimile: (213) 894-6269/0141
        E-mail:    jeff.mitchell@usdoj.gov
                   daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>YASIEL PUIG VALDES,<br><br>      Defendant. | No. CR 22-394(A)-DMG<br><br>EX PARTE APPLICATION FOR MODIFIED<br>PROTECTIVE ORDER REGARDING<br>DISCOVERY<br><br>PROPOSED MODIFIED PROTECTIVE<br>ORDER FILED SEPARATELY |

        Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Jeff Mitchell and
Dan Boyle, for the reasons set forth below, hereby moves this Court
Ex Parte requesting that the Court modify and amend the protective
order in this action (ECF 44, the "Protective Order") pursuant to
Federal Rule of Criminal Procedure Rule 16(d)(1), in the form
accompanying this application.

Introduction and Grounds for Protective Order

1.    On December 6, 2022, in an effort to expedite discovery, the government proposed to produce all discovery in this matter pursuant to a protective order.  Defendant opposed this proposal, and requested prompt production of as much discovery as the government could produce without a protective order in place. (Exhibit A.)  The government acceded to defendant's request and began producing limited discovery without a protective order in place.

2.    The parties were unable to agree on the breadth of a proposed protective order, and the government filed an <u>ex parte</u> application for a protective order.  The government's application incorporated many of defendant's requests, including allowing defendant's personal agents and personal attorneys access to the confidential discovery.  (ECF 35.)

3.    On December 21, 2022, the Court issued the Protective Order, which directed that only discovery in certain narrowly-defined categories could be designated as confidential and subject to the Protective Order.  (ECF 44.)  The Court's Protective Order allowed defendant's personal agents and personal attorneys access to the confidential discovery.  (<u>Id.</u>)

4.    The Protective Order did not allow the government to designate as confidential the names of clients of Wayne Nix's sports betting business.

5.    As a result, the government produced to defendant documents including law enforcement reports identifying the names of Nix's gambling clients, certain of whom were high-profile athletes

and celebrities.  With one exception,[1] none of these clients have been charged for any conduct relating to their dealings with Nix, and the government has not publicly disclosed their identities.

6.  On February 10, 2023, defendant filed a discovery motion alleging selective prosecution.  (ECF 59.)  In his motion, defendant identified two of Nix's high-profile gambling clients as the "Prominent Black Athlete" and the "Black Manager of a prominent Black Athlete."  (Id. at 4-5.)  Defendant noted that the Protective Order did not apply to these two individuals:

> Notably, there were only a handful of interview reports that the government did not produce under seal, and the unprotected reports include the reports of the interview of Puig, the Black athlete (who is a public figure), and the Black manager discussed below. Even post-indictment, the Black men apparently are not worthy of the same level of respect as the non-Black interviewees. Nevertheless, the defense has provided them to the Court under seal with the protected interview reports. (Id. at 4 n.2)

7.  On April 10, 2023, the Court denied defendant's selective prosecution motion.  (ECF 106.)

8.  On November 28, 2023, the government received an email from a reporter at the Washington Post who stated that he had reviewed law enforcement reports from the Nix investigation, and he believed that, based on these reports, he knew the identities of the two individuals referenced above in defendant's selective prosecution motion.  The reporter indicated that he intended to

_____

[1] Nix's business manager, who was also an occasional gambling client of Nix's, has pled guilty to an information in Case No. 2:23-cr-00284-DMG charging him with one count of violating 18 U.S.C. § 1001 (false statements).

publish a story and publicly reveal these individuals' identities and requested comment from the government. (Exhibit B.)

9.   For these reasons, the government believes it is appropriate to modify and expand the Protective Order to permit the retroactive designation of the identities of Nix's clients, and associated identifying information, as confidential.  The government also seeks to limit access to the confidential information to defendant and the defense team and exclude access to defendant's personal agents and personal attorneys.

10.   To be clear, the government is not seeking to prohibit or otherwise enjoin any reporting about this case through the proposed modified protective order. However, pursuant to both the Justice Manual and binding Ninth Circuit precedent, the government is obligated to avoid accusing individuals of wrongdoing who have not been charged by the Grand Jury. See, e.g, United States v. Chadwick, 556 F.2d 450, 450 (9th Cir. 1977) (holding that identifying uncharged participants in an illegal gambling business in pleadings "was beyond the authority of the grand jury and a denial of due process" and expunging uncharged individuals names from pleadings). While the government does not know how law enforcement reports identifying Nix's clients ended up in the hands of members of the press, the functional effect is the same as if these individuals were named in a pleading despite not having been charged with any offense, and they should not be tried in the court of public opinion.  While the government cannot – and does not seek to – stop the Washington Post from publicly revealing the identities of these individuals, the government's application is intended to prevent further dissemination of the identities of other Nix clients.

Because of the prominence of some of these clients, and because these individuals have not been charged with any offence and thus cannot defend themselves in court, these individuals may suffer adverse reputational and economic consequences if their identities are revealed.

11. The government requested defendant's position on this application, and defense counsel advised that defendant opposes the instant application to modify the Protective Order. Defense counsel stated that they believe the government is seeking to modify the protective order because they believe the forthcoming article will be critical of the government's prosecution of defendant. Defense counsel stated that they believe "[t]he government apparently has no issue with media attention in this case, unless it is critical of the government."[2]

12. The government disagrees with defendant's position, and has asked that defendant file a full opposition.

Proposed Modifications to the Protective Order

13. The government proposes the following modified definition section in the Protective Order (ECF 44, ¶ 4), with modifications in bolded and underlined text:

a. As used herein, "PII Materials" includes any information that can be used to identify a person, including a name, address, date of birth, Social Security number, driver's license number, telephone number, account number, email address, or personal identification number.

_____

[2] To be clear, the government has no knowledge of whether or not the Washington Post's reporting will be critical of the government beyond the information disclosed in Exhibit B.

b.    "Confidential Information" refers to any document or information containing PII Materials; proprietary or confidential business and financial information of third-parties; the identity of cooperating individuals; **the identity of all uncharged clients or associates of Wayne Nix**; wiretap material; or information involving nonpublic criminal, civil, and regulatory investigations that the government produces to the defense pursuant to this Protective Order and any copies thereof.

c.    "Defense Team" includes (1) defendant's counsel of record ("defense counsel"); (2) other attorneys at defense counsel's law firm who may be consulted regarding case strategy in this case; (3) defense investigators who are assisting defense counsel with this case or other consultants retained by the defense team; (4) retained experts or potential experts; and (5) paralegals, legal assistants, and other support staff to defense counsel who are providing assistance on this case.  The Defense Team does not include defendant **or his sports agent, personal agents, or personal attorneys**, defendant's family members, or any other associates of defendant.

14.  The government proposes the following modified terms to the Protective Order (ECF 44, ¶ 4(d-r)):

a.    The government is authorized to retroactively label previously produced discovery as confidential and subject to the Protective Order. Any retroactively designated Confidential Information shall be treated in accordance with the terms of this order.

b.    If the government retroactively labels previously produced discovery as confidential and subject to the Protective

Order, defendant, his personal agents, and personal attorneys shall return all copies of such retroactively-designated discovery to the Defense Team and identify to the Defense Team all individuals who had access to the Confidential Information.

c.    The government is authorized to provide defense counsel with Confidential Information marked with the following legend: "CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER."  Except for previously produced discovery, each document containing Confidential Information shall be marked with this legend.  For digital materials/ESI, the government may put that legend on the digital medium (such as DVD or hard drive) or simply label a digital folder on the digital medium to cover the content of that digital folder.  The government may also redact any PII contained in the production of Confidential Information.

d.    If defendant objects to a designation that material contains Confidential Information, the parties shall meet and confer.  In addition to potentially de-designating the materials, the government shall consider whether the material can be produced in a redacted form such that it would not need to be considered Confidential. If the parties cannot reach an agreement regarding defendant's objection, defendant may apply to the Court to have the designation removed.

e.    Defendant and the Defense Team shall use the Confidential Information solely to prepare for any pretrial motions, plea negotiations, trial, and sentencing hearing in this case, as well as any appellate and post-conviction proceedings related to this case.

f.    The Defense Team shall not permit anyone other than the Defense Team to have possession of Confidential Information, including defendant, while outside the presence of the Defense Team.

g.    At no time, under no circumstance, will any Confidential Information be left in the possession, custody, or control of defendant and/or his sports agent, personal agents, or personal attorneys, regardless of defendant's custody status.

h.    Defendant may review Confidential Information only in the presence of a member of the Defense Team, who shall ensure that defendant and his personal Agents or attorneys are never left alone with any Confidential Information. At the conclusion of any meeting with defendant at which defendant is permitted to view Confidential Information, defendant must return any Confidential Information to the Defense Team, and a member of the Defense Team present shall take all such materials with him or her. Defendant may not take any Confidential Information out of the room in which defendant is meeting with the Defense Team.

i.    Defendant may see and review Confidential Information as permitted by this Protective Order, but defendant may not copy, keep, maintain, or otherwise possess any Confidential Information in this case at any time. Defendant also may not write down or memorialize any data or information contained in the Confidential Information.

j.    The Defense Team may review Confidential Information with a witness or potential witness in this case, including defendant.  A member of the Defense Team must be present if Confidential Information is being shown to a witness or potential witness.  Before being shown any portion of Confidential

Information, however, any witness or potential witness must be informed of, and agree in writing to be bound by, the requirements of the Protective Order.  No member of the Defense Team shall permit a witness or potential witness to retain Confidential Information or any notes generated from Confidential Information.

k.   The Defense Team shall maintain Confidential Information safely and securely, and shall exercise reasonable care in ensuring the confidentiality of those materials by (1) not permitting anyone other than members of the Defense Team, defendant, witnesses, and potential witnesses, as restricted above, to see Confidential Information; (2) not divulging to anyone other than members of the Defense Team, defendant, witnesses, and potential witnesses, the contents of Confidential Information; and (3) not permitting Confidential Information to be outside the Defense Team's offices, homes, vehicles, or personal presence.

l.   To the extent that defendant, the Defense Team, witnesses, or potential witnesses create notes that contain, in whole or in part, Confidential Information, or to the extent that copies are made for authorized use by members of the Defense Team, such notes, copies, or reproductions become Confidential Information subject to the Protective Order and must be handled in accordance with the terms of the Protective Order.

m.   The Defense Team shall use Confidential Information only for the litigation of this matter and for no other purpose. Litigation of this matter includes any appeal filed by defendant and any motion filed by defendant pursuant to 28 U.S.C. § 2255.  In the event that a party needs to file Confidential Information with the Court or divulge the contents of Confidential Information in court

filings, the filing should be made under seal in accordance with the Court's Criminal Motion and Trial Order [Doc. # 28 at 2] and Judge Gee's specific procedures for sealed filings in criminal cases. If the Court rejects the request to file such information under seal, the party seeking to file such information publicly shall provide advance written notice to the other party to afford such party an opportunity to object or otherwise respond to such intention. If the other party does not object to the proposed filing, the party seeking to file such information shall redact any Confidential Information and make all reasonable attempts to limit the divulging of Confidential Information.

n.   Any Confidential Information inadvertently produced in the course of discovery prior to entry of the Protective Order shall be subject to the terms of the Protective Order. If Confidential Information was inadvertently produced prior to entry of the Protective Order without being marked "CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER," the government shall reproduce the material with the correct designation and notify defense counsel of the error. The Defense Team shall take immediate steps to destroy the unmarked material, including any copies.

o.   Confidential Information shall not be used by the defendant, or the Defense Team, in any way, in any other matter, absent an order by this Court. All materials designated subject to the Protective Order maintained in the Defense Team's files shall remain subject to the Protective Order unless and until such order is modified by this Court. Within 30 days of the conclusion of appellate and post-conviction proceedings, defense counsel shall return all Confidential Information, certify that such materials

have been destroyed, or certify that such materials are being kept pursuant to the California Business and Professions Code and the California Rules of Professional Conduct.

p.   In the event that there is a substitution of counsel prior to when such documents must be returned, new defense counsel must be informed of, and agree in writing to be bound by, the requirements of the Protective Order before the undersigned defense counsel transfers any Confidential Information to the new defense counsel. New defense counsel's written agreement to be bound by the terms of the Protective Order must be returned to the Assistant U.S. Attorney assigned to the case. New defense counsel then will become the Defense Team's custodian of materials designated subject to the Protective Order and shall then become responsible, upon the conclusion of appellate and post-conviction proceedings, for returning to the government, certifying the destruction of, or retaining pursuant to the California Business and Professions Code and the California Rules of Professional Conduct all Confidential Information.

q.   Defense counsel shall advise defendant, and all members of the Defense Team of their obligations under the Protective Order, including the terms of this modified Protective Order, and ensure their agreement to follow the Protective Order, prior to providing defendant, and members of the Defense Team with access to any materials subject to the Protective Order.

//

//

//

15. Accordingly, the government requests that the Court enter a protective order in the form submitted herewith.


DATED: November 29, 2023

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


_/S/ Jeff Mitchell_
JEFF MITCHELL
DAN G. BOYLE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

EXHIBIT A

**Mitchell, Jeff (USACAC) 5**

| | |
|---|---|
| **From:** | Keri Axel <kaxel@waymakerlaw.com> |
| **Sent:** | Wednesday, December 7, 2022 2:52 PM |
| **To:** | Mitchell, Jeff (USACAC) 5; Boyle, Daniel (USACAC) |
| **Cc:** | Jose Nuño |
| **Subject:** | [EXTERNAL] RE: Stip re First Trial Date.pdf |

Thanks, Jeff.  This is a helpful summary.  We are going to review the protective order in detail in light of these categories.  I think we are going to need as much of what we can get without a protective order (and we would need appropriate redactions for trial in any event).  So I would ask you to start working on the redactions for the information that you have indicated can be redacted.

Can we schedule a time to meet and confer tomorrow or Friday as to the other categories of things and the form of the proposed protective order?  I'm mostly available before noon both days.

Thank you.  Best, Keri

Keri Curtis Axel
Waymaker LLP
m +1 213 314 5284

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message was sent from Waymaker LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**From:** Mitchell, Jeff (USACAC) 5 <Jeff.Mitchell@usdoj.gov>
**Sent:** Tuesday, December 6, 2022 10:15 AM
**To:** Keri Axel <kaxel@waymakerlaw.com>; Boyle, Daniel (USACAC) <Daniel.Boyle2@usdoj.gov>
**Cc:** Jose Nuño <jnuno@waymakerlaw.com>
**Subject:** RE: Stip re First Trial Date.pdf

Hi Keri.  As I indicated in my November 29th email, we proposed producing everything under the protective order in order to expedite the discovery to you.  Because of the unusual procedural history here, we want to find a way to get the discovery to you as quickly as possible.  I believe the timing of the discovery here is particularly important because you've indicated you may want a February trial date, and we're now moving in the holiday season and most of our staff typically take off a lot of time in December.  We assumed the protective order was acceptable to you when you didn't reply and raise any objections.  If you prefer, we're happy to provide some of the discovery without a protective order, but it's going to require significant time to redact PII, cooperators, and case numbers.  Further, we will not produce some of the discovery without a protective order, e.g., computer forensics, sensitive third party records, materials related to ongoing investigations, etc.

Below is a general summary of the discovery and our tentative position on production:

- 
- 
- 
- 
-

EXHIBIT B

**Mitchell, Jeff (USACAC) 5**

| | |
|---|---|
| **From:** | ▓▓▓▓▓▓ < ▓▓▓▓▓▓▓▓▓▓▓▓ > |
| **Sent:** | Tuesday, November 28, 2023 9:21 AM |
| **To:** | Mitchell, Jeff (USACAC) 5 |
| **Subject:** | [EXTERNAL] Washington Post story - ▓▓▓▓▓▓ / ▓▓▓▓▓ |

Mr. Mitchell,

I'm a reporter for the Washington Post. I've been working on a couple of stories involving the Wayne Nix gambling enterprise and related cases.

The most immediate story will reveal, using law enforcement records that I reviewed, that ▓▓▓▓▓▓ admitted betting on NBA games. It will also show that ▓▓▓▓▓▓ was an admitted client of Nix's.

The articles will link those names to your public filing in Yasiel Puig's case, in which you responded to Puig's attorneys' claims that he was the victim of selective prosecution because he is Black.

Those filings were notable in that you stated that ▓▓▓▓ and ▓▓▓▓ made false statements. In ▓▓▓▓'s case, you wrote that he was "in fact not being truthful" during an interview where he was admonished about the 1001 interview and asked multiple times whether he was telling the truth. Information about the identities of these interview subjects raises questions about decision-making by prosecutors as to who should be charged in this case.

In your filing, you also compare Puig's interview with that of "Player R," writing that among the differences was that Player R "did not affirmatively disregard" the 1001 admonition, which Puig did by interrupting the agent reading it to him and telling him that he was wasting Puig's time. How much did Puig doing that play a role in him ultimately being charged?

I'd need a response by noon tomorrow, and I am available at the number below if you would like to speak.

▓▓▓▓▓▓▓▓

Washington Post
▓▓▓▓▓▓