Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
Riley P. Smith (Bar No. 337598)
  rsmith@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

*Attorneys for Defendant*
*Yasiel Puig Valdes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-394-DMG |
| Plaintiff, | **YASIEL PUIG'S OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION FOR MODIFIED PROTECTIVE ORDER** |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

## I. INTRODUCTION

The government moves to amend the Protective Order entered in this case despite the fact that the order has not been violated.  (*See* Govt App. (Dkt. 172).)  The amendments it requests purport to now allow it to claw back materials it never claimed were protected.  This is simply a superfluous face-saving exercise by the government, and the *ex-parte* application should be summarily denied.

The protective order is based on the government's standard form which, at the government's urging, the Court adopted.  The government unilaterally made its designations under that order, which to date the defense has not opposed.  The defense has and will continue to comply with it.  The government now seeks to modify the protective order to essentially cover all discovery based on the fact that there are two recent Washington Post articles, which the defense did not solicit, that call the government's prosecutorial decision-making in this case into question.  But the government has issued multiple press releases in this case, AUSA Jeff Mitchell has personally posted to social media concerning this case, and there has already been extensive media coverage.  The government apparently has no issue with media attention in this case, unless it is critical of the government's prosecution.

In any event, the government's application should be denied.  There are strong First Amendment protections that would be implicated by the blanket protective order the government now seeks, and the government already has tools at its disposal to retroactively mark prior produced documents as "Confidential."  It can do so this moment without its requested modifications.  The purported need to amend the protective order is simply a thinly veiled pretense to remove the ability for members of Puig's team to review confidential documents on the eve of trial.  The Court should reject the government's transparent attempt to control the narrative of this case in the public and hinder Puig's trial preparation.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In December 2022, the government proposed that the parties stipulate to a protective order to expedite discovery. The government drafted its proposed protective order and the parties met and conferred over its terms, including the ability for Puig's consultants and agents to have access to certain documents produced in this case. (*See* Declaration of Jose R. Nuño ("Nuño Decl.") ¶ 2, Ex. A.) The government stated that it had "no objection to modifying the protective order to allow access to the consultants, agent, and personal attorneys" but insisted that the government be allowed to designate large swaths of documents as "Confidential" requiring any filing containing these documents to be made under seal. (*See id*.) Thus, on December 15, 2022, the government moved *ex-parte* for the entry of its drafted protective order where the only disputed issue was what procedure should be used when filings are made that reference or contain material that one party has designated as confidential. (*See* Dkt. 35, 40, 42, 43.) On December 21, 2022, this Court entered the government's proposed protective order as the operative order in this case (the "Protective Order"). (*See* Protective Order ("P.O.") (Dkt. 44).)

Under the terms of the Protective Order, the government is authorized to produce confidential documents and materials marked with the legend: "CONFIDENTIAL INFORMATION -- CONTENTS SUBJECT TO PROTECTIVE ORDER." (*See* P.O. ¶ 4.d.) To that end, pursuant to the Protective Order, "'Confidential Information' refers to any document or information containing PII Materials; proprietary or confidential information business and financial information of third-parties … that the government produces to the defense pursuant to this Protective Order." (*Id.* ¶ 4.b.) Further, the Protective Order defines "PII Materials" as "any information that can be used to identify a person, including a name, date of birth, Social Security number, driver's license number, telephone number, account number, email address, or personal identification number." (*Id.* ¶ 4.a.)

The Protective Order also provides the ability to retroactively designate material as Confidential. If at any time "Confidential Information [was] inadvertently produced prior to entry of the Protective Order without being marked [CONFIDENTIAL]", the order instructs that the government "shall reproduce the material with the correct designation and notify defense counsel of the error" at which point the defense would destroy the unmarked material. (*Id.* ¶ 4.o.) Finally, under the terms of the Protective Order, Puig, nor his personal Agents or attorneys are allowed to review, or possess Confidential Information outside the presence of the Defense Team. (*Id.* ¶ 4.g-i.)

On December 16, 2021, prior to entry of the Protective Order, the government made its initial production of documents in this case. (Nuño Decl. ¶ 3.) This production included a small batch of Reports of Interviews ("ROI") of non-targets including a confidential source(s); Yasiel Puig; a prominent black manager; a former NBA player; and an executive. (*Id.*) Other than the "confidential source" interviews, the ROIs for the other individuals, including Puig, identified the interviewees by name. (*Id.*) The documents also contained various redactions. (*Id.*) Presumably then, the government had given careful thought to what it believed to be Confidential and not for the public record. The government later made subsequent productions containing the vast majority of the ROIs after entry of the Protective Order. (*Id.* at ¶ 4.)

On November 28, 2023, a Washington Post author emailed the government stating that the post would be releasing an article regarding the Wayne Nix gambling enterprise that would identify two of Nix's gambling clients. (*See* Govt App., Ex. B.) The author specifically stated that the story would:

> link those names to [the government's] public filing in Yasiel Puig's case, in which you responded to Puig's attorneys' claims that he was the victim of selective prosecution because he is Black. Those filings were notable in that you stated that [redacted] and [redacted] made false statements… Information

about the identities of these interview subjects raises questions about decision-making by prosecutors as to who should be charged in the case.

(*Id.*)[1]  That same day, the government emailed the defense regarding its intent to move *ex-parte* to modify the protective order.  (Nuño Decl. ¶ 5, Ex. B.)  The government has now filed its *ex-parte* to not only retroactively designate all documents as "Confidential" but also to exclude Puig's personal agents and attorneys from access to confidential information.  (*See* Govt App. ¶ 9.)

## III.   ARGUMENT

### A.   The Government's Proposed Modifications Are Unnecessary

Although there has been no violation of the Protective Order, and the order permits the government the remedy of retroactively designating materials as Confidential, the government seeks to save face by amending the order.  The amendments are unnecessary, confusing, and the government's purported justification for the amendments fail.

#### 1.   <u>The Government's Proposed Changes Are Not Needed to Accomplish Its Stated Purpose</u>

The government claims that the Protective Order *that it drafted* "did not allow the government to designate as confidential the names of clients of Wayne Nix's sports betting business." (Govt App. ¶ 4.)  This is just plain false.  The plain terms of the Protective Order did permit the government to designate as confidential any names it wished.

The government's proposed changes to the Protective Order thus purport to fix a problem that does not exist, and do not allow the government to do anything more than it is already allowed to do.  Indeed, the current Protective Order already

---

[1] The email also referred to Puig's interruption of the agent reading him the 18 U.S.C. 1001 admonition during Puig's interview and asked how much Puig's actions played a role in Puig ultimately being charged.  (*See id.*)

permits the government to designate as "Confidential Information" "*any document or information containing PII Materials*; proprietary or confidential information business and financial information… that the government produces to the defense." (*Id.* ¶ 4.b (emphasis added).)  In short, the "names of clients of Wayne Nix's sports betting business" – *i.e.*, PII Materials – would be Confidential Information had the government simply labeled the documents containing these names as Confidential pursuant to the Protective Order.

To that end, if at any point the government thought that there were documents containing Confidential Information that it inadvertently produced prior to the entry of the Protective Order without being marked "Confidential", it simply needed to "reproduce the material with the correct designation and notify defense counsel of the error."  (*See* P.O. ¶ 4.o.)  It can still do so today without any amendment to the Protective Order by simply reproducing the documents with the appropriate confidentiality markings.

There is no dispute that the government was aware that certain ROIs and documents were produced to the defense that were not marked as "Confidential", including the "names of clients of Nix's sports betting business."  As the government acknowledges in its Application, the defense previously pointed out that the ROIs of certain of Nix's clients were produced in an unprotected format but the defense filed them under seal anyway.  (*See* Govt App. ¶ 6; Nuño Declaration ISO MTC (Dkt. 67) ¶¶ 9-10.)  Had the government actually thought that the "names of Nix's gambling clients" should be treated as Confidential Information, it could have then taken the steps in paragraph 4.o of the Protective Order and clawed back those documents and reproduced them as Confidential.  It did not act then because its concern was not to "prevent further dissemination of the identities of other Nix clients."  (Govt App. ¶ 10.)  In any event, it can still now do so under the current Protective Order.

### 2. The Government's Claimed Excuse That it Cannot Accuse Non-Charged Individuals of Wrongdoing is a Red Herring

The government claims that the Protective Order must be amended because it is "obligated to avoid accusing individuals of wrongdoing who have not been charged by the Grand Jury." (Govt App. ¶ 10.) The government cites no policy, but only a two paragraph case, *United States v. Chadwick*, 556 F.2d 450, 450 (9th Cir. 1977), in which the government improperly named an unindicted person for conducting a gambling business. This is consistent with the government policy of not naming unindicted co-conspirators in an indictment, due to possible violations of due process. *See* Justice Manual 9-11.130 - Limitation on Naming Persons as Unindicted Co-Conspirators.

But individuals referenced in the ROIs only as witnesses in that they placed bets with Nix do not implicate this concern. Betting in such an organization is not a federal crime. *See* 18 U.S.C. § 1955. These are public figures, and witnesses.[2] They are not required to be anonymous and, indeed, there are First Amendment protections implicated whenever the government seeks to throw an entire blanket over a case. *See e.g.*, *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982) ("[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process"); *United States v. Carpenter*, 923

---

[2] To the extent the government has accused these individuals of doing something wrong, that is a crisis of its own making. In its MTC filing, Puig simply argued that the black basketball player and manager were treated similarly to Puig in comparison to the government's treatment of non-black, non-target witnesses. In response, the *government*, not Puig, suggested that these individuals lied. As noted in the Washington Post author's email to AUSA Mitchell, the government's "filings were notable because you stated that [redacted] and [redacted] made false statements. In [redacted]'s case, you wrote that he was 'in fact not being truthful' during an interview… Information about the identities of these interview subjects raises questions about decision-making by prosecutors as to who should be charged in this case." (Govt App. Ex. B.)

F.3d 1172, 1178 (9th Cir. 2019) ("The right of access to criminal trials is generally protected by both the First Amendment and the common law.").

Indeed, the standard in the federal civil and criminal rules is that individual's names are generally not shielded from public disclosure in filings. Unless otherwise ordered, in a filing made with the court, only "an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number" (or the home address of an individual in the case of a criminal filing) must be redacted or partially redacted. *See* Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1. No such rules exist for names of non-minors. The Court should not let the government in this criminal case have a different standards than everyone else.

B. **The Government's Requested Amendments Are Overbroad**

Although the government already has the ability to retroactively designate PII as Confidential, the proposed amendment to specifically identify "the identity of all uncharged clients or associates of Wayne Nix" as "Confidential" is overbroad and vague. As noted above, the principles of open courts in criminal proceedings are strong and well-established.

To that end, "criminal proceedings and documents may be closed to the public without violating the First Amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. Of Or.*, 920 F.2d 1462, 1467 (9th Cir. 1990). In *United States v. Kott*, 380 F. Supp. 2d 1122, 1124 (C.D. Cal. 2004), the court unsealed a search warrant, its application, and the indictment in a case, ruling that these documents were "of the type traditionally accessible to the public." In rejecting the argument that access to these documents is defeated by the privacy rights of defendant and third-parties, the court noted that, in contrast to a bill

of particulars that would disclose names of persons that the government contends are guilty of crimes, the search warrant would contain detailed explanations of the suspected involvement of all persons named in the affidavit. *Id.* at 1125. Here too, the names of "Nix's gambling clients" is insufficient to warrant blanket, *prima facie* protection, and the government retains tools at its disposal to ensure that documents it thinks are confidential remain as such.

### C.  The Government's Proposed Changes to the Order Would Significantly Hamper Puig's Trial Preparation

Finally, the government seeks to impair Puig's defense by cutting access to confidential materials to important members of his team. Simply put, Puig cannot prepare for trial without the assistance of his sports agent and personal attorneys. Puig speaks limited English and cannot understand complicated legal subjects without assistance of others who understand the U.S. legal system, including his personal agents and attorneys. The ability for Puig to interpret and contextualize information through these intermediaries is imperative. The government's proposed modifications to the Protective Order attempt to further hamper the defense by disallowing Puig's personal agents and attorneys from reviewing confidential material. This despite the fact that the government has marked nearly all of its document productions as Confidential, and the Protective Order already mandates that neither Puig, nor his personal agents or attorneys are allowed to review, or possess Confidential Information outside the presence of the Defense Team. (P.O. ¶ 4.g-i.)

To be clear, the government's proposed changes are based on no violation of the Protective Order and the government sets forth no allegations thereof. The proposed changes are unnecessary and unfounded. If the Court is considering effectively sanctioning the defense team in this manner proposed by the government, the defense asks that the Court set this matter for oral argument.

## IV. CONCLUSION

For the foregoing reasons, Mr. Puig respectfully requests that this Court deny the government's *ex-parte* application for a modified protective order.

DATED: December 6, 2023            WAYMAKER LLP

By: /s/ Keri Curtis Axel
KERI CURTIS AXEL
JOSE R. NUÑO
RILEY P. SMITH
*Attorneys for Defendant Yasiel Puig Valdes*