BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
MICHAEL J. MORSE (Cal. Bar No. 291763)
LAURA A. ALEXANDER (Cal. Bar No. 313212)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0304/7367/1019
    Facsimile: (213) 894-0141
    Email:    juan.rodriguez@usdoj.gov
             michael.morse@usdoj.gov
             laura.alexander@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>        v.<br><br>YASIEL PUIG VALDES,<br><br>      Defendant. | No. 2:22-CR-394-DMG<br><br>GOVERNMENT'S MOTION _IN LIMINE_ NO. 3 TO PRECLUDE IMPROPER ARGUMENT REGARDING THE GOVERNMENT'S INVESTIGATION AND CHARGING DECISION<br><br>Hearing Date: October 22, 2025<br>Time:      11:00 a.m.<br>Location:  Courtroom of the<br>               Hon. Dolly M. Gee |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Juan M. Rodriguez, Michael J. Morse, and Laura A. Alexander, hereby files its motion in limine to preclude improper argument regarding the government's investigation and charging decision.

///

///

This motion in limine is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.  Defendant opposes this motion.

Dated: September 29, 2025          Respectfully submitted,

                                  BILAL A. ESSAYLI
                                  Acting United States Attorney

                                  JOSEPH T. MCNALLY
                                  Assistant United States Attorney
                                  Acting Chief, Criminal Division


                                  /s/ Laura A. Alexander
                                  _____
                                  JUAN M. RODRIGUEZ
                                  MICHAEL J. MORSE
                                  LAURA A. ALEXANDER
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3    In February 2023, approximately two months before Yasiel Puig

4    Valdes ("defendant") was set to proceed to trial in April 2023,

5    defendant filed a motion seeking discovery "to show that similarly

6    situated individuals of a different race and cultural background than

7    [defendant] were not prosecuted."  (Dkt. 59 at 1.)  Within that

8    motion, defendant alleged that the investigative team's pattern in

9    conducting interviews "was markedly different depending on whether

10    the individual being interviewed was Black or not Black," and

11    specifically alleged that defendant himself was interviewed,

12    investigated, and charged because of and in a manner consistent with

13    the investigative team's racial bias against him.  (<u>Id.</u>)  The Court

14    ultimately denied this motion, finding that defendant failed to "come

15    forward with some credible evidence of discriminatory intent and

16    effect," and that there was simply "no evidence to suggest that [18

17    U.S.C. § 1001] admonitions [in interviews] were given in anything but

18    a race-neutral manner."  (Dkt. 106 at 6-7.)

19    Notwithstanding the lack of any credible evidence to support his

20    racial-prejudice theory, defendant did not miss the opportunity to

21    hold a press conference outside of First Street Courthouse on

22    February 11, 2023 (before the Court's ruling on his motion), wherein

23    his attorneys claimed that "the government is biased against Puig"

24    and that there is a "systematic problem that unfairly sends more

25    people of color to prison with stiffer penalties than White people."[1]

26    Given the highly prejudicial nature of defendant's baseless

27    _____

28    [1] The press conference was reported on KCAL News. <u>See</u> https://www.youtube.com/watch?v=hJr9P_WXBlI.

allegations related to the investigative team's racial bias -- presented both to this Court and the public-at-large -- the government now seeks to exclude from trial all argument and testimony suggesting, in any way, that racial bias impacted the manner in which the government broadly investigated the illegal gambling operation led by Wayne Nix (the "Nix Gambling Business"), and the manner in which the government specifically investigated and/or charged defendant.[2] Such meritless arguments and/or lines of questioning would be lacking in foundation, irrelevant, and to the extent any probative value exists (it does not), such value would be substantially outweighed by the danger of unfair prejudice. Indeed, the only purpose of such argument and testimony would be to inflame the passions of the jury, and this Court should exercise its gatekeeping function to prevent any further attempts by defendant to taint the jury.

## II.  RELEVANT PROCEDURAL HISTORY[3]

On February 10, 2023, defendant filed a motion to compel discovery related to the government's alleged selective prosecution of him based on his race. (Dkt. 59.) Defendant specifically alleged that the government, throughout its investigation, "viewed Black men as untruthful and uncooperative," "berated and bullied" Black men (including defendant) in interviews, and refused to provide Black men

---

[2] The government attempted to meet-and-confer with defense counsel to determine whether defendant intended to make arguments or elicit testimony related to the government investigative team's alleged racial bias on cross-examination or in its case-in-chief. Defense counsel responded that they have not yet decided whether they will seek to offer such evidence at trial.

[3] The government hereby incorporates the factual background detailed in its Motion in Limine No. 1 to Admit Evidence Inextricably Intertwined with the Charged Conduct, or in the Alternative, Admit Evidence Under Federal Rule of Evidence 404(b), filed at Dkt. 205.

(including defendant) with sufficient time and information to refresh their recollections, as the government did with non-Black men. (Id. at 1, 7.) None of defendant's allegations, however, were supported by any evidence; to the contrary, evidence submitted by the government in support of its opposition to defendant's motion -- declarations, interview reports, and audio recordings -- demonstrated that the investigative team conducted its investigation of the Nix Gambling Business in an ethical and race-neutral manner. (See Dkt. 73-1 through 73-12).

Indeed, the evidence showed that the government conducted six target interviews and 27 non-target interviews in 2020 and 2021. (Dkt. 106 at 2-3.) The admonishments provided by the government to target and non-target individuals in these interviews did not evince racially disparate treatment of Black people. The six targets, none of whom are Black, have each entered guilty pleas to crimes other than making false statements or obstruction of justice. (Id. at 2.) According to former government counsel, AUSA Jeff Mitchell, most targets retained attorneys and were provided with proffer letters, which AUSA Mitchell reviewed with the targets. (Dkt. 73-1 at ¶¶ 4-5.) For each target proffer, AUSA Mitchell's standard practice was to discuss "the paragraph [] advis[ing] the target that [s/he could] be prosecuted for providing false statements." (Id. ¶ 5.)

The 27 non-target interviews proceeded in one of the following ways: (1) AUSA Mitchell advised the interviewee against making false statements and/or referenced or read the text of 18 U.S.C. § 1001; (2) a federal agent advised the interviewee in the same way; (3) the government provided the interviewee with Use Immunity, which contains a warning against giving false statements; or (4) no admonishment was

1   provided at all, because the interview was conducted by a field

2   office.  (Dkt. 106 at 2-3.)  In defendant's interview, AUSA Mitchell

3   advised the defendant against making false statements and read the

4   text of § 1001 to defendant.  (Dkt. 68 at 13; Dkt. 77 at 68.)  In

5   advising defendant this way, AUSA Mitchell advised defendant as just

6   he advised non-Black interviewees, e.g., Individual 6.  (Id.)  As

7   with many of the other interviews, AUSA Mitchell also provided

8   defendant with numerous opportunities to confer with his counsel, and

9   one specific opportunity, towards the end of the interview, to recant

10  his false statements.  (Dkt. 73-1 at ¶¶ 21-22.)  Defendant, however,

11  declined these opportunities and persisted in his lies.  (Id. ¶ 22.)

12      This Court ultimately denied defendant's motion, finding that

13  defendant failed to "come forward with some credible evidence of

14  discriminatory intent and effect," and that there was simply "no

15  evidence to suggest that the [18 U.S.C. § 1001] admonitions [provided

16  to defendant and others involved in the Nix Gambling Business] were

17  given in anything but a race-neutral manner."  (Dkt. 106 at 6-7.)

18  **III.  ARGUMENT**

19      Trial courts "have a duty to forestall or prevent" jury

20  nullification, including by preventing "impermissible" defense

21  questioning or argument.  United States v. Lynch, 903 F.3d 1061,

22  1079-80 (9th Cir. 2018) (citation omitted).  Any arguments and

23  questioning relating to defendant's race, defendant's co-

24  conspirators' races, and the investigative team's alleged racial bias

25  in prosecuting defendant and others involved in the Nix Gambling

26  Business, or similar issues, are baseless, irrelevant, and unfairly

27  prejudicial, and the Court should exclude them.

28

### A. Any Arguments or Testimony Related to the Investigative Team's Alleged Racial Bias Should Be Excluded as Baseless, Irrelevant and Unfairly Prejudicial

At the outset, any suggestion by defendant -- through jury addresses, cross-examination questioning, or his affirmative case, if he presents one -- that the government investigated and charged him because he is Black should be excluded as a meritless attempt to inflame the sensitivities of the jury. The issue of whether the investigative team's prosecution of defendant was racially motivated was extensively briefed for defendant's motion to compel production of selective prosecution, and defendant could not articulate -- in either his motion, reply, or supplemental briefing (see Dkts. 59, 61, 80, 81, and 99) - any credible evidence to substantiate this theory. Again, AUSA Mitchell advised defendant against making false statements in his January 27, 2022 interview, and read him the text of § 1001. He further provided defendant with several opportunities to communicate privately with his attorneys and clarify his statements. As the government demonstrated through evidence submitted in support of its opposition to defendant's motion, AUSA Mitchell's admonitions and treatment of defendant in his interview were consistent with his treatment of non-Black individuals interviewed throughout the course of the government's Nix Gambling Business investigation. This Court should accordingly prevent defendant from making any suggestion at trial that the investigative team was impacted by implicit or explicit racial prejudice; this is simply not true, not anchored to any admissible evidence, lacking in foundation, and highly prejudicial.

Further, because "irrelevant evidence is not admissible," the only evidence admissible at trial is that which relates to elements

1    of the charged crimes.  To prove defendant's guilt, the government

2    must prove the elements of making false statements, in violation of

3    18 U.S.C. § 1001(a)(2), and obstructing justice, in violation of

4    1503(a).  The only evidence admissible at trial is evidence that

5    relates to those elements and has a "tendency to make a fact more or

6    less probable."  Fed. R. Evid. 401.

7         Arguments and questioning related to the agents' subjective

8    motivations in investigating this case should be excluded as

9    irrelevant and prejudicial.  Indeed, agents' "subjective motivations

10   are irrelevant" even when assessing whether evidence should be

11   suppressed.  United States v. Taylor, 60 F.4th 1233, 1240 (9th Cir.

12   2023).  That principle applies with equal, if not greater, force at

13   trial.  And whatever defendant's opinion on the propriety or fairness

14   of the investigation leading to his charges, the Court has resolved

15   that issue by denying defendant's motion to compel discovery of

16   selective prosecution.

17        In addition, the Court may "exclude relevant evidence" if

18   whatever probative value is outweighed by a "danger" of "unfair

19   prejudice, confusing the issues, misleading the jury, undue delay,"

20   or "wasting time."  Fed. R. Evid. 403.  Courts have widely

21   recognized that accusations of racism -- when not directly related

22   to, for example, a defendant's motive or mental state -- are

23   "potentially inflammatory."  United States v. Tyrell, 840 F. App'x

24   617, 623 (2d Cir. 2021).  The Tyrell defendant sought to introduce

25   "racist tweets" from a police offer who maintained a twitter account,

26   "ObamaHater55."  Even though "numerous tweets revealed explicit

27   racial prejudice," the Second Circuit affirmed exclusion because the

28

officer's prejudice was not relevant to his testimony, which related only to facts corroborated by other evidence.  <u>Id.</u>

The same analysis favors excluding any arguments about the investigative team's alleged racial prejudice here.  To be clear, the investigative team proceeded with the investigation of the Nix Gambling Business in a race-neutral manner.  In his interview, defendant received a § 1001 admonition like many other non-Black interviewees.  He was also provided with the opportunity to clarify his statements, like many other non-Black interviewees, but remained steadfast in his lies.  Defendant's race was, and is, not at issue. The challenge to the propriety of the government's investigation with respect to the government's alleged racial prejudice was properly attempted through defendant's motion to compel production of selective prosecution -- which the Court has rejected.  Any further argument directed toward the jury is not relevant to any of the elements of charges under 18 U.S.C. §§ 1001(a)(2) or 1503(a).

That conclusion is consistent with decisions from courts across the country, which have excluded irrelevant racial arguments designed only to inflame the jury and stir emotions.  <u>See, e.g.,</u> <u>Yowan Yang v. ActioNet, Inc.,</u> No. 14-cv-792-AB (C.D. Cal. Feb. 19, 2016) (excluded "race-based comments"); <u>Clark v. Martinez,</u> 295 F.3d 809, 814 (8th Cir. 2002) (rejecting evidence of racial motivation because "hostile motive is not an element" of the relevant charges).  This Court should follow suit and exclude arguments and questioning related to the investigative team's alleged implicit and explicit racial biases under Rules 401 and 403.

**B.    Arguments and Questioning Suggesting that the Investigative
Team Prosecuted Defendant Because He Is Black Would Serve
Only an Improper Purpose: Nullification**

The only purpose for arguments and questioning related to the
investigative team's alleged racial prejudice then is to attempt to
"back door" a jury nullification defense.  <u>See</u> <u>Powell</u>, 955 F.2d at
1213 (holding that the defendant had no right to instruct the jury to
nullify itself); <u>see also</u> <u>United States v. Navarro-Vargas</u>, 408 F.3d
1184, 1198 (9th Cir. 2005) (noting that courts have "uniformly
rejected" requests for jury nullification instructions) (citing
cases).  Because this is a jury trial on defendant's guilt, not a
trial to relitigate defendant's motion to compel production of
selective prosecution, this Court should preclude defendant from
encouraging the jury to nullify through his baseless racial-prejudice
theory.  And defendant should not be permitted to argue a legal issue
-- much less one where he could not even meet his burden to obtain
discovery to support any motion to dismiss the indictment -- to the
jury.  <u>See, e.g.</u>, <u>United States v. Poschwatta</u>, 829 F.2d 1477, 1483
(9th Cir. 1987) ("The court acts as the jury's sole source of the
law."); <u>United States v. Mayer</u>, 503 F.3d 740, 747 (9th Cir. 2007)
("[A]n indictment that results from selective prosecution will be
dismissed" for violating the Due Process Clause of the Fifth
Amendment).  These jury nullification arguments must be excluded.

**C.    Improper Argument Regarding the Government's Charging
Decision and Defendant's Co-Conspirators**

The Supreme Court has recognized that "[i]n our criminal justice
system, the [g]overnment retains 'broad discretion' as to whom to
prosecute."  <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985).
Indeed, charging decisions, which are "rarely simple," implicate

8

complex considerations including the strength and importance of a case, the prosecution's general deterrence value, the government's enforcement priorities, and the allocation of resources.  See Town of Newton v. Rumery, 480 U.S. 386, 396 (1987).  Given the broad discretion traditionally afforded to prosecutors, courts have consistently held that evidence or argument about charging decisions should not be admitted at trial.  See United States v. Re, 401 F.3d 828, 832 (7th Cir. 2005); United States v. Boyle, No. S1 08 CR 523 (CM), 2009 WL 5178525, at *3 (S.D.N.Y. 2009) ("While a defendant is entitled to cross-examine government witnesses as to inconsistent statements, the government's charging decisions are not proper subjects for cross-examination and argument.").

Inquiries into charging decisions generally do not tend to make facts of consequence more or less probable, and thus are irrelevant. See Fed. R. Evid. 401.  Put another way, such inquiries lack any probative value as to defendant's guilt or innocence.  Because inquiries into the government's charging decisions and enforcement practices are irrelevant to whether the government has proven that defendant committed the charged crimes beyond a reasonable doubt, they should be excluded on that basis alone.

For the same reasons, defendant should not be permitted to refer to the absence of "more culpable" co-conspirators from either the government's case at large or defendant's trial in particular.  See United States v. Hearns, CR 15-474-PSG, Dkt. 812 (C.D. Cal. Oct. 20, 2021) (granting government's request to exclude evidence and arguments related to profits earned in the scheme by absent co-defendants because such evidence would mislead the jury into "sympathizing with one or more [d]efendants based on their relative

financial gain from the scheme").  Although defendant was not charged
with conspiring to operate an illegal gambling business, his charges
-- false statements and obstruction of justice -- are rooted in his
lies to disguise his involvement in that conspiracy, and evidence
presented at trial will demonstrate as much.  Thus, any arguments
related to "more culpable" co-conspirators of the Nix Gambling
Business absent from trial would be misleading, especially given
defendant's counsel's statements, in defendant's First Street
Courthouse press conference, that "Yasiel has gotten more of a press
statement and release from this Office than the people who were
committing the heinous crimes[.]"  And to the degree defendant
attempts to allege that other co-conspirators that were not charged
federally are more culpable, that, too, is improper.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests
that this Court grant its motion in limine to exclude improper
evidence related to the government's investigation and charging
decision in this case.

Dated: September 29, 2025          Respectfully submitted,

                                   BILAL A. ESSAYLI
                                   Acting United States Attorney

                                   JOSEPH T. MCNALLY
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division

                                   /s/ Laura A. Alexander
                                   JUAN M. RODRIGUEZ
                                   MICHAEL J. MORSE
                                   LAURA A. ALEXANDER
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA