TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
MICHAEL J. MORSE (Cal. Bar No. 291763)
LAURA A. ALEXANDER (Cal. Bar No. 313212)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0304/7367/1019
     Facsimile: (213) 894-0141
     Email:     juan.rodriguez@usdoj.gov
                michael.morse@usdoj.gov
                laura.alexander@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:22-CR-394(A)-DMG |
|---|---|
| Plaintiff, | TRIAL MEMORANDUM |
| v. | Trial Date:   January 20, 2026<br>Trial Time:   8:30 a.m. |
| YASIEL PUIG VALDES, | Location:     Courtroom of the<br>Hon. Dolly M. Gee |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California, and Assistant United States Attorneys Juan M. Rodriguez, Michael J. Morse, and Laura A. Alexander, hereby files its Trial Memorandum for the above-captioned case.

//

//

//

This Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and further evidence and argument as the Court may permit.

Dated: January 13, 2025          Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

/s/ Laura A. Alexander
JUAN M. RODRIGUEZ
MICHAEL J. MORSE
LAURA A. ALEXANDER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                           PAGE

TABLE OF AUTHORITIES.................................................i

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    STATUS OF THE CASE.............................................1

      A.    First Superseding Indictment............................1

      B.    Length of Trial and Number of Witnesses.................1

      C.    Pretrial Motions........................................2

II.   FACTUAL SUMMARY...............................................5

      A.    Defendant's Involvement in the Wayne Nix Gambling
            Business................................................5

      B.    Defendant's Interview with HSI and IRS-CI...............6

      C.    Defendant's False Statements During His Naturalization
            Process.................................................8

      D.    Major League Baseball's Rule 21.........................9

III.  STATEMENT OF THE CHARGES......................................9

IV.   ANTICIPATED LEGAL AND EVIDENTIARY ISSUES.....................11

      A.    Admissibility of Defendant's Statements................11

      B.    Cross-Examination of Defendant.........................12

      C.    Admissibility of Messages Sent and Received by
            Defendant or by Other's on Defendant's Behalf..........13

      D.    Mental Condition Expert Testimony......................14

      E.    Lay Opinion Testimony..................................16

      F.    Photographs and Videos.................................17

      G.    Summary Exhibits.......................................18

      H.    Business Records.......................................20

      I.    Chain of Custody.......................................21

      J.    Agent at Counsel Table.................................21

      K.    Opening Statements.....................................22

## **TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

    L.   Character Evidence.......................................23

    M.   Reciprocal Discovery and Affirmative Defenses............25

V.   CONCLUSION..................................................28

APPENDIX A: Joint Government Trial Witness Time Estimate Form......29

# **TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**Federal Cases**

Bourjaily v. United States,
    483 U.S. 171 (1987) ............................................. 20

Hamling v. United States,
    418 U.S. 87 (1974) .............................................. 23

La Porte v. United States,
    300 F.2d 878 (9th Cir. 1962) ................................... 20

Michelson v. United States,
    335 U.S. 469 (1948) ......................................... 23, 24

Ohler v. United States,
    529 U.S. 753 (2000) ............................................ 12

People of Territory of Guam v. Ojeda,
    758 F.2d 403 (9th Cir. 1985) ................................... 17

United States v. Aceves-Rosales,
    832 F.2d 1155 (9th Cir. 1987) .................................. 26

United States v. Angelini,
    678 F.2d 380 (1st Cir. 1982) ................................... 24

United States v. Baca,
    761 F. App'x 724 (9th Cir. 2019) .............................. 10

United States v. Barragan,
    871 F.3d 689 (9th Cir. 2017) ................................... 16

United States v. Booth,
    309 F.3d 566 (9th Cir. 2002) ................................... 15

United States v. Bright,
    588 F.2d 504 (5th Cir. 1979) ................................ 24-25

United States v. Campos,
    217 F.3d 707 (9th Cir. 2000) ................................... 16

United States v. Coades,
    549 F.2d 1303 (9th Cir. 1977) .................................. 21

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                                          PAGE

United States v. Collicott,
    92 F.3d 973 (9th Cir. 1996) ...................................... 11

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992) ..................................... 12

United States v. De Peri,
    778 F.2d 963 (3d Cir. 1985) ...................................... 19

United States v. Dela Cruz,
    358 F.3d 623 (9th Cir. 2004) ..................................... 15

United States v. Dinitz,
    424 U.S. 600 (1976) .............................................. 22

United States v. Farmer,
    2015 WL 4661370 (N.D. Ohio Aug. 5, 2015) ........................ 22

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) ..................................... 12

United States v. Finley,
    301 F.3d 1000 (9th Cir. 2002) .................................... 15

United States v. Gadson,
    763 F.3d 1189 (9th Cir. 2014) .................................... 17

United States v. Gaffney,
    2021 WL 4893576 (9th Cir. Oct. 20, 2021) ........................ 14

United States v. Gardner,
    611 F.2d 770 (9th Cir. 1980) ..................................... 19

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) .................................... 21

United States v. Harris,
    491 F.3d 440 (D.C. Cir. 2007) .................................... 23

United States v. Hedgcorth,
    873 F.2d 1307 (9th Cir. 1989) .................................... 24

United States v. Hegwood,
    977 F.2d 492 (9th Cir. 1992) ..................................... 25

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Keiser,
    57 F.3d 847 (9th Cir. 1995) ......................................... 24

United States v. Klinzing,
    315 F.3d 803 (7th Cir. 2003) ........................................ 21

United States v. Lopez,
    913 F.3d 807 (9th Cir. 2019) ........................................ 14

United States v. Lozeau,
    2022 WL 17487728 (D. Idaho Dec. 7, 2022) ........................... 17

United States v. May,
    622 F.2d 1000 (9th Cir. 1980) ....................................... 17

United States v. McCabe,
    1997 WL 753348 (9th Cir. 1997) ...................................... 22

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) ......................................... 24

United States v. Meyers,
    847 F.2d 1408 (9th Cir. 1988) ................................... 18, 19

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) ....................................... 12

United States v. Morales,
    108 F.3d 1031 (9th Cir. 1997) .................................. 15, 16

United States v. Moreno,
    243 F.3d 551 (9th Cir. 2000) ........................................ 17

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978) ........................................ 18

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ................................... 11, 12

United States v. Pino-Noriega,
    189 F.3d 1089 (9th Cir. 1999) ....................................... 16

United States v. Ray,
    930 F.2d 1368 (9th Cir. 1990) ....................................... 20

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Rubino,
   431 F.2d 284 (6th Cir. 1970) ..................................... 19

United States v. Santana-Camacho,
   931 F.2d 966 (1st Cir. 1991) ..................................... 23

United States v. Scales,
   594 F.2d 558 (6th Cir. 1979) ................................. 18, 19

United States v. Scholl,
   166 F.3d 964 (9th Cir. 1999) ................................. 25, 26

United States v. Skeet,
   665 F.2d 983 (9th Cir. 1982) .................................. 16-17

United States v. Torres,
   794 F.3d 1053 (9th Cir. 2015) .................................... 14

United States v. VonWillie,
   59 F.3d 922 (9th Cir. 1995) ..................................... 16

United States v. Young,
   248 F.3d 260 (4th Cir. 2001) .................................... 26

**Federal Statutes**

18 U.S.C. § 1001............................................................. 7

18 U.S.C. § 1001(a)(2) .................................................. 1, 9

18 U.S.C. § 1503(a) ..................................................... 1, 9

**Federal Rules**

Fed. R. Crim. P. 12.2(a)................................................... 26

Fed. R. Crim. P. 12.2(b)................................................... 27

Fed. R. Crim. P. 16............................................... 25, 26, 27

Fed. R. Crim. P. 16(b)(1)(A)............................................... 25

Fed. R. Crim. P. 16(b)(1)(C)............................................... 25

Fed. R. Crim. P. 16(c)..................................................... 25

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                                    <u>PAGE</u>

Fed. R. Crim. P. 16(d)(2).................................................25

Fed. R. Evid. 104(a).....................................................20

Fed. R. Evid. 106........................................................11

Fed. R. Evid. 401.........................................................4

Fed. R. Evid. 402.........................................................4

Fed. R. Evid. 403.....................................................4, 23

Fed. R. Evid. 404.........................................................1

Fed. R. Evid. 404(a).....................................................23

Fed. R. Evid. 405(a).....................................................24

Fed. R. Evid. 405(a)(1)..................................................23

Fed. R. Evid. 405(b).....................................................24

Fed. R. Evid. 608(a).................................................24, 25

Fed. R. Evid. 611(a).....................................................19

Fed. R. Evid. 615....................................................21, 22

Fed. R. Evid. 701........................................................16

Fed. R. Evid. 704(b).............................................14, 15, 16

Fed. R. Evid. 801(a).....................................................13

Fed. R. Evid. 801(c).....................................................13

Fed. R. Evid. 801(d)(2)..................................................11

Fed. R. Evid. 801(d)(2)(A)...............................................14

Fed. R. Evid. 801(d)(2)(C)...............................................14

Fed. R. Evid. 801(d)(2)(D)...............................................14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

Fed. R. Evid. 803(6)................................................. 20
Fed. R. Evid. 803(6)(A)-(C).......................................... 21

Fed. R. Evid. 901(b)(1).............................................. 17

Fed. R. Evid. 902(11)............................................. 3, 21

Fed. R. Evid. 1006............................................... 18, 19

Fed. R. Evid. 1101(d)(1)............................................. 20

**Other Authorities**

Ninth Circuit Manual of Model Criminal Jury
Instructions (2022 ed.)................................... 10, 11, 14

32 McCormick on Evid. § 215 (7th ed.)............................ 18

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    STATUS OF THE CASE**

    **A.    First Superseding Indictment**

On January 20, 2023, a federal grand jury charged YASIEL PUIG VALDES ("defendant") in a two-count, first superseding indictment with obstruction of justice, in violation of 18 U.S.C. § 1503(a), and making false statements, in violation of 18 U.S.C. § 1001(a)(2). (Dkt. 54.)  Defendant is proceeding to trial on January 20, 2026. (Dkt. 240.)

    **B.    Length of Trial and Number of Witnesses**

The government expects that its case-in-chief (with a reasonable allotment for cross-examination) will take approximately five days. The government plans to call 13 witnesses in its case-in-chief, including: (1) Homeland Security Investigations ("HSI") Special Agent Jason Canty; (2) Internal Revenue Service – Criminal Investigations ("IRS-CI") Special Agent Christopher Seymour; (3) Donny Kadokawa; (4) Benny Bonilla; (5) Dan Soto; (6) United States Citizenship and Immigration Services ("USCIS") Officer Jose Lopez; (7) Spanish interpreter Esther Hermida; (8) Cincinnati Reds Spanish interpreter Julio Morillo; (9) Los Angeles Dodgers Spanish interpreter Jesus Quiñonez; (10) Spanish translator L. Michael Zogby; (11) Major League Baseball ("MLB") Head Counsel of Policy, Integrity and Compliance, Marquest Meeks; (12) MLB Senior Director of Network and Engineering Cesar Murillas; (13) Bank of America Assistant Vice President of Case Resolutions Jennifer Chatman; (14) David Parker; and (15) Nchan

Tashchyan.[1]  The government may call Dr. Marcel Pontón for rebuttal
purposes.[2]

The parties' time estimates for the direct examination and
cross-examination of the government's witnesses are included in the
Joint Trial Witness Estimate form, attached hereto as <u>Appendix A</u>.

**C.   Pretrial Motions**

On September 29, 2025, the government filed eight motions in
limine, and defendant filed two motions in limine.  (Dkt. 205-210,
213, 230.)  On December 2, 2025, this Court heard argument on these
motions, and subsequently ruled as follows:

1.   The Court granted the government's Motion <u>in</u> <u>Limine</u> to
Admit Evidence Inextricably Intertwined with Charged Conduct or, in
the Alternative, Admit Evidence Under Federal Rule of Evidence
404(b).  (Dkt. 205; Dkt. 291.)  The Court found that evidence of
defendant's denial that he engaged in illegal sports gambling during
his 2019 naturalization process was admissible under Rule 404(b).
(Dkt. 291 at 8-9.)

2.   The Court granted the government's Motion <u>in</u> <u>Limine</u> to
Preclude Jury Nullification Arguments with respect to any argument or
evidence related to defendant's celebrity status, familial
relationships, charitable work, and the potential consequences of a

---

[1] The government provided defense counsel with proposed
stipulations regarding the accuracy of Spanish-to-English translation
of certain text messages, and the extractions of Wayne Nix's cell
phone and Benny Bonilla's cell phone.  These stipulations would
obviate the need for live testimony from Spanish Interpreter L.
Michael Zogby, and Special Agents David Parker and Nshan Tashchyan.
Defendant has not indicated whether he will stipulate regarding these
translations and extractions.

[2] The government reserves the right to call additional witnesses
in either its case-in-chief or rebuttal case (if any).

conviction, but denied this motion with respect to any argument or
evidence related to defendant's education level, childhood
socioeconomic status, and history of trauma, without prejudice to
renewal depending on the nature and scope of evidence presented at
trial.  (Dkt. 206, Dkt. 291 at 10.)

3.    The Court granted the government's Motion in Limine to
Preclude Improper Argument Regarding the Government's Investigation
and Charging Decision with respect to any evidence or argument that
the investigation into and prosecution of defendant was racially
motivated.  (Dkt. 207, Dkt. 291.)  The Court further held that
defendant could make non-racially based arguments relevant to his
obstruction charge and Government witnesses' potential motivations to
cooperate, subject to objections by the government.  (Dkt. 291 at
11.)  The Court also advised that defense counsel should give fair
warning to the government and the Court if the issue is about to
present itself at trial, so the Court can address this issue outside
the presence of the jury.  (Id.)

4.    The Court deferred ruling on the government's Motion in
Limine to Admit Business Records Pursuant to the Self-Authentication
Provisions of Federal Rule of Evidence 902(11).  (Dkt. 208, Dkt.
291.)  Pursuant to the Court's order, the parties filed a stipulation
related to these records on December 19, 2025.  (Dkt. 291.)

5.    The Court denied the government's Motion in Limine to
Exclude Evidence and Argument of Defendant's Purported Reliance on
the Advice of Counsel, without prejudice to revisiting the issue, if
necessary, at trial.  (Dkt. 209, Dkt. 291.)  The Court advised that
if defendant intends to offer an advice of counsel defense at any

3

1  time during trial, he will be required to make an offer of proof as

2  to the anticipated witnesses and their testimony so that the parties

3  and the Court can address the issue outside the presence of the jury.

4  (Dkt. 291 at 13.)

5      6.   The Court denied the government's Motion in Limine to

6  Exclude an Entrapment Defense, without prejudice to revisiting the

7  issue, if an entrapment defense is raised by defendant at trial.

8  (Dkt. 210, Dkt. 291.)

9      7.   The Court granted the government's Motion in Limine to

10  Exclude Evidence of Defendant's Failed Cooperation Attempt Under

11  Federal Rules of Evidence 401 and 403, with the caveat that the Court

12  will revisit this issue if the government opens the door to the

13  Tradewinds-related post-interview conduct, or if defendant testifies

14  about his Tradewinds-related interactions with the government.  (Dkt.

15  221, Dkt. 291 at 14.)

16      8.   The Court denied the government's Motion in Limine to Admit

17  Co-Conspirator Statements.  (Dkt. 225, Dkt. 291 at 16.)

18      9.   The Court granted in part and denied in part defendant's

19  Motion in Limine to Preclude Reference to MLB Rules and Strike

20  Surplusage (Dkt. 213, Dkt. 291 at 2-4.)  The Court granted this

21  Motion to the extent that defendant moved to preclude evidence about

22  his MLB disciplinary record, with the caveat that the government may

23  raise this issue again if Puig opens the door.  (Dkt. 291 at 3.)  The

24  Court found evidence of MLB Rule 21 admissible under Rule 402, and

25  denied defendant's motion to strike surplusage from the FSI as moot,

26  as the Court does not provide the jury with a copy of the indictment.

27  (Id. at 3-4.)

28

4

1      10.   The Court denied defendant's Motion in Limine to Exclude

2   Purported Sand Island Sports Records.  (Dkt. 230, Dkt. 291 at 4-8.)

3   **II.   FACTUAL SUMMARY[3]**

4      At trial, the government expects that the evidence and testimony

5   will establish the following facts, among others:

6      **A.   Defendant's Involvement in the Wayne Nix Gambling Business**

7      In 2017, HSI and IRS-CI began investigating the Nix Gambling

8   Business.  As part of this investigation, Nix's actions to launder

9   his illicit proceeds and hide his income from the IRS came under

10  scrutiny.  The money trail led investigators to defendant.

11     The investigation determined that beginning no later than May

12  2019, defendant began placing bets on sporting events with the Nix

13  Gambling Business through Kadokawa.  Defendant called and sent text

14  messages to Kadokawa with wagers on sporting events.  Kadokawa then

15  submitted the bets to the Nix Gambling Business on defendant's

16  behalf.  By June 17, 2019, defendant owed the Nix Gambling Business

17  $282,900 for sports gambling losses.  Between June 25, 2019, and July

18  3, 2019, in a series of text messages, Kadokawa and Individual B

19  instructed defendant to make a check or wire transfer payable to

20  Individual A.  Individual A was a client of the Nix Gambling Business

21  who, around that time, was owed at least $200,000 in gambling

22  winnings from the Nix Gambling Business.

23     On June 25, 2019, defendant withdrew $200,000 and purchased two

24  $100,000 cashiers' checks, each made payable to Individual A, but did

25  not immediately send the checks to Individual A due to a dispute over

26

27     [3] Pursuant to the Court's standing order, the government and
    defense conferred regarding the factual summary.  Defense counsel
28  does not agree with the government's factual summary.

the balance and access to the Sand Island Sports websites.  Between
June 28, 2019, and July 4, 2019, defendant requested direct access to
the Sand Island Sports websites, but Nix refused to provide defendant
direct access to the websites until defendant paid his gambling debt.
Ultimately, on July 3, 2019, defendant sent the cashiers' checks to
Individual A via the United Parcel Service ("UPS") and sent a photo
of the UPS shipping label to Kadokawa and Individual B via text
message.  Kadokawa forwarded the photo of the UPS label to Nix as
proof that defendant paid his gambling debt.

The following day, Nix provided defendant direct access to the
Sand Island Sports websites.  Nix also sent defendant a text message
and assigned defendant player identification number "R182" and
password "yp," and provided defendant the Sand Island Sports website
addresses.  Between July 4, 2019, and September 29, 2019, defendant
placed 899 bets on tennis, football, and basketball games through the
Sand Island Sports websites.

**B.  Defendant's Interview with HSI and IRS-CI**

On January 27, 2022, defendant attended a voluntary interview
with the government via a WebEx video conference.  Two prosecutors,
two special agents ("SA") assigned to the investigation, defendant,
defendant's two attorneys, and an independent court-certified Spanish
language interpreter of Cuban descent, who had been retained by the
government, participated.  Before the interview began, defendant
conferred with his attorneys and the interpreter outside the presence
of the government.  Defendant's attorneys requested that the
interview not be recorded, and the government acceded to that
request.  Then-AUSA Jeff Mitchell began the interview by reviewing

the terms of the proffer letter with defendant, including that any
false statements could result in a criminal prosecution, to ensure
that defendant was aware of and understood those terms.

Then-AUSA Mitchell asked HSI SA Jason Canty to read the text of
§ 1001 to defendant but, when SA Canty began, defendant interrupted
and said the agent was wasting defendant's time.  SA Canty
nonetheless finished reading the text of the statute to defendant.
Over the next hour-and-a-half, the government asked defendant about
his knowledge of the Nix Gambling Business, and defendant essentially
denied all knowledge of the organization and the persons
participating in it.  The government attempted to refresh defendant's
recollection by showing him various documents, including photos of
individuals involved in the Nix Gambling Business, at least two of
whom defendant had dealt with personally; copies of the cashier's
checks defendant had purchased to pay his debts owed to the Nix
Gambling Business; images of one of the Sand Island Sports websites
through which defendant had placed 899 sports bets; and a screenshot
of one of the Sand Island Sports websites that defendant himself had
taken with his cell phone.[4]  Defendant essentially denied all
knowledge of these exhibits and the individuals and transactions they
reflected.

Towards the end of the interview, defendant indicated that
Kadokawa had just sent him a text message and then began to review
his prior text messages with Kadokawa.  Defendant claimed that he
found text messages with Kadokawa from 2019 but said there were no

---

[4] This screenshot was recovered from Nix's cellphone, and text
messages recovered from Nix's cellphone show that Nix received this
screenshot from defendant.

messages related to betting on websites.  Defendant indicated that the only message he found pertaining to gambling was a text message on May 8, 2019, where defendant asked Kadokawa, who was in Las Vegas at the time, to place a bet on a basketball game.  The government asked a few additional questions and then ended the interview.  At numerous points during the interview, defendant, his attorneys, and the interpreter spoke offline outside the presence of the government. During a final break, the government privately advised defendant's then-counsel that defendant's statements were contrary to evidence the government had already obtained during the Nix Gambling Business investigation.  Counsel conferred with his client outside the presence of the government, but defendant did not change his prior statements.

On March 10, 2022, in a recorded message sent via WhatsApp regarding the interview, defendant told Individual B – in English – "I no said nothing, I not talking.  I said that I only know [Kadokawa] from baseball."

**C.   Defendant's False Statements During His Naturalization Process**

As part of defendant's naturalization process in 2019, he filled out Form N-400 which included a series of "Eligibility Questions." In relevant part, one question asked "[h]ave you ever: Gambled Illegally or received income from illegal gambling?" to which defendant answered "no[.]"

The form also stated that if defendant answered "yes" to any questions, including the question above, he needed to "include a

typed or printed explanation on additional sheets of paper and provide any evidence to support your answers."

On August 14, 2019, defendant had his naturalization interview. As part of his interview, he had to take (and pass) an English competency examination.  In addition, he had to answer a series of questions.  One of the questions that defendant was verbally asked was whether he had ever gambled illegally (see below).  Again, defendant's answer was "no."

As part of that interview, defendant also confirmed, under penalty of perjury, that his answers were true and correct.

### D.    Major League Baseball's Rule 21

Defendant last played in the MLB in September 2019, and publicly expressed, as recently as October 27, 2025, his desire to return to Major League Baseball ("MLB").  MLB Rule 21 states, in relevant part, "[a]ny player, umpire, or Club or League official or employee who places bets with illegal book makers, or agents for illegal book makers, shall be subject to such penalty as the Commissioner deems appropriate in light of the facts and circumstances of the conduct." During the relevant time period, defendant played in the MLB and was advised of Rule 21, in Spanish, on March 14, 2017, March 9, 2018, and March 15, 2019.

## III. STATEMENT OF THE CHARGES[5]

Based on the foregoing evidence, a federal grand jury charged defendant in a two-count, first superseding indictment with

---

[5] Pursuant to the Court's standing order, the government and defense conferred regarding the statement of charges.  Defendant agrees, with the statement of charges as articulated in the following section, with the exception of the third paragraph.  See Statement of Disputed Jury Instructions, filed on January 13, 2026.

1  obstruction of justice, in violation of 18 U.S.C. § 1503(a), and

2  making false statements, in violation of 18 U.S.C. § 1001(a)(2).

3  (Dkt. 54.)

4      For defendant to be guilty of obstruction of justice, the

5  government must prove each of the following elements beyond a

6  reasonable doubt: (1) defendant influenced, obstructed, or impeded,

7  or tried to influence, obstruct, or impede a federal criminal

8  investigation into federal crimes, including illegal sports gambling

9  and money laundering (hereinafter "federal criminal investigation");

10 and (2) defendant acted corruptly, meaning the defendant had

11 knowledge of the federal criminal investigation and his purpose was

12 to obstruct it.  See Ninth Circuit Manual of Model Criminal Jury

13 Instructions (2022 ed.), No. 19.3.

14     The government does not need to prove actual obstruction of the

15 federal criminal investigation occurred, so long as the jury finds

16 that defendant acted with the intent of obstructing the federal

17 criminal investigation, and he knew that his actions had the natural

18 and probable effect of interfering with the federal criminal

19 investigation.  See United States vs. Leroy Baca, 2:16-CR-66-PA, Dkt.

20 301 at 23; United States v. Baca, 761 F. App'x 724, 728 (9th Cir.

21 2019) ("the district court properly instructed the jury that in order

22 to convict [defendant] for obstruction of justice, the government had

23 to prove beyond a reasonable doubt that [defendant] acted

24 'corruptly,' meaning that he knew of the federal grand jury

25 investigation and acted with an intent to obstruct it").

26     For defendant to be guilty of making false statements, the

27 government must prove each of the following elements beyond a

28

10

reasonable doubt: (1) defendant made a false statement; (2) the
statement was made in a matter within the jurisdiction of HSI, IRS-
CI, and the United States Attorney's Office ("USAO"); (3) defendant
acted willfully, that is, the defendant acted deliberately and with
knowledge both that the statement was untrue and that his conduct was
unlawful; and (4) the statement was material to the decisions or
activities of HSI, IRS-CI and/or the USAO; that is, it had a natural
tendency to influence, or was capable of influencing, the agency's
decisions or activities. See Ninth Circuit Manual of Model Criminal
Jury Instructions (2022 ed.), No. 24.10.

## IV. ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

Pursuant to the Court's order, the government and defense
conferred regarding the anticipated legal and evidentiary issues
raised in the section below. In these conferrals, the parties have
clarified their positions as to certain facts and potential issues
that may arise. Defendant does not otherwise agree with the
government's positions on the legal and evidentiary issues.

### A. Admissibility of Defendant's Statements

At trial, the government will offer into evidence some of
defendant's prior statements. A defendant's statements, when offered
by the government, are admissions by a party-opponent and are
therefore not hearsay. Fed. R. Evid. 801(d)(2); see United States v.
Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

The government's admission of defendant's statements, however,
does not allow defendant to offer his own out-of-court statements
into evidence. When offered by the defendant, such statements are
hearsay. In Ortega, the Ninth Circuit held that non-self-inculpatory

statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay, and the rule of completeness does not allow for admission of that inadmissible hearsay.  203 F.3d at 682; see also United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (otherwise inadmissible hearsay not admitted regardless of Federal Rule of Evidence 106).

This rule does not prevent defendant from presenting his defense at trial, including by testifying.  Defendant simply is not permitted to place any of his prior statements before the Court without subjecting himself to cross-examination.  See Ortega, 203 F.3d at 682; United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam).  Thus, defendant may not introduce his prior statements through defense witnesses or by cross-examining government witnesses with defendant's hearsay statements.

B.  Cross-Examination of Defendant

The government does not know whether defendant intends to testify at trial.  If defendant testifies, the government should be permitted to cross-examine him fully because a defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  See Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination[.]") (internal quotations omitted).  A defendant has no right to avoid cross-examination on matters which call into question his claim of

12

innocence.  <u>United States v. Miranda-Uriarte</u>, 649 F.2d 1345, 1354 (9th Cir. 1981).  The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination.  <u>United States v. Cuozzo</u>, 962 F.2d 945, 948 (9th Cir. 1992).

On November 4, 2025, defendant sat for an approximately three-hour interview with Dr. Ponton.  This interview was recorded at defense counsel's request.  The government does not intend to introduce any of defendant's statements from this interview in its case-in-chief.  However, if defendant testifies and makes statements inconsistent with those made in this interview, the government may cross-examine defendant regarding his interview statements, and if necessary, impeach him with evidence of those statements.  Further, to the extent that defendant's expert witness Dr. Suarez and the government's expert witness Dr. Ponton relied on this interview in forming their respective opinions, the parties may elicit testimony from either expert relating to the interview.

Further, although the government does not intend to introduce any evidence of defendant's extensive disciplinary record with the MLB in its case-in-chief, the government may seek to introduce these records if defendant were to take the stand and make them relevant. (<u>See</u> Dkt. 291 at 3) (finding that government may seek to admit defendant's MLB disciplinary record if he opens the door).

### C.  Admissibility of Messages Sent and Received by Defendant or by Others on Defendant's Behalf

At trial, the government anticipates introducing text message conversations between: (1) defendant, Mr. Bonilla, and Mr. Kadokawa; (2) defendant and Mr. Bonilla; (3) defendant and Mr. Nix; (4)

1  defendant, Mr. Kadokawa, and Mr. Nix; and (5) Mr. Nix and Mr.

2  Kadokawa.

3      Fed. R. Evid. 801(c) defines hearsay as "a statement that: (1)

4  the declarant does not make while testifying at the current trial or

5  hearing; and (2) a party offers in evidence to prove the truth of the

6  matter asserted in the statement"). These messages are not hearsay

7  and thus admissible for multiple reasons: (1) they are not statements

8  of fact[6]; (2) they are directives or commands which similarly contain

9  no statement of fact; (3) they are a statement by the defendant (Fed.

10  R. Evid. 801(d)(2)(A)); (4) they are statements by a person defendant

11  authorized to make a statement on the subject (Fed. R. Evid.

12  801(d)(2)(C)); (5) they are statements by defendant's agent(s) on a

13  matter within the scope of that relationship and while it existed

14  (Fed. R. Evid. 801(d)(2)(D)); (6) they are not offered for the truth

15  of the matter asserted; and (7) they are offered for the effect on

16  the listener and to explain subsequent conduct. See, e.g., United

17  States v. Lopez, 913 F.3d 807, 826 (9th Cir. 2019); see also United

18  States v. Gaffney, No. 20-50037, 2021 WL 4893576, at *1 (9th Cir.

19  Oct. 20, 2021), cert. denied, 142 S. Ct. 1182, 212 L. Ed. 2d 47

20  (2022) (affirming the admission of Facebook messages sent to

21  defendant as "non-hearsay evidence because they were admitted to show

22  their effect on [defendant], not for their truth"); United States v.

23  Torres, 794 F.3d 1053, 1059-60 (9th Cir. 2015) (explaining that

24  "questions and inquiries may constitute non-hearsay" unless the

25

26  _____

27      [6] The act of placing a bet is not an "assertion" and thus it is
    not a "statement." See Fed. R. Evid. 801(a) (defining a "statement"
    as a person's oral assertion, written assertion, or nonverbal

28  conduct, if the person intended it as an assertion"); Dkt. 225 at 6.

question is intended "to communicate an implied assertion and the proponent offers it for this intended message").

### D. Mental Condition Expert Testimony

Pursuant to Federal Rule of Evidence 704(b), "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b) (emphasis added). Here, the government must prove, inter alia, that defendant "willfully" made false statements, and "corruptly," impeded a federal investigation." See Ninth Circuit Model Jury Instructions, Nos. 24.10 & 19.3 (2022 ed.). Consequently, testimony from any expert witness that defendant did or did not willfully make false statements and corruptly obstruct justice is inadmissible pursuant to Rule 704(b). United States v. Morales, 108 F.3d 1031, 1037 (9th Cir. 1997) (en banc) ("'A prohibited "opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea."); see, e.g., United States v. Booth, 309 F.3d 566, 573 (9th Cir. 2002) (affirming district court's exclusion of polygrapher's testimony offered by defendant that a polygraph test of defendant indicated that defendant was truthful when he denied intent to defraud or knowledge of fraud in a wire fraud and money laundering prosecution). This prohibition extends to counsel posing hypothetical questions to an expert that mirror the facts of the case in an attempt to evade the bar against experts rendering an opinion on the ultimate issue. United States v. Dela Cruz, 358 F.3d 623, 626 (9th Cir. 2004) (holding that phrasing

questions about the mental state of a "person," as opposed to the defendant, still violated Rule 704(b)'s prohibition on expert testimony regarding defendant's <u>mens rea</u>).

Instead, an expert witness may testify regarding, for example, a psychological diagnosis, that "does not automatically entail an opinion" on defendant's <u>mens rea</u>.  <u>United States v. Finley</u>, 301 F.3d 1000, 1015 (9th Cir. 2002).  For example, the Ninth Circuit held that a district court improperly excluded a defense expert who would have testified that defendant had an atypical belief system, because "[t]he jury could have accepted the atypical belief diagnosis and still concluded that [defendant] knowingly defrauded the banks."  <u>Id.</u>  Thus, an expert witness called by either the government or defense counsel may testify about his or her mental health examination of defendant and opinion regarding any mental state or condition defendant had in January 2022, but <u>cannot</u> testify as to whether defendant willfully made false statements and corruptly obstructed justice by making such statements and withholding information during his January 27, 2022 interview.  In short, the ultimate conclusion of whether defendant had the requisite <u>mens rea</u> is for the jury alone.  Fed. R. Evid. 704(b); <u>see also</u> <u>United States v. Campos</u>, 217 F.3d 707, 711 (9th Cir. 2000) ("[W]ith respect to a criminal defendant's mental state . . . 'the <u>jury</u> is the lie detector.'"); <u>Morales</u>, 108 F.3d at 1037.

### E.    Lay Opinion Testimony

Here, the government may elicit lay opinion testimony from the investigating law enforcement officers in this case, which includes testimony regarding defendant's text messages with members of the Nix

gambling operation.

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (cleaned up).

Lay opinion testimony by law enforcement officers is admissible. See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995); United States v. Barragan, 871 F.3d 689, 703-04 (9th Cir. 2017).  As the Ninth Circuit has explained, law enforcement officers' opinion testimony "is a means of conveying to the [jury] what the witness has seen or heard," and such "witnesses may relate their opinions or conclusions of what they observed." United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982).  Moreover, "an investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury." United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014). Rule 16 notice is not required for lay opinion testimony.  United States v. Moreno, 243 F.3d 551, 551 (9th Cir. 2000) ("Rule 16 notice was not required, however, because this testimony was properly admitted as the opinion of a lay witness.").

### F.   Photographs, Videos, and Audio Files

The government intends to introduce photographs of defendant with members of the Nix gambling organization, public videos wherein

defendant discusses his desire to return to the MLB, and recorded calls and/or voice notes by Puig and/or other participants of the Nix Gambling Operation.

Admitting a photograph, video or audio file into evidence requires that the proponent meet only a very low hurdle. "Under the Federal Rules, the witness identifying the item . . . need only establish that [it] is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985) (interpreting Fed. R. Evid. 901(b)(1)). The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980); United States v. Lozeau, 2022 WL 17487728, at *2 (D. Idaho Dec. 7, 2022) (holding that if "videos are relevant...they are all admissible.") Photographs, videos and audio files should be admitted so long as they fairly and accurately represent the event or object in question. See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). Notably, with respect to videos and photographs, the witness who lays the authentication foundation need not be the photographer or videographer, "nor need the witness know anything of the time, conditions, or mechanisms" of the taking of the photograph or video. 32 McCormick on Evid. § 215 (7th ed.).

G.   **Summary Exhibits**

To streamline the presentation of evidence for the jury, the government intends to use charts to summarize calls between: (1) defendant and Mr. Nix; (2) defendant and Mr. Kadokawa; (3) defendant and Mr. Bonilla; (4) Mr. Nix and Mr. Kadokawa; (5) Mr. Kadokawa and

Mr. Bonilla; and (6) Mr. Kadokawa and Mr. Orozco.  The government
also intends to use charts to summarize defendant's betting records
with Sand Island Sports, as well as major events related to
defendant's gambling with the Wayne Nix Gambling Business.

Charts and summaries of evidence are governed by Federal Rule of
Evidence 1006, which permits the introduction of charts, summaries,
or calculations of voluminous writings, recordings, or photographs
which cannot conveniently be examined in court.  See Fed. R. Evid.
1006.  Accordingly, a summary chart may be admitted as substantive
evidence when the proponent establishes that the underlying documents
upon which the summary is based are voluminous, admissible, and
available for inspection.  Id.; see also United States v. Meyers, 847
F.2d 1408, 1412 (9th Cir. 1988).  All that is required for the rule
to apply is that the underlying writings be voluminous, and that in-
court examination not be convenient.  United States v. Scales, 594
F.2d 558, 562 (6th Cir. 1979) (admitting charts summarizing charges
in indictment and overt acts evidencing conspiracy charge).  Although
the materials underlying the summary must be "admissible," they need
not themselves be "admitted" into evidence.  Meyers, 847 F.2d at
1412.

In addition, the summary chart must be accurate, authentic, and
properly introduced.  Scales, 594 F.2d at 563.  Where a chart does
not contain complicated calculations that would require an expert for
accuracy, authentication of the chart requires only that the witness
(1) have properly catalogued the exhibits and records upon which the
chart is based and (2) have knowledge of the analysis of the records
referred to in the chart.  Id.  Neither of these requirements

necessitates any special expertise.  Id.  The person who supervises

the compilation of the summary chart is the proper person to attest

to its authenticity and accuracy.  Id.  In addition, summary charts

may be used by the government in its opening statement.  See United

States v. De Peri, 778 F.2d 963, 979 (3d Cir. 1985) (approving

government's use of chart); United States v. Rubino, 431 F.2d 284,

289-90 (6th Cir. 1970) (same).

Also, apart from Rule 1006, a summary of evidence may be

presented to the jury with proper limiting instructions.  Rule 611(a)

recognizes that the trial court must "exercise reasonable control

over the mode and order of examining witnesses and presenting

evidence so as to: (1) make those procedures effective for

determining the truth; [and] (2) avoid wasting time . . . ."  Fed. R.

Evid. 611(a); see also United States v. Gardner, 611 F.2d 770, 776

(9th Cir. 1980) (in tax case, use of chart summarizing defendant's

assets, liabilities, and expenditures "contributed to the clarity of

the presentation to the jury, avoided needless consumption of time

and was a reasonable method of presenting the evidence").

H.   Business Records

The government intends to offer into evidence phone records,

bank records, defendant's betting records, MLB records related to MLB

Rule 21 and defendant's 2017-2019 seasons, and excerpts of

defendant's A-File.

Federal Rule of Evidence 803(6) carves out an exception to the

hearsay rule for business records if the following "foundational

facts [are] established through the custodian of the records or

another qualified witness: (1) the records must have been made or

1  transmitted by a person with knowledge at or near the time of the

2  incident recorded; and (2) the record must have been kept in the

3  course of a regularly conducted business activity." United States v.

4  Ray, 930 F.2d 1368, 1370 (9th Cir. 1990) (citation omitted), as

5  amended on denial of reh'g (Apr. 23, 1991).  "The phrase 'other

6  qualified witness' is broadly interpreted to require only that the

7  witness understand the record-keeping system" and "[t]here is no

8  requirement that the government establish when and by whom the

9  documents were prepared."  Id.  In determining if these foundational

10 facts have been established, a court may consider hearsay and other

11 evidence not admissible at trial.  See Fed. R. Evid. 104(a),

12 1101(d)(1); Bourjaily v. United States, 483 U.S. 171, 178-79 (1987).

13     Challenges to the accuracy or completeness of the business

14 records ordinarily goes to the weight of the evidence and not its

15 admissibility.  See La Porte v. United States, 300 F.2d 878, 880 (9th

16 Cir. 1962).  Additionally, "Rule 803(6) does not on its face violate

17 a criminal defendant's rights under the Confrontation Clause."

18 United States v. Klinzing, 315 F.3d 803, 810 (7th Cir. 2003).

19     Certified domestic records of a regularly conducted activity are

20 self-authenticating when accompanied by a written declaration

21 establishing that (1) the record was made at or near the time by, or

22 from information transmitted by, a person with knowledge; (2) the

23 record was kept in the course of a regularly conducted activity of

24 the business; and (3) making the record was a regular practice of

25 that activity.  See Fed. R. Evid. 803(6)(A)-(C), 902(11).  The

26 government has produced such certifications to defense counsel and

27 provided written notice of its intent to admit the corresponding

28

business records as self-authenticating domestic records of a regularly conducted activity.

### I.    Chain of Custody

In establishing chain of custody for an item of physical evidence, the government is not required to call all persons who may have come into contact with it.  United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (testimony of seizure by officer and record of chain-of-custody sufficient).  Moreover, "a presumption of regularity" exists in the "handling of exhibits by public officials." United States v. Coades, 549 F.2d 1303, 1306 (9th Cir. 1977). Therefore, to the extent that any alleged or actual gaps in the chain of custody exist, such gaps go to the evidence's weight, not its admissibility.  Harrington, 923 F.3d at 1374.

### J.    Agent at Counsel Table

Under Federal Rule of Evidence 615, investigative agents are permitted to sit at counsel table throughout the trial even though the "agent is or may be a witness" because his or her "presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter."  Fed. R. Evid. 615, Notes of Committee on the Judiciary, Senate Rpt. No. 93-1277; see United States v. Farmer, No. 1:14CR362, 2015 WL 4661370, at *4 (N.D. Ohio Aug. 5, 2015) (permitting two case agents to sit at counsel's table where case involved an eight-year investigation, 23-count indictment, voluminous discovery, 39 witnesses, and expected to last three weeks).

### K.    Opening Statements

"An opening statement has a narrow purpose and scope": (1) "to

state what evidence will be presented"; (2) "to make it easier for the jurors to understand what is to follow"; and (3) "to relate parts of the evidence and testimony to the whole." United States v. Dinitz, 424 U.S. 600, 612 (1976). Opening statement "is not an occasion for argument." Id. Opening statement should be "an outline of a party's anticipated proof" and "should not refer to matters that are not to be presented as evidence." United States v. McCabe, No. 96-30092, 1997 WL 753348, at *4 (9th Cir. 1997). A trial court "can exclude irrelevant facts and stop argument if it occurs" during opening statements. Id. (holding district court properly interrupted defense counsel's opening statement where it "was argumentative, inflammatory, and prejudicial").

Here, defendant should not be permitted to make an opening statement that refers to evidence that is neither listed on the government's exhibit list as an exhibit the government intends to move to admit, nor for which the defense has made no offer of proof that it will be able to admit in its own case, such as defendant's hearsay, or unnoticed expert testimony. See id.

### L. Character Evidence

Defense counsel have not indicated to the government whether they will call character witnesses to testify on defendant's behalf. If defendant intends to call any witnesses who will testify regarding defendant's character, the government will move for an order requiring defendant to present an offer of proof of the anticipated evidence and exclude any character evidence that does not relate to a relevant character trait.

1    The Supreme Court has recognized that character evidence has

2 weak probative value and great potential to result in confusion of

3 the issues and prejudice the jury.  Michelson v. United States, 335

4 U.S. 469, 480, 486 (1948).  The Supreme Court has thus given trial

5 courts wide discretion to limit the presentation of character

6 evidence.  Id. at 486.  Federal Rule of Evidence 403 also "gives the

7 district court broad discretion in excluding cumulative evidence."

8 See Hamling v. United States, 418 U.S. 87, 127 (1974).

9    Federal Rule of Evidence 404(a) governs the admissibility of

10 character evidence.  Rule 404(a) permits a defendant to introduce

11 evidence only of a "pertinent" trait of character.  A non-pertinent

12 or misleading character trait is not admissible.  See United States

13 v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming the

14 exclusion of testimony in a drug-trafficking case that the night

15 before the alleged crime that defendant was a "dedicated family man"

16 as excluded under Rule 405(a)(1) as not pertinent and Rule 403 as

17 unduly prejudicial); United States v. Santana-Camacho, 931 F.2d 966,

18 967-68 (1st Cir. 1991) (testimony of defendant's daughter purportedly

19 showing that defendant was a good family man was inadmissible

20 character evidence inasmuch as such character traits were not

21 pertinent to charged crime).

22    In addition, the form of the proffered evidence must be proper.

23 Rule 405(a) sets forth the sole methods for which character evidence

24 may be introduced.[7]  It specifically states that where evidence of a

25 ─────────────

26    [7] Rule 405(b) -- which permits the introduction of specific
instances of a person's conduct, when a person's character or
27 character trait is an essential element of a charge, claim, or
defense -- is not applicable here, because "proof, or failure of
28                                    *(footnote cont'd on next page)*

character trait is pertinent and admissible, proof may be made in two ways: (1) by testimony as to reputation in the community and (2) by testimony as to opinion.  Thus, defendant may not introduce specific instances of his good conduct through the testimony of others.  Fed. R. Evid. 405(a); Michelson, 335 U.S. at 477; United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989).  Further, a defense witness can testify as to his or her opinion of the defendant's truthfulness only if (1) the defendant has already taken the stand; and (2) the government has already attacked the defendant's credibility.  Fed. R. Evid. 608(a); United States v. Angelini, 678 F.2d 380, 382 n.1 (1st Cir. 1982).

On cross-examination of a defendant's character witness the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue.  Fed. R. Evid. 405(a).  The only prerequisites are that: (1) there be a good-faith basis that the incidents inquired about occurred; and (2) the incidents are relevant to the character trait at issue.  United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981); United States v. Bright, 588 F.2d 504, 512 (5th Cir. 1979).  Furthermore, once defendant opens that door, the government may additionally introduce character witnesses who can testify as to defendant's character for truthfulness or untruthfulness in the form of reputation or opinion evidence.  Fed. R. Evid. 608(a).  "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into

---

proof" of any "character trait by itself" does not "satisfy an element of the charge, claim, or defense."  United States v. Keiser, 57 F.3d 847, 856 (9th Cir. 1995).

1  that issue." <u>United States v. Hegwood</u>, 977 F.2d 492, 496 (9th Cir.

2  1992).

3      To the extent defendant intends to call any witness to opine

4  about any irrelevant character traits, the government will seek to

5  preclude such testimony. <u>See, e.g.</u>, <u>United States v. Scholl</u>, 166

6  F.3d 964, 975 (9th Cir. 1999) (fact that defendant adequately

7  fulfilled the duties of his judgeship not relevant to prosecution for

8  filing false tax return).

9      **M.   Reciprocal Discovery and Affirmative Defenses**

10     Federal Rule of Criminal Procedure 16 creates reciprocal

11 discovery obligations for a defendant to produce three categories of

12 materials that a defendant intends to introduce as evidence at trial:

13 (1) documents and tangible objects; (2) reports of any examination or

14 tests; and (3) expert witness disclosures. Rule 16 imposes on

15 defendant a continuing duty to disclose this discovery. Fed. R.

16 Crim. P. 16(b)(1)(A), (b)(1)(C), & (c). When a party, including a

17 defendant, fails to produce discovery as required, Rule 16 empowers

18 the district court to "prohibit that party from introducing the

19 undisclosed evidence; or enter any other order that is just under the

20 circumstances." Fed. R. Crim. P. 16(d)(2). The Ninth Circuit has

21 held that where a defendant fails to produce reciprocal discovery, it

22 is well within the district court's discretion to exclude such

23 defense evidence, especially where the defense disclosure was made

24 after the start of trial. <u>See</u> <u>United States v. Scholl</u>, 166 F.3d 964,

25 972 (9th Cir. 1999), <u>as amended on denial of reh'g</u> (Mar. 17, 1999)

26 (affirming exclusion under Rule 16 of documents that defense counsel

27 had possessed for some time but did not disclose until after the jury

28

was sworn in, preventing the government from fully investigating the issues raised by the documents); <u>United States v. Aceves-Rosales</u>, 832 F.2d 1155, 1157 (9th Cir. 1987) (affirming exclusion under Rule 16 of records that defense counsel had subpoenaed when defense counsel had allowed the government to rest its case without disclosing that this record existed and he had subpoenaed it with the intention he may offer it into evidence in the defense's case); <u>see also</u> <u>United States v. Young,</u> 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

From the inception of this case in 2022 to present, the government has requested all reciprocal discovery to which it is entitled, as well as notice of defendant's intention to rely on an any affirmative defenses, including an entrapment defense.  Defendant has produced: (1) bank records; (2) text messages reflecting defendant's June 2022 training schedule; (3) defendant's disclosure of his intent to present expert evidence relating to a mental condition (Dkt. 215), the corresponding expert report of Dr. Suarez and accompanying materials; and (5) a recent production of purported business records from the American Registry of Internet Numbers.  Defendant, however, has not indicated any intent to raise any affirmative defenses.  If defendant attempts to introduce or use any documents at trial that he has not produced, or seeks to rely on an undisclosed affirmative defense, the government reserves the right to

object and to request that the Court exclude defendant's undisclosed documents or affirmative defense(s).

Similarly, other than defendant's noticed expert witnesses Dr. Suarez and Alejandro Abella[8], defendant has not provided the government with information regarding any witnesses he intends to call at trial.  The government needs the opportunity to evaluate permissible impeachment material, in order to properly cross-examine those witnesses, and the government does not wish to delay the trial by requesting avoidable recesses.  The parties are currently attempting to reach agreement regarding defendant's production of his complete witness list, in addition to the parties' mutual exchange of all exhibits.  The government will raise this issue with the Court only if necessary.

**V.    CONCLUSION**

The government respectfully requests leave to supplement this Trial Memorandum, as appropriate.

---

[8] Defense counsel noticed Alejandro Abella, a Spanish interpreter, on January 13, 2026.  The government is currently evaluating the admissibility of Mr. Abella's testimony.

**APPENDIX A: Joint Government Trial Witness Time Estimate Form**

UNITED STATES OF AMERICA v. YASIEL PUIG VALDES

No. 2:22-CR-394(A)-DMG                                    January 20, 2026

Case                                                     Trial Date

| | WITNESS NAME | PARTY CALLING WITNESS AND TIME ESTIMATE | CROSS-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1. | Christen Seymour IRS-CI Special Agent | Government 4 hours | Defense 3 hours | Defendant's January 27, 2022 Interview and post-interview investigation; authentication of exhibits | |
| 2. | Jason Canty HSI Special Agent | Government 3 hours | Defense 3 hours | Defendant's January 27, 2022 Interview and pre-interview investigation; authentication of exhibits | |
| 3. | Esther Hermida Spanish Interpreter | Government 30 minutes | Defense 30 minutes | Defendant's January 27, 2022 Interview | |
| 4. | L. Michael Zogby Spanish Interpreter | Government 30 minutes | Defense 15 minutes | Authentication of Spanish translation exhibits | |
| 5. | Donny Kadokawa | Government 4 hours | Defense 3 hours | Relationship with defendant; defendant's involvement with the Nix gambling operation | |
| 6. | Benny Bonilla | Government 3 hours | Defense 2 hours | Relationship with defendant; defendant's involvement with the Nix gambling operation | |
| 7. | Dan Soto | Government 1 hour | Defense 1 hour | Authentication of Sand Island Sports business | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | records and explanation of Sand Island Sports' role in illegal gambling operations | |
| 8. | Jesus Quiñonez | Government 45 minutes | Defense 20 minutes | Spanish translation of MLB Rule 21 to Los Angeles Dodgers in | |
| 9. | Julio Morillo | Government 45 minutes | Defense 20 minutes | Spanish translation of MLB Rule 21 to Cincinnati Reds in | |
| 10. | Marquest Meeks | Government 1.5 hours | Defense 45 minutes | MLB Rule 21 policies and procedures | |
| 11. | Jose Lopez USCIS Officer | Government 1.5 hours | Defense 1 hour | Defendant's 2019 naturalization proceedings | |
| 12. | David Parker HSI Special Agent | Government 30 minutes | Defense 15 minutes | Extraction of Wayne Nix's cell phone | |
| 13. | Nshan Tashchyan IRS-CI Special Agent | Government 30 minutes | Defense 15 minutes | Extraction of Benny Bonilla's cell phone | |
| 14. | Cesar Murillas | Government 30 minutes | Defense 20 minutes | IP Addresses assigned to MLB ball parks | |
| 15. | Jennifer Chatman | Government 30 minutes | Defense 20 minutes | Bank of America's process for issuing cashier's checks | |
| 16. | Dr. Marcel Pontón, Psychiatrist | Government 2 hours | Defense 1.5 hours | Evaluation of defendant; evaluation of Dr. Suarez's testimony and expert report | Rebuttal |
| | **TOTAL ESTIMATE ALL GOVERNMENT WITNESSES:** | Approx. 24.5 hours | Approx. 18 hours | | |