Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
Viviana Andazola Marquez (Bar No. 354307)
  vandazolamarquez@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Brian Klein (Bar No. 258486)
  bklein@cooley.com
Chip Harrison (Bar No. 313028)
  charrison@cooley.com
COOLEY LLP
355 S. Grand Avenue, Suite 900
Los Angeles, CA 90071-1560
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

*Attorneys for Defendant*
*Yasiel Puig Valdes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-394-DMG |
| Plaintiff, | **DEFENDANT YASIEL PUIG'S OFFER OF PROOF WITH RESPECT TO THE TESTIMONY OF JEFF MITCHELL** |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

1    On January 19, 2026, the government filed a "Motion to Quash Defendant

2 Yasiel Puig's Subpoena for the Testimony of AUSA Jeff Mitchell." (Dkt. No. 304).

3 The following day, before jury selection commenced, this Court ordered the defense

4 to provide an offer of proof regarding Mr. Mitchell's anticipated testimony.   In

5 accordance with this Court's order, Yasiel Puig submits the following offer of proof.

6                              **OFFER OF PROOF**

7    The defense has subpoenaed Mr. Mitchell to testify in its case-in-chief.  Mr.

8 Mitchell was an Assistant United States Attorney in this District who was previously

9 assigned to this case.  He is a percipient witness to government's January 27, 2022

10 interview of Puig that is at the core of the government's prosecution.  He also had

11 substantive communications with Puig's prior counsel before and after that interview.

12    Before addressing the specifics of Mr. Mitchell's proposed testimony, the

13 defense wants to raise two points:

14    First, the defense will *not* seek to elicit any testimony from Mr. Mitchell

15 covered by the attorney-client privilege.  It will only ask about events he participated

16 in personally that involved third parties.  So, for example, the defense will not ask Mr.

17 Mitchell about internal communications he had with the other prosecutors at the U.S.

18 Attorney's Office, including Daniel Boyle, the other prosecutor who previously

19 worked on this case.

20    Second, because Mr. Mitchell is no longer a prosecutor on this case, calling

21 him does not implicate any of the typical concerns inherent with calling a *current* case

22 prosecutor as a witness.  *See, e.g., United States v. Tamura*, 694 F.2d 591, 601 (9th

23 Cir. 1982) ("The federal courts have universally condemned the practice of a

24 government prosecutor's testifying at a trial *in which he is participating*; such

25 testimony is permitted only if required by a compelling need.") (emphasis added).

26 Because the advocate-witness rule applies only to cases where the witness would

27 appear "as both a witness and an advocate *in the same litigation*," there is no issue

28 with Mr. Mitchell testifying in this matter as a percipient witness, since he is no longer

1    working on this case.  *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985)

2    (emphasis added).

3         With those important caveats, the defense expects that Mr. Mitchell, if called,

4    would testify about the following topics:

- Mr. Mitchell would testify about communications he had with Puig's prior attorneys leading up to the January 27, 2022 interview.  According to emails produced in discovery and Mr. Mitchell's February 22, 2023 declaration, Mr. Mitchell, would testify that (1) prior to the interview, he told Mr. Puig's counsel that Puig was not a target of the investigation; (2) he informed Puig's counsel that placing personal bets with an unlawful sports gambling business was not a federal crime; (3) he provided Puig with a proffer letter; and (4) he knew Puig spoke a unique dialect of Spanish and would require an interpreter.  This information is relevant to establish what Puig understood going into the interview and is therefore relevant to a host of issues going to Puig's *mens rea*, including whether he had sufficient context to understand what was being asked of him during the interview.

- Mr. Mitchell would testify about what, in fact, occurred during the January 27, 2022 interview, including his active participation in it. According to Special Agent Jason Canty's Report of the Interview ("ROI"), during the interview Mr. Mitchell: (1) introduced the parties, (2) provided information regarding whether the meeting would be kept confidential; (3) admonished Puig that lying is a crime; and (4) instructed SA Canty to admonish Puig with respect to the specific statutes governing false statements.  Mr. Mitchell also instructed Puig on his alternative to proceed before a grand jury and, at one point, stopped the meeting to have an off-the-record conversation with Puig's attorneys. Mr. Mitchell's direct involvement in conducting this interview, as well

2

as his unique knowledge of what was said during off-the-record conversations with counsel, is critical to Puig's defense.

- Mr. Mitchell will testify as to how the ROI was prepared, which is a key fact in this case. According to emails produced in discovery, following the January 27, 2022 interview, Mr. Mitchell organized a call with the two agents at the interview (SA Canty and IRS-CI Special Agent Chris Seymour) to discuss the draft ROI that SA Canty had emailed him. In that same email exchange, SA Canty let Mr. Mitchell know that he could forward it to the interpreter to get her confirmation. (As far as the defense knows, this was never done.) The subsequent drafts of the ROI reflect that material changes were made, which potentially indicates that Mr. Mitchell's personal input and recollections may have impacted the final ROI that SA Canty prepared.

Given the importance of the ROI to the charges brought against Puig, defense counsel is plainly entitled to the benefit of Mr. Mitchell's testimony on these issues. Denying the defense the opportunity to call and examine Mr. Mitchell will severely prejudice the defense to the significant benefit of the government. Of the seven people at the January 27, 2022 interview other than Puig, the government intends to call three as part of its case-in-chief: the two agents (SAs Canty and Seymour) and the government's interpreter (Esther Hermida). The defense has similarly subpoenaed three of those individuals: Puig's two prior attorneys (Scott Lesowitz and Steven Gebelin) and Mr. Mitchell.[1] The government has had the unilateral ability to call the percipient witnesses of its choosing. Depriving the defense of the same ability is fundamentally prejudicial, particularly given the centrality of Mr. Mitchell to the facts at issue.

---

[1] Neither side intends to call the other former prosecutor, Daniel Boyle.

1    The government's argument that Mr. Mitchell's testimony would be
2  cumulative is simply wrong.  (*See* Dkt. 304 at 3-4.)   A court's decision to allow
3  multiple witnesses to testify about different aspects of the facts at issue does not lead
4  to cumulative witness testimony where "each [witness] provided independent and
5  valuable corroborating evidence."  *United States v. Henry*, 560 F.2d 963, 965-966
6  (9th Cir. 1977).  That is precisely the case here.  Further, the defense has not yet
7  decided who it will in fact call.  It could decide to call any or all of the three witnesses
8  it has subpoenaed.

9    Next, the government's opposition suggests that Mr. Mitchell's testimony is
10 not relevant because he previously submitted a declaration regarding the interview on
11 January 27, 2022 that is consistent with the expected testimony of SA Canty. (*See*
12 Dkt. 304. At 4).  But Mr. Mitchell's declaration itself lays out additional facts not
13 contained in the ROI, including Mr. Mitchell's off-the-record statements to Puig's
14 lawyers that he personally believed Puig was lying.  These admonitions and Mr.
15 Mitchell's decision to terminate the interview without providing Puig an opportunity
16 to correct any alleged false statements are key issues going to falsity and materiality.

17    Moreover, since SAs Canty and Seymour and Hermida have not testified, it
18 cannot be said that his testimony would not be inconsistent with SA Canty's or the
19 others.  The testimony of SA Canty, SA Seymour, and Ms. Hermida may reflect
20 additional inconsistencies that require the testimony of Mr. Mitchell to reconcile.  It
21 is prejudicial to the defense to restrict its access to a percipient witness without
22 understanding the full scope of the government's case in chief.

23    At a minimum, this Court should defer ruling on the enforceability of the
24 subpoena until the close of the government's case-in-chief. Once the Court rules, the
25 defense will look into paying his basic travel expenses.[2]

26

27

28
_____
[2] Of course, as with any witness, the defense would give Mr. Mitchell the courtesy
of ate least 24 hours' notice.

For all these reasons, this Court should permit the defense to call Mr. Mitchell to testify in its case in chief.

DATED:  January 22, 2026          COOLEY LLP

By:  /s/ Brian Klein
     Brian Klein
     *Attorneys for Defendant Yasiel Puig Valdes*

5