Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
Viviana Andazola Marquez (Bar No. 354307)
  vandazolamarquez@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Brian Klein (Bar No. 258486)
  bklein@cooley.com
Chip Harrison (Bar No. 313028)
  charrison@cooley.com
COOLEY LLP
355 S. Grand Avenue, Suite 900
Los Angeles, California 90071-1560
Telephone: (213) 561-3250
Facsimile: (213) 561-3244

*Attorneys for Defendant*
*Yasiel Puig Valdes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> YASIEL PUIG VALDES, <br><br> Defendant. | Case No. CR 22-394-DMG <br><br> **DEFENDANT YASIEL PUIG'S REPLY IN SUPPORT OF TRIAL BRIEF TO EXCLUDE UNAUTHENTICATED VIDEO EVIDENCE** |

Yasiel Puig submits the following reply in support of his trial brief to make three brief points in response to the government's opposition. (*See* Dkt. Nos. 330 (Def't), 333 (Gov't).

***First***, the government's opposition fails to address Puig's argument that its late-disclosed videos violate Federal Rule of Criminal Procedure 16. This alone warrants excluding the evidence without reaching the authentication issue. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (a party effectively concedes an argument by failing to address it in opposition).

Both videos are the defendant's "relevant written or recorded statement(s)" within the government's "possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(B)(i). They are also statements the government knew, or "through due diligence could [have] know[n]," existed well before trial. *Id.* That is particularly true since the government, not the defense, has directly put Mr. Puig's language abilities at issue from the outset. This started with the government's opening—before the defense had opened or cross-examined one witness—when government counsel stated: "You're going to see throughout this trial that the defendant speaks English, but the [g]overnment hired a Spanish interpreter of Cuban descent to ensure that nothing was lost in translation." (Day 1 Tr., 4:21-24). During the direct examination of its first witness, Donny Kadokawa, the government again put Puig's English proficiency at issue:

> **Q.** What language did you communicate in when you were communicating with Mr. Puig?
> **A.** English.
> **Q.** And when you communicated in English, were you under the impression that the defendant understood what you were saying?
> **A.** Yes.
> **Q.** And why were you under that impression?
> **A.** Because every time we talked, you know, he could answer the questions and that's pretty much how we spoke, in English.

(Day 2 Tr., 11:11-23 (objection omitted)).

In other words, the government knew it intended to put on evidence of Puig's English language ability before the trial started. And because the videos the government now purports to offer go *only* to the issue of Puig's English, these recorded statements are "relevant" within the meaning of Rule 16(b) and therefore should have been disclosed well in advance, not after the first week of trial. *See United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982) ("Where the [g]overnment is in doubt, the written or recorded statement should be disclosed, if a proper request is made.").

The Ninth Circuit has repeatedly recognized that a "defendant's statements . . . are deemed vital to the defense," which is precisely why Rule 16 mandates early disclosure of such statements, either oral, written, or recorded. *United States v. Mills*, 641 F.2d 785, 790 (9th Cir. 1981). Had the defense been provided with these videos in advance of trial, it could have properly responded to them by, for example, searching for outtakes or clipped portions where Puig's English might have been worse, or examined them for rule of completeness issues. The defense may have also called an expert to analyze his English abilities, which it now has no ability or time to do. The prejudice to the defense from this late disclosure is significant, and the videos should be excluded on that basis alone.

***Second***, the case law the government relied on regarding authentication is readily distinguishable and does not change the fundamental problem with its argument: that Agent Seymour is an inadequate witness to authenticate these videos. Agent Seymour is not a "witness with knowledge" within the meaning of Federal Rule of Evidence 901(b); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (discussing authentication under 901(b)). Agent Seymour has no knowledge regarding the provenance of these videos, including whether they may have been edited or manipulated prior to uploading, or any other details that would allow him to authenticate them. The government knows how to properly authenticate video evidence. Indeed, it has done so with other video evidence in this case, including

clips of MLB games, for which it obtained proper custodial declarations from the sites that created and maintained those clips. (*See* Exs. 165-170). It should be held to the same standard here.

The case the government relies on in support of its authentication argument, *United States v. Ehmer*, 87 F.4th 1073 (9th Cir. 2023), is readily distinguishable. There, the government first attempted to subpoena the broadcasting station that sponsored the interview at issue so that the broadcasting station could authenticate the recording. *Id.* at 1122. The subpoena was quashed on First Amendment grounds. *Id.* Further complicating the situation, the broadcasting station also lost other copies of the recording, and the interview participant himself was unable to authenticate the recording because of Fifth Amendment self-incrimination concerns. *Id.* Only against this backdrop did the district court allow the document to be authenticated through an FBI agent. *Id.* That is, of course, far from the case here. The government has not even *attempted* to subpoena the custodians of the original recordings. Instead, it has jumped straight to what *Ehmer* suggested was a tactic of last resort: authentication via a government agent. That is impermissible.

***Finally***, as today's trial testimony made clear, the admission of these videos presents serious issues under Federal Rule of Evidence 403, not only as to unfair prejudice but also as to cumulativeness. The jury has now heard from at least *seven* government witnesses regarding Puig's English. It has heard about this topic from former associates (Kadokawa and Bonilla), from an immigration official (Lopez), from MLB interpreters (Morillo and Quiñonez), and from government agents (Zayas and Donies). The defense has never disputed that Puig speaks some degree of English, and the government's insistence on further proving this point through unauthenticated, questionable video evidence is cumulative, prejudicial, and unnecessary. It should be excluded under Rule 403.

DATED: January 27, 2026                  COOLEY LLP

                                         By: /s/ *Brian Klein*
                                         Brian Klein
                                         *Attorneys for Defendant Yasiel Puig Valdes*