LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (SBN 151990)
    Email:    bfreedman@lftcllp.com
Ellyn S. Garofalo (SBN 158795)
    Email:    egarofalo@lftcllp.com
Amir Kaltgrad (SBN 252399)
    Email:    akaltgrad@lftcllp.com
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

*Attorneys for non-party Daniel Horwits*

FILED
2026 FEB 24  PM 4:01
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> YASIEL PUIG VALDES, <br><br> Defendant. | Case No. CR 22-394-DMG <br><br> **NON-PARTY DANIEL HORWITS'S RESPONSE TO ORDER RE: HEARING ON ORDER TO SHOW CAUSE WHY CONTEMPT SANCTIONS SHOULD NOT ISSUE** |

485493.1

# Table of Contents

| | | Page |
|---|---|---|
| I. | INTRODUCTORY STATEMENT | 5 |
| II. | FACTUAL BACKGROUND | 6 |
| III. | LEGAL STANDARD | 8 |
| IV. | MR. HORWITS CANNOT BE HELD IN CRIMINAL OR CIVIL CONTEMPT | 9 |
| V. | MR. HORWITS HAS ADDITIONALLY SHOWN ADEQUATE REASONS FOR NOT APPEARING UNTIL 11:00 AM ON FEBRUARY 4, 2026 | 11 |
| VI. | THE SUBPOENAS ARE IMPROPER | 12 |
| | A. The Subpoenas are Unreasonable and Oppressive | 12 |
| | B. Defendant's Trial Subpoenas Improperly Seek Discovery as Part of a Fishing Expedition | 13 |
| VII. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gompers v. Buck's Stove & Range Co.*,
   221 U.S. 418 (1911) ..................................................................................... 9

*Maggio v. Zeitz*,
   333 U.S. 56 (1948) ..................................................................................... 10

*Marquis v. Iaria*,
   No. 07-CV-730 W (POR), 2010 WL 11530777, at *6 (S.D. Cal. Feb.
   23, 2010) .............................................................................................. 8, 11

*Shillitani v. United States*,
   384 U.S. 364 (1966) ................................................................................ 9, 10

*U.S.A. v. Alejandro*,
   No. 2:16-CR-0833-CAS, 2017 WL 2056019 (C.D. Cal. May 8, 2017) ......... 12

*U.S.A. v. Omidi*,
   No. CR 17-661(A)-DMG, 2021 WL 7629899 (C.D. Cal. May 20, 2021) ...... 12

*United States v. Carvin*,
   555 F.2d 1303 (5th Cir. 1977) ..................................................................... 13

*United States v. Cederquist*,
   641 F.2d 1347 (9th Cir. 1981) ...................................................................... 8

*United States v. Jones*,
   487 F.2d 676 (9th Cir. 1973) ....................................................................... 13

*United States v. Kaneshiro*,
   No. 1:22-CR-00048-TMB-NC, 2024 WL 1142673 (D. Haw. Mar. 15,
   2024) ......................................................................................................... 8

*United States v. Komisaruk*,
   885 F.2d 490 (9th Cir. 1989) ....................................................................... 12

*United States v. Nixon*,
   418 U.S. 683 (1974) .................................................................................... 12

*United States v. Reed*,
   726 F.2d 570 (9th Cir. 1984) ....................................................................... 12

*United States v. Washington*,
  No. 216CR00279JADPAL, 2018 WL 3872129 (D. Nev. June 1, 2018) .................8, 11

**Other Authorities**

Fed. R. Crim. P. 17................................................................................................12

Fed. R. Crim. P. 17(c)(2) ......................................................................................12

Fed. R. Crim. P. 17(g)............................................................................................8

Fed. R. Crim. P. 42(a) ...........................................................................................9

Pursuant to the Court's February 4, 2026 Order Re: Hearing on Order to Show Cause Why Contempt Sanctions Should Not Issue, which was not served on counsel for non-party Daniel Horwits until 1:28 p.m. on Monday, February 23, 2026, Mr. Horwits responds as follows.

I.  **INTRODUCTORY STATEMENT**

At 5:55 p.m., on Saturday, January 30, 2026, shortly after the Court issued an order permitting substitute service, Defendant Yasiel Puig Valdes emailed trial subpoenas to non-parties Beverly Hills Sports Council, Inc. ("BHSC") and Daniel Horwits who resides in Texas to appear at trial on February 3, 2026. According to Defendant's application for substitute service, Defendant did not attempt to serve Mr. Horwits prior to trial which commenced on January 20, 2026 but made a first attempt to personally serve him on January 21, 2026. Mr. Horwits was not unknown to Defendant as he had been interviewed by the government and had provided documents, including his text messages with Defendant, long before trial commenced.

The subpoena directed to Mr. Horwits sought his personal appearance at trial and the production of documents relating to 2019 communications between Mr. Puig and Mr. Horwits concerning Mr. Puig's gambling activities with Tradewinds, an online gambling internet service.[1] On February 3, Mr. Puig's counsel made an oral motion for contempt which the Court granted, compelling Mr. Horwits to appear at 8:30 a.m. on February 4 to show cause why he should not be held in contempt. However, negotiations between Mr. Puig and Mr. Horwits' counsel focused on potential alternatives for Mr. Horwits' personal appearance, such as a stipulation to admit the text messages or the appearance of BHSC's custodian of records to authenticate the text messages. At several points on February 3, it

---

[1] BHSC was not a sender or recipient of the requested text messages and there is no indication that Mr. Horwits was acting on behalf of BHSC or that BHSC had any involvement in the exchanges between Mr. Horwits and Mr. Puig.

appeared that the parties had reached a consensus. The discussions continued until approximately 10 p.m. on February 3 when Mr. Horwits concluded that the best course was to fly from his Houston area home to Los Angeles to appear on February 4. Given the late hour, Mr. Horwits was unable to book a flight until the next morning. BHSC's custodian appeared at the appointed time with the text messages which were provided to Mr. Puig's counsel. Mr. Horwits appeared at approximately 11 a.m. on February 4 but was not called as a witness.

As shown below, the Court should decline to find Mr. Horwits in criminal or civil contempt and discharge the order to show cause for the following reasons: (1) civil, not criminal contempt, is the proper remedy for a failure to comply with a subpoena; (2) civil contempt is not available where, as here, the contempt is no longer effective to coerce compliance; (3) there is good cause for Mr. Horwits' late appearance on February 4; and (4) the subpoenas were improper in the first instance.

## II. FACTUAL BACKGROUND

On February 3, 2026, following e-mail service of the subpoenas less than three days prior, Defendant brought an oral motion for contempt sanctions against Mr. Horwits and the Court issued an order to show cause. The order provided "not later than **February 4, 2026** at 8:30 a.m., Horwits shall show cause why he should not be held in contempt of court for his failure to comply with the trial subpoenas in this action. Alternatively, *this order to show cause will be discharged* if at this date and time, he appears in Courtroom 8C of the First Street Courthouse in the Central District of California at that same date and time to testify pursuant to the trial subpoenas in this action." (emphasis added).

On February 3, 2026, counsel for Mr. Horwits had extensive discussions with counsel about alternatives for Mr. Horwits' appearance including a stipulation for authentication of text messages between Mr. Puig and Mr. Horwits and, when the Court rejected the stipulation, the appearance of BHSC's custodian of records

at 9:00 a.m. on February 4th to authenticate the text messages. However, at approximately 9:00 p.m. on February 3rd, Defendant's other counsel contacted counsel for Mr. Horwits and indicated a custodian of records would not be acceptable as an alternative to Mr. Horwits' testimony. Given the late hour, Mr. Horwits was unable to arrange travel to Los Angeles until early on February 4, 2026.

At the hearing regarding the OSC re: Contempt, counsel for Mr. Horwits appeared to show cause why Mr. Horwits should not be held in contempt, as required by the Court's February 3rd order, and to update the Court on Mr. Horwits' anticipated arrival time. BHSC's custodian of records also arrived at 8:30 a.m. with the requested text messages and to offer testimony, if required. Although Mr. Horwits was scheduled to land in Los Angeles at approximately 10:10 a.m., Defendant's counsel reversed course and stated Defendant wished to call BHSC's custodian of records instead of Mr. Horwits. The government objected to the presentation of evidence through the custodian of records and the parties were ordered to meet and confer regarding exhibits to be used during Mr. Horwits' examination when he arrived.

Mr. Horwits arrived at the Courthouse at approximately 11:00 a.m. on February 4, 2026. Counsel for Mr. Horwits promptly informed both counsel for Defendant and the Court that he had arrived. However, Defendant elected not to call Mr. Horwits as a witness. The Court specifically found Mr. Horwits' arrival at 11:00 a.m. did not prejudice Defendant due to his decision not to call Mr. Horwits as a witness and ordered Defendant pay the cost of Mr. Horwits' travel and attorneys' fees for appearance at Court. The Court excused both Mr. Horwits and the custodian of records following Defendant's decision. The Court also ordered Mr. Horwits to return at 10:00 a.m. on March 10, 2026 for a continuation of the hearing on the order to show cause re: contempt for failure to comply with the subpoena.

As Mr. Horwits' counsel had not made a formal appearance, the Court ordered Defendant to provide notice of the Court's order to Mr. Horwits' counsel. On February 23, 2026 at 1:28 p.m., Defendant's counsel sent an email to Mr. Horwits' counsel stating, "We were directed to serve the attached order on the OSC re Contempt for Mr. Horwits on his counsel and realized we have not yet done so; it is being served now through this email. You or Amir may have been in Court when the Court set these deadlines but we are unsure. If you anticipate that the dates or briefing deadlines in the attached present any issues, we are happy to stip to move these dates out. Let us know." The email attached the Court's criminal minutes which noted that Mr. Horwits may file a brief in response to the order by February 24, 2026. Mr. Horwits was unaware of the deadline to file briefing until counsel received the February 23, 2026 email at 1:28 p.m.

### III. LEGAL STANDARD

Federal Rule of Criminal Procedure 17(g) allows a Court, in its discretion, to hold a witness in contempt for disobeying a subpoena unless the witness provides an "adequate excuse." Fed. R. Crim. P. 17(g). The Court may consider the "equities of the situation" in exercising its discretion. *Marquis v. Iaria*, No. 07-CV-730 W (POR), 2010 WL 11530777, at *6 (S.D. Cal. Feb. 23, 2010). Prior to issuing contempt citations, courts generally first order the witness to comply with the subpoena. *United States v. Kaneshiro*, No. 1:22-CR-00048-TMB-NC, 2024 WL 1142673, at *2 (D. Haw. Mar. 15, 2024) (citing 2013 Advisory Committee Notes to Fed. R. Civ. P. 45(g)). In addition, "before a person can be found in contempt, it must be shown that he had the ability to comply with the subpoena." *United States v. Cederquist*, 641 F.2d 1347, 1352 (9th Cir. 1981); *United States v. Washington*, No. 216CR00279JADPAL, 2018 WL 3872129, at *2 (D. Nev. June 1, 2018) (denying motion to issue contempt sanctions where defendant did not show witnesses ability to comply with subpoena.).

Criminal contempt pursuant to Federal Rule of Criminal Procedure 42(a) is employed to punish noncompliance whereas civil contempt proceedings serve to coerce compliance. *Shillitani v. United States*, 384 U.S. 364, 369 (1966); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911) ("It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment Is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court."). Where contempt is imposed because a witness refuses to testify with the proviso that the contempt will be vacated if the witness does testify, the contempt is civil in nature and must be vacated where the witness has no ability to remedy the conduct. *Shillitani*, 384 U.S. at 371-72.

### IV. MR. HORWITS CANNOT BE HELD IN CRIMINAL OR CIVIL CONTEMPT

The Supreme Court has distinguished civil and criminal contempt by asking "what does the court primarily seek to accomplish by imposing sentence?" *Shillitani*, 384 U.S. at 370. Where the goal is to "obtain answers" to questions in a judicial proceeding, the nature of contempt is civil. *Id.* Where contempt proceedings are "clearly intended to operate in a prospective manner—to coerce, rather than punish... they relate to civil contempt." *Id.* The fact that a District Court may refer to the conduct as criminal contempt does not control the nature of the proceedings. *Id.* at 369. Finally, where civil contempt can no longer be remedied, the Court lacks the power to impose contempt sanctions on a noncompliant witness. *Id.* at 371.

*Shillitani v. United States* is instructive. There, two witnesses refused to testify before a grand jury and the Court convicted both of criminal contempt "with the proviso that if either answered the questions before his sentence ended, he would be released." *Id.* at 365. On appeal, the Supreme Court found that "the

character and purpose of these actions clearly render them civil rather than criminal contempt proceedings" because the convictions "imposed conditional imprisonment for the obvious purpose of compelling the witnesses to obey the orders to testify. When the petitioners carry 'the keys of their prison in their own pockets,' the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.'" *Id.* at 368 (internal citation omitted).

"[C]oercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order." *Id.* at 371. The trial court must weigh "the evidence properly before it in the contempt proceeding in determining whether or not there is actually a present ability to comply." *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948). Once a judicial proceeding has ended, "a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt." *Shillitani*, 384 U.S. at 371. Where contempt orders seek to coerce certain conduct, the contempt is civil in nature and Courts lack authority to impose sentences for a period longer than the ability to comply. *Id.*

The Court's February 3, 2026 order required Mr. Horwits to show cause why he should not be held in contempt of court for failing to obey the subpoenas directed to him, with the proviso that the order to show cause would be discharged if he appeared to testify. The order was meant to coerce Mr. Horwits to appear, rather than to punish him, consistent with civil contempt. As Mr. Horwits can no longer purge himself of contempt because the trial has ended, the Court lacks authority to impose contempt sanctions and the Order to Show Cause should be discharged. *Shillitani*, 384 U.S. at 371.

### V. MR. HORWITS HAS ADDITIONALLY SHOWN ADEQUATE REASONS FOR NOT APPEARING UNTIL 11:00 AM ON FEBRUARY 4, 2026

Mr. Horwits resides in Texas – a fact known to Defendant as evidenced by his motion for substitute service. The January 30, 2026 subpoenas commanded Mr. Horwits to appear in Court on February 3, 2026, providing less than three days notice for him to gather the documents requested by the subpoena and secure legal counsel, travel, and hotel arrangements. Defendant has made no effort to show that Mr. Horwits was able to comply with the subpoenas on such short notice, a requirement for the issuance of contempt sanctions. *Washington*, 2018 WL 3872129 at *2. As Defendant is aware, Mr. Horwits is an agent for some of Major League Baseball's top players. The period between late January and early February is set aside for arbitration hearings related to contracts between team owners and major league players, and Mr. Horwits is heavily involved in the process.

Moreover, on the afternoon of February 3, 2026, Defendant initially agreed to call BHSC's custodian of records to testify in lieu of Mr. Horwits. Only after Defendant reversed course at 9:00 p.m. on February 3, 2026 was Mr. Horwits placed on notice that Defendant still wanted to call him to testify at trial. Based on this new information Mr. Horwits boarded a plane early in the morning on February 4, 2026 and arrived at the courthouse at approximately 11:00 a.m. only to be turned away when Defendant decided not to call him as a witness.

Given the "equities of the situation", Defendant's failure to show Mr. Horwits's ability to comply, Mr. Horwits's adequate excuse for not appearing in Court over a thousand miles away on barely more than two days' notice, and the lack of any prejudice to Defendant, the Court should decline to issue contempt sanctions. *See Marquis*, 2010 WL 11530777, at *6.

## VI. THE SUBPOENAS ARE IMPROPER

Additionally, the Court may deny Defendant's request for sanctions because the subpoenas were improper. A party seeking to procure evidence pursuant to a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *U.S.A. v. Omidi*, No. CR 17-661(A)-DMG, 2021 WL 7629899, at *2 (C.D. Cal. May 20, 2021). "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also United States v. Komisaruk*, 885 F.2d 490, 495 (9th Cir. 1989) ("A court is justified in quashing a subpoena *duces tecum* if production would be immaterial, unreasonable, oppressive and irrelevant.").

To compel production of documents pursuant to a Rule 17 subpoena, "the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700; *see also U.S.A. v. Alejandro*, No. 2:16-CR-0833-CAS, 2017 WL 2056019, at *2 (C.D. Cal. May 8, 2017) ("Because Rule 17(c) was not intended to 'provide a means of discovery for criminal cases,' the subpoena must not constitute a general 'fishing expedition.'"). "Enforcing or quashing Rule 17(c) subpoenas is within the discretion of the trial judge and will not be disturbed unless clearly arbitrary or without support in the record." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (*citing inter alia Nixon*, 418 U.S. at 702).

### A. The Subpoenas are Unreasonable and Oppressive

As noted, Defendant first attempted to serve Mr. Horwits in Texas with a trial subpoena on January 21, 2026. After several attempts to serve Mr. Horwits,

NON-PARTY DANIEL HORWITS'S RESPONSE TO OSC

485493.1

Defendant moved for leave to effect substitute service. The Court granted the request on January 30, 2026 and Defendant served Mr. Horwits by email at 5:55 p.m. on the same date. The subpoena directed Mr. Horwits to appear to testify and produce documents in California on Tuesday, February 3, 2026, two days after service. Notice of less than 72 hours for a witness to travel to California, as well as to search and locate documents demanded by the subpoena is unreasonable on its face. In fact, it is undisputed that Defendant has known about Mr. Horwits and his communications with Defendant for years while the investigation was pending.

Courts have quashed subpoenas where a party waited until the day of trial to subpoena witnesses. *See, e.g., United States v. Carvin*, 555 F.2d 1303, 1305 (5th Cir. 1977) (finding "appellant has no ground to complain that the trial court quashed his subpoena" when he "waited until the morning of the trial to subpoena" the witness.). Other Courts, including the Ninth Circuit, have refused to issue a subpoena at all where the defendant waited until trial had commenced. *See United States v. Jones*, 487 F.2d 676, 679 (9th Cir. 1973) ("A trial court need not order a subpoena of a witness where there is inexcusable delay in the request for the order.").

Moreover, Defendant apparently only sought Mr. Horwits' testimony to lay the foundation for text messages they already had. Defendant had apparently already stipulated with the prosecution to the translation of a certain version of the text messages but failed to seek the prosecution's agreement to the version on which he sought to examine Mr. Horwits until the morning of February 4, 2026. Had Defendant timely stipulated to the translation of the few text messages he sought to introduce, he may not have needed Mr. Horwits' testimony at all.

    **B.**     **Defendant's Trial Subpoenas Improperly Seek Discovery as Part of a Fishing Expedition**

As a party to the purportedly relevant text messages, Defendant knew that knew that Mr. Horwits was a potential witness since at least 2019. Moreover,

Defendant knew that Mr. Horwits had been interviewed by prosecutors during the lengthy investigation of this case. If the text messages were indeed relevant to Mr. Puig's defense, he had ample time to serve subpoenas during pretrial proceedings. It was Defendant's choice to delay until after the commencement of trial. Given these facts, Defendant's attempt to subpoena Horwits to appear and testify at trial, as well as search for and produce documents raises the specter that is nothing more than an improper fishing expedition to obtain discovery which he should have conducted long ago. Trial subpoenas may not be used as a means of obtaining discovery. Further, Defendant cannot show that the categories of documents belatedly sought in the subpoena were not otherwise procurable reasonably in advance of trial by exercise of due diligence and cannot show that the subpoena is not intended as a fishing expedition.

## VII. CONCLUSION

For the foregoing reasons, the Court should discharge the Order to Show Cause without any further proceedings.

Dated: February 24, 2026

LINER FREEDMAN TAITELMAN + COOLEY, LLP

By: /s/ Ellyn S. Garofalo
Bryan J. Freedman
Ellyn S. Garofalo
Amir Kaltgrad
Attorneys for non-party DANIEL HORWITS