TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
MICHAEL J. MORSE (Cal. Bar No. 291763)
LAURA A. ALEXANDER (Cal. Bar No. 313212)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0304/7367/1019
    Facsimile: (213) 894-0141
    Email:    juan.rodriguez@usdoj.gov
                michael.morse@usdoj.gov
                laura.alexander@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-00394-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE RE: COURT'S ORDER FOR NON-PARTY DANIEL HORWITS TO SHOW CAUSE AS TO WHY CONTEMPT SANCTIONS SHOULD NOT ISSUE |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorneys Juan M. Rodriguez, Michael J. Morse, and Laura A. Alexander, hereby files its Response to Court's Order to Show Cause as To Why Contempt Sanctions Should Not Issue For Non-Party Daniel Horwits.

1   This Response¹ is based upon the attached memorandum of points
2   and authorities, the files and records in this case, and such further
3   evidence and argument as the Court may permit.

5   Dated:  March 7, 2026          Respectfully submitted,

                                   TODD BLANCHE
                                   Deputy Attorney General

                                   BILAL A. ESSAYLI
                                   First Assistant United States
                                   Attorney

                                   ALEXANDER B. SCHWAB
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division


                                          /s/
                                   ─────────────────────────────
                                   JUAN M. RODRIGUEZ
                                   LAURA A. ALEXANDER
                                   MICHAEL J. MORSE
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

---

¹ The government did not intend to file a response to the Order to Show Cause (Dkt. 381); however, after reviewing defendant's response (Dkt. 428), the government must correct the record on various claims made by defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

At trial, defense counsel repeatedly represented that they sought the testimony of Daniel Horwits, defendant's former sports agent; that Mr. Horwits had evaded subpoena service; and that text messages between Mr. Horwits and the defendant were admissible with or without Mr. Horwits' testimony.  Defense counsel even accused the government of trying to keep Mr. Horwits off the stand so that defendant could not present his case.  (See Dkt. 406, Tr. Feb. 3, 2026, at p. 135, lines 23-25; p. 136, lines 1-3 (of course, Your honor.  [The government's] goal is to keep Mr. Horowitz off, so we can't present this aspect of our defense").)

After the Court ruled that the text messages were admissible, but only through testimony of Mr. Horwits, defense counsel presented the government and the Court with a declaration, claiming "we -- his --I think his lawyers are hoping that a declaration would obviate the need for this testimony," and that such a declaration, as opposed to Mr. Horwits's testimony, would "make this move faster."  (Id. p. 268, lines 9-25; p. 269, lines 1-13 (emphasis added).)  But after that didn't work, and Mr. Horwits actually appeared in court the next day, it became clear that the defense team wanted a declaration instead of Mr. Horwits' testimony to avoid cross examination of Mr. Horwits by the government.  Defense counsel declined to call Mr. Horwits, even as he sat in court after flying from Texas to avoid federal contempt, and after Mr. Horwits was the subject of national media articles reporting on his attempts to "evade" service and the possibility of his contempt.

On this record, it is clear defendant never intended to call Mr. Horwits as a witness, which resulted in wasted court time and delayed trial proceedings and needlessly forced Mr. Horwits to incur travel expenses, legal fees, and negative national news publicity.  The government respectfully requests that the Court consider these facts when determining whether to: (1) impose contempt sanctions on Mr. Horwits and (2) exercise its discretion to order defendant to pay Mr. Horwitz's attorney's fees and costs.

## II. RELEVANT FACTUAL BACKGROUND

Mr. Horwits is an American sports agent, certified by the Major League Baseball Players Association.  He is a partner at Beverly Hills Sports Council and represents a number of professional athletes.  Mr. Horwits served as defendant's agent beginning in April 2018, and continued in that role through the time period relevant to this case.

In 2022, after defendant lied to federal agents about his involvement with Wayne Nix's gambling business, defendant offered to cooperate with the government when he realized his indictment was imminent; he saw a benefit for himself in the form of a sealed docket that would permit him to continue playing baseball in Korea. Specifically, defendant, who in January 2022 lied and feigned a lack of memory about his involvement in the Nix Gambling Business, remembered that he had been involved in a <u>different</u> illegal gambling ring that operated out of Texas, and volunteered his help in the government's investigation of that operation.  According to defendant, defendant placed bets with this Texas illegal gambling operation through his agent, Mr. Horwits.  Through his cooperation

2

1  with the government, defendant provided the government with text
2  messages between himself and Mr. Horwits related to this (different)
3  gambling operation.
4      Specifically, during a meeting between defendant and an HSI
5  agent in Korea in October 2022, the agent took a video of defendant's
6  cell phone, while scrolling through a text message exchange between
7  defendant and Mr. Horwits, which showed both men discussing placing
8  sports bets.  Those text messages were eventually transcribed and
9  translated from Spanish to English.  The government stipulated to the
10 accuracy of the Spanish translation of those text messages prior to
11 trial, at defendant's request.
12     The weekend after the first week of trial, defendant provided
13 the government with a set of defense exhibits, including Exhibit
14 1106, an approximately 100-page exhibit of text messages between
15 defendant and Mr. Horwits.  Exhibit 1106 specifically contained a
16 series of still images of the video that an HSI agent took of
17 defendant's phone, while scrolling through messages between defendant
18 and Mr. Horwits.
19     On Tuesday, February 3, 2026, the government raised the issue of
20 the admissibility of this exhibit with the Court.  (Dkt. 406, Tr.
21 Feb. 3, 2026, p. 6, lines 5-7)  The government objected to the
22 admissibility of this exhibit as hearsay and lacking foundation, as
23 defendant had not established who took the screenshots at issue, and
24 because defendant's cooperation failed in part due to concern that
25 defendant was selectively capturing and sharing with the government
26 text messages between himself and Mr. Horwits.  (Id. at p. 7, lines
27 7-19.)
28

3

1     Ms. Axel clarified that defendant was seeking admission of
2 approximately three excerpts from Exhibit 1106, and would seek to
3 admit these excerpts through Mr. Horwits.  (Id. at p. 10, lines 23-
4 24.)  According to Ms. Axel, these excerpts would demonstrate that:
5 (1) Mr. Horwits provided a different gambling website to defendant;
6 (2) Mr. Horwits communicated with defendant about debts defendant
7 incurred on that website; and (3) defendant incurred a debt of over
8 $300,000 during the same period of time in 2019 that he incurred a
9 debt of approximately $304,000 with the Nix gambling operation, as
10 shown in text messages between defendant and Donny Kadokawa.[1]  (Id.
11 at p. 11, lines 4-12.)

12    Ms. Axel represented that defendant served Mr. Horwits via
13 substitute service on Saturday, January 31, 2026.  (Id. at p. 8,
14 lines 23-24.)  According to Ms. Axel, Mr. Horwits' counsel confirmed
15 receipt of service in the afternoon of February 2, 2026, and relayed
16 to her that they anticipated filing a motion to quash Mr. Horwits's
17 subpoena.  (Id. at p. 8, lines 24-25, and p. 9, lines 1-7.)  Ms. Axel
18 then requested that the Court hold Mr. Horwits in contempt forthwith
19 because he "was aware of the subpoena" and "was not on a plane here
20 as he should be."  (Id. at p. 9, lines 1-7.)  The Court indicated
21 that it would need to hold Mr. Horwits in contempt, and Ms. Axel
22 responded, "I'm happy for the Court to do that and we'll pass that
23 message on."  (Id. at p. 14, lines 23-24.)  Ms. Axel then confirmed
24 that she would immediately file a proof of service demonstrating that

---

[1] In other instances, the transcript erroneously references "Donny Kadokawa" when the parties were discussing "Danny Abogado," which is the contact name defendant had in his phone for Mr. Horwits.

4

Mr. Horwits had been served so that the Court could initiate contempt proceedings.  (Id. at p. 15, lines 2-3.)

Moments after requesting that Mr. Horwits be held in contempt of court, Ms. Axel relayed that there was "a discussion going on" with Mr. Horwits's attorney, and that Mr. Horwits "may be willing to submit a declaration."  (Id. at p. 9, lines 8-9.)  Ms. Axel further explained that "Mr. Horwits we hope is sending us the declaration this morning . . . confirming that same information and authenticating [and] agreeing to his side of th[ese] message[s]."  (Id. at p. 12, lines 4-7.)  Ms. Axel then moved the Court to "accept the messages on their own," or alternatively "accept the declaration under the residual exception."  (Id. at p. 12, lines 8-10.)  She later argued that HSI Special Agent Jason Canty, who was not party to these text messages, should be able to testify to these messages to admit them.  The Court then made clear, however, that authentication aside, "Mr. Horwits will have to testify about the text messages themselves," and ordered Horwits to appear.  (Id. at p. 16, lines 20-21.)  Mr. Horwits' subpoena "evasion" was featured in the New York Times later that day.[2]

At the end of the court day on February 3, 2026, the same day that the Court, at the request of defense counsel, ordered Mr. Horwits to appear on February 4, 2026, at 8:00 a.m. or face contempt, defense counsel again sought to admit text messages between defendant and Mr. Horwits by way of declaration instead of Horwits' testimony. The following exchange occurred:

---

[2] See "As Yasiel Puig Trial Wraps Up, a Prominent Agent Could Face Contempt Charges," https://www.nytimes.com/athletic/7020148/2026/02/03/yasiel-puig-dodgers-trial-update/ (last visited March 6, 2026).

5

```
     MR. KLEIN: One second, Your Honor. Your Honor, tomorrow –
we've been talking a lot about Mr. Horowitz, more than probably
any of us want to talk about Mr. Horowitz now or ever.  He
emailed us.  We have a copy of a declaration from his now, so
we're hoping that can resolve this issue. We can send it to your
chambers and the Government.
     MR. KLEIN: Oh, it has been, okay, sorry. I've just been informed
it has been sent.
     THE COURT: I thought you were telling me earlier that he was
going to be coming.
     MR. KLEIN: We -- his -- I think his lawyers are hoping that a
declaration would obviate the need for his testimony.  We are
fine --
     THE COURT: I think I --
     MR. KLEIN: -- with the --
     THE COURT: -- already asked the Government about whether either
a declaration or a Zoom hearing would do to obviate the need for
him to come, and that wasn't happening.
     MR. KLEIN: I think Your Honor can override the Government's
objection in this case and put the evidence in because it
addresses the concerns Your Honor was raising about the
foundation for the evidence.  So we'd ask Your Honor to look at
it because I think that could make this move faster even.  I
don't --
     THE COURT: How is the Government going to cross examine a
declaration?
     MR. KLEIN: Your Honor, just like no one can cross examine a
stipulation. It's the same idea.  I -- he's --
     THE COURT: Well, that's why I'm saying if they want to agree to
it, I'm fine with that.
     MR. KLEIN: Okay.
     THE COURT: But I'm not going to order that if there's no
stipulation to it because that's highly unusual and not
something I'm going to force the Government to accept, a
declaration.
     MR. KLEIN: We were just presenting it as an option, Your Honor.
     THE COURT: All right.  I'm all for options.  But if they're not
willing to accept that option, we have to have him here.
```

Id. p. 269-270.)

Defense counsel then told the Court that they would have the government "review it and decide if they think it's still necessary to have him come." (Id.)  Defense counsel then presented the government with a stipulation regarding the text messages that it sought to admit to "make this move faster," i.e., avoid requiring Mr.

6

Horwits to travel to Los Angeles to appear at 8:00 a.m. the following day. The government reviewed this stipulation in good faith, but ultimately declined to stipulate.[3] When the government returned to the courtroom and told defense counsel that it would not be stipulating to the requested facts and exhibits, defense counsel immediately informed the Court and government that Mr. Horwits "was not coming" to testify on February 4, 2026. (Dkt. 406, Tr. Feb. 3, 2026, at p. 273, lines 2-13.)

The following morning, Mr. Horwits's counsel appeared on his behalf as court began. Counsel for Horwits told the Court that Horwits was mid-flight from Texas and set to arrive in Los Angeles late morning. Rather than wait two hours to call Mr. Horwits to testify, defense counsel <u>again</u> offered extensive argument that a declaration of a purported business records custodian should substitute for Mr. Horwits' testimony, the testimony they had "assured" the Court they had diligently sought since January 8, 2026. (Dkt. 423, Tr. Feb. 4, 2026, at p. 17-20.) The Court again rejected that approach and rightly pointed out that "Mr. Horwits is on his way here and is going to land presumably around 10:00 o'clock." (<u>Id.</u>) In an astonishing change of course, defense counsel argued that waiting for Mr. Horwits' imminent arrival would somehow prejudice their client. The government responded, saying:

> **MR. MORSE:** Your Honor, all this sounds a little bit strange and this is why. Yesterday counsel was representing that Mr. Horwits was potentially arriving today but sought a stipulation from the

---

[3] The Court took a break in proceedings to have the government take a firm position on whether it would stipulate to the admission of the declaration because "[the Court was] not going to have [Mr. Horwits] come all the way over here and then you say, oh, never mind" which is <u>exactly</u> what defendant did when Mr. Horwits arrived. (Dkt. 406, Tr. Feb. 3, 2026 at p. 271, line 13 – p. 272, line 14.)

7

> Government and as soon as we said no, we would not stipulate, they immediately said Mr. Horwits is not going to be here.  Now that it sounds like his arrival is imminent, they don't want to put him on the stand, that's what the Government is gleaning from this, and they need to put him on the stand to lay foundation for these text messages.

(Id.)

The government further added that "the witness is on the way, so we should wait for the witness."  (Id. at 26, lines 2-5.)

After a break to allow defense counsel to confer internally, the defense informed the Court that they would not be calling Mr. Horwits, even after the Court informed defense counsel that the jurors had been excused until 11:30 a.m.  The Court pressed defense counsel, saying "[w]ell, if you had -- if you had decided that you weren't going to have him, which you could have -- I mean I don't think anything has changed since you requested the subpoena.  What has changed that caused you not to have him when he's on his way here?"  (Id. at p. 34, lines 3-7.)  Defense counsel responded by claiming that "we don't have a stipulation anymore on the translations.  It's as simple as that."  Government counsel responded by pointing out that, "it's not the case that they can't call this witness because the Government is not stipulating.  It is the case that they can't use the documents that Mr. Horwits **would bring** because there are no translations associated with that [document]."  (Id. at p. 36, lines 18-25.)  The government pointed out that the defense was still "able to still put forth the **same documents** that they fought so hard" to admit the previous day, which the Court agreed were admissible with Mr. Horwits' testimony.  Those documents the Court had already ruled admissible also had Spanish translations

8

associated with them, which the government had stipulated to.  The government concluded by indicating that it wasn't clear that the defense ever intended to call Mr. Horwits.

When Mr. Horwits arrived at First Street Courthouse, the Court provided defense counsel with a final opportunity to call Mr. Horwits to the stand: "Last chance for the defense, if you want to have him testify."  (Id. at p. 42, lines 4-5.)  Incredibly, as Mr. Horwits sat in court waiting to testify, the defense again declined to call him.  The Court then pointed out that it would likely order defendant to pay for Mr. Horwits' travel and legal fees under the circumstances.  The Court further indicated:

> I wanted to make clear that <u>there is no prejudice to the Defendant</u> from this because, obviously, even though Mr. Horwits did not comply with the Court's order to be here at 8:30, he was on a plane and would be here presumably within the next hour at least.  <u>So it's the Defense's choice not to wait for him</u> to arrive and so be that as it may we are going to go forward with closing arguments[.]

(Id. at p. 37, lines 6-14 (emphasis added).)

## III. CONCLUSION

While defendant has every right to decide which witnesses to call, such decisions should not come through the abuse of court process and at the expense of a civilian -- here, Mr. Horwits, who unnecessarily hired attorneys, flew from Texas to Los Angeles, and was subjected to national press related to his alleged evasion of a subpoena, for testimony defendant never intended to elicit.

For the foregoing reasons, the government respectfully requests that the Court consider the aforementioned facts when determining whether to: (1) impose contempt sanctions on Non-Party Daniel Horwits

9

and (2) exercise its discretion to order defendant to pay Mr. Horwitz's attorney's fees and costs.